**TAB 3**

**HUGGINS**

| CHARGE | DOCUMENT |
|---|---|
| PROVIDING CONTRABAND TO AN INMATE | CRIMINAL HISTORY COMPUTATION, MEMORANDUM TO HON. ELLEN SEGAL HUVELLE, DATED DECEMBER 12, 2005 |
| | JUDICIAL OPINON (UNPUBLISEHD) AFFIRMING CONVICTION |

# UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
PROBATION OFFICE

RICHARD A. HOUCK, JR.
CHIEF UNITED STATES PROBATION OFFICER

E. BARRETT PRETTYMAN U.S. COURTHOUSE
333 CONSTITUTION AVENUE, N.W., SUITE 2800
WASHINGTON, D.C. 20001-2866
TELEPHONE (202) 565-1300

December 12, 2005

## MEMORANDUM TO THE HONORABL ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE

Re:   HUGGINS, Michael
      Docket Number: 1:05CR00386
      **Criminal History Computation**

Per your Honor's request of November 09, 2005, a state and local criminal history check was conducted with the following results:

**Juvenile Adjudications:** None.

**Adult Criminal Convictions:**

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pnt |
|---|---|---|---|---|
| 02/13/84 (Age 19) | Carrying a Dangerous Weapon<br><br>Superior Court for the District of Columbia | 04/26/84: Imposition of sentence suspended, one year probation.<br><br>04/04/85: Probation terminated and conviction set aside. | 4A1.2(e)(3) | 0 |

The defendant was represented by counsel in this matter. On February 13, 1984, the defendant and three friends were stopped, while riding in their vehicle, in the vicinity of the Tenley Circle Theater, in Washington, DC. The defendant was searched, at which time he was found to be carrying a pocketknife and 15 bags of marijuana. There was no information as to why he was not charged with the Possession of Marijuana. There was no information as to why he was not charged with the Possession of Marijuana.

**HUGGINS, Michael**  Page 2
**Docket No.: 1:05CR00386**

| 04/05/88 (Age 27) | 1) Unlawful Possession of a sawed-off shot gun; Aiding and Abetting<br>2) Unlawful Possession with Intent to Distribute Marijuana<br>3) Unlawful Possession of a Firearm without a Serial Number<br>4) Possession of an Unregistered Firearm<br><br>U.S. District Court for the District of Columbia (88CR164-01) | <u>08/22/88:</u><br>Cts. 1 & 2 - Imposition of sentence suspended; 5 years probation.<br><br>Cts. 3 & 4 - Dismissed.<br><br>08/21/93: Probation term terminated unsuccessfully. | 4A1.2(e)(3) | <u>0</u> |

The defendant was represented by an attorney in this case. On April 4, 1988, acting on information proved by a confidential source, Alcohol, Tobacco, and Firearms obtained a search warrant for the premises of 1208 Evarts Street, NE, Apartment 306, Washington, Dcl The warrant was executed the following day, at which time a .22 caliber sawed-off rifle was recovered. The firearm had a barrel length of 8 inches and an overall length of 16 inches, and it did not bear a serial number. Seven .45 automatic cartridges were also recovered, along with a large plastic bag and a shoe box, both of which contained large amounts of marijuana. A total of $545 was also seized, which was located in a plastic bag next to the shoe box. The defendant was located in the bedroom of the residence and was placed under arrest.

Having knowledge of the possibility of other weapons, and the fact that the defendant was observed driving up to the apartment building in a black automobile, a warrant was secured to search his vehicle. During the search, an Astra .45 caliber semiautomatic pistol, loaded with seven live rounds of ammunition, was found under the driver's seat. Thirty-six ziplock bags of marijuana were also recovered from the same location.

According to the United States Attorney's Office, each weapon was test-fired and found to be fully operational. Although the marijuana confiscated during this incident was not analyzed, it was reported that the marijuana weighed approximately one-half pound and had a street value of $1,100.

**Probation Adjustment**

The defendant's adjustment to probation was satisfactory, until the offense on September 20, 1992, in the Eastern District of Virginia, for Providing Contraband to An Inmate

**HUGGINS, Michael**  Page 3
**Docket No.: 1:05CR00386**

Officer. As a result of the new arrest and conviction, the defendant's term of probation was terminated unsuccessfully.

| 09/20/92 (Age 28) | Providing Contraband to An Inmate (heroin) U.S. District Court Eastern District of Virginia (3:93CR61-002) | 01/03/94: Seventy eight months imprisonment, 3-year term of supervised release to follow, substance abuse treatment as a condition of probation.<br><br>08/30/99: Release from incarceration and term of supervised release begins in the District of Maryland with jurisdiction in the Eastern District of Virginia<br><br>08/29/01: Case closed by early termination. | 4A1.1(a) | 3 |
|---|---|---|---|---|

The defendant was represented by Dannie R. Sutton. Jeffrey Rawlings was an inmate at the Federal Correctional Institution in Petersburg, Virginia, serving a sentence that was imposed by the U.S. District Court for the District of Columbia. On September 20, 1992, Angela Dorsey, Rawling's girlfriend, and Michael Huggins visited Rawlings at the institution.

After visitation was over, Correctional Officer Bernard Brown escorted Rawlings into the male restroom to conduct a strip search. Rawlings was instructed to bend over and spread his buttocks. At that time, Officer Brown noticed a red and white foreign object protruding from Rawlings rectum. Rawlings then stood up very quickly, and after being instructed to bend over again, Brown observed Rawlings reach around and pull an object out of his rectum. Brown instructed Rawlings to drop the object he had in his hand, which he did. Rawlings was then instructed to step away, and Officer Brown placed his left foot on the package. Rawlings then attempted to retrieve the object by grabbing Brown's left leg, and a struggle ensued. The defendant was brought under control, and another officer, Ralph James, retrieved the object from the floor. The item was a small, clear, plastic piece, with a red tape wrapped around it to secure the contents. A field test was conducted of the contents of the package, which confirmed that it was heroin. A subsequent laboratory analysis revealed that the heroin was .195 grams and was 87% pure.

**HUGGINS, Michael**  Page 4
**Docket No.: 1:05CR00386**

The FBI then conducted an investigation to determine how the heroin was smuggled to Rawlings. On January 29, 2003, agents interviewed Angela Dorsey, Rawlings' girlfriend. She told them that, prior to her visit with Rawlings, he had asked her to bring Huggins to visit. Rawlings specifically told Dorsey that Huggins was "supposed to be getting some stuff to bring to him." Rawlings further said that Huggins did not have a ride and requested that Dorsey drive him down. Upon being told that Huggins was bringing Rawlings some "stuff," Dorsey immediately knew that Huggins was planning to take drugs to Rawlings. She knew that Rawlings was referring to drugs, because the item Rawlings was talking about needed to be personally delivered by Huggins. If the item had been legal, it could have easily been mailed, thereby alleviating the need for Huggins to personally contact Rawlings. Sometime after Rawlings asked Dorsey to drive Huggins to Petersburg, Huggins contacted her by phone. He asked her if she was planning to go to Petersburg that weekend to visit Rawlings. Dorsey told Huggins that she had not planned to go to Petersburg; however, if he wanted to go, she would transport him. When Huggins was questioned, he denied any involvement in the offense.

On September 20, 1992, when they went to Petersburg, Dorsey stated that she never saw any drugs in Huggins' possession, although she knew in her mind he was planning to deliver drugs to Rawlings. Once inside the visitation room at FCI Petersburg, Rawlings visited with Dorsey, her two children, and Huggins. At one point during the visit, Rawlings and Huggins walked by themselves to a corner of the visitation room where there were no cameras. They talked for several minutes, while Dorsey and the two children waited. Once the visit concluded, Dorsey drove Huggins back to Washington, DC.

Several days after the visit, Huggins contacted Dorsey and told her that "Jeff got caught." Huggins told Dorsey that she should not say anything. Dorsey was also contacted by Rawlings, after the FBI had talked to him about the incident. Rawlings told Dorsey to tell the FBI that she did not know anything about this incident.

In addition to Dorsey's statements and testimony, investigators had transcripts of several telephone calls made between Rawlings, Dorsey, and others. During some of the conversations, it was apparent that Rawlings was attempting to locate some drugs and have them delivered to him in Petersburg.

**HUGGINS, Michael**  Page 5
**Docket No.: 1:05CR00386**

### Other Arrests

| Date of Arrest | Charge(s) | Court | Disposition |
|---|---|---|---|
| 09/11/89 (Age 25) | 1) Battery<br>2) Malicious Destruction - Property of Another | District Court for Prince George's County, Maryland (0067500E3) | 12/18/89: Case closed by docket entries of stet. |
| 03/22/91 (Age 26) | Possession of Cocaine | Superior Court for the District of Columbia | 09/06/91: Not guilty. |

Based on the information available, the total of the criminal history points is 3, which establishes a criminal history category of II. U.S.S.G. Chapter 5, Part A. It is noted that if the defendant is convicted of a crime of violence and he has two or more convictions for a crime of violence or felony drug offense, he may be subject to the substantially higher guideline penalties provided for in the career offender statutes and provision of the Sentencing Guidelines.

Please advise if Your Honor has any questions, or if I can be of any further assistance.

Respectfully submitted,

Elizabeth Suarez
United States Probation Officer
(202) 565-1341

Approved by:
Shari L. McCoy
Supervising United States Probation Officer

cc: Rachel Lieber AUSA
    Jack Geise, AUSA
    Joseph Conte, Defense Counsel

45 F.3d 428 (Table)  
45 F.3d 428 (Table), 1994 WL 709630 (4th Cir.(Va.))  
**Unpublished Disposition**  
(Cite as: 45 F.3d 428, 1994 WL 709630 (4th Cir.(Va.)))  
**H**

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.  
UNITED STATES of America, Plaintiff-Appellee,  
v.  
Michael Andre HUGGINS, Defendant-Appellant.  
No. 94-5028.

Submitted: Oct. 4, 1994.  
Decided: Dec. 22, 1994.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-93-61)

Dannie R. Sutton, Jr., Richmond, VA, for Appellant. Helen F. Fahey, United States Attorney, N. G. Metcalf, Assistant United States Attorney, Richmond, VA, for Appellee.

E.D.Va.

AFFIRMED.

Before WIDENER, MURNAGHAN, and NIEMEYER, Circuit Judges.

OPINION

PER CURIAM:

**1 Michael Huggins appeals his conviction following a jury trial of providing contraband to an inmate in violation of 18 U.S.C.A. § 1791 (West Supp.1994). Huggins alleges that the trial court improperly admitted certain evidence and that there was insufficient evidence to convict him. We affirm.

The facts are largely undisputed. On September 20, 1992, Huggins, along with Angela Dorsey and her infant child, visited Jeffrey Rawlings, a prisoner at the Federal Correctional Institute in Petersburg, Virginia. [FN1]

When they arrived at the prison, Huggins and Dorsey presented identification to the front desk officer and signed an inmate visiting log. Huggins and Dorsey also signed a notification paper in which they listed their addresses and telephone numbers. The notification card warned each visitor that introduction of drugs, narcotics, and other contraband at the prison was prohibited. Upon signing the notification card, Huggins and Dorsey were led into the facility.

Huggins, Dorsey and the child then entered a large visiting room to have contact with Rawlings. [FN2] Rawlings's first contact came when he embraced Dorsey. His second contact came when his daughter sat on his lap. It is unclear whether Rawlings shook hands with Huggins.

During the September 20th visit, approximately one hundred people were present in the visiting room, including three correctional officers. However, no correctional officer, camera or Government witness observed Huggins make any physical contact with Rawlings.

Following the contact visit, Rawlings was subjected to a routine strip search. In the course of the strip search, correctional officers recovered a plastic packet containing 0.195 grams of 87% pure heroin from Rawlings's rectum.

Prior to the September 20th visit, Rawlings made several telephone calls to Dorsey and others from a prison telephone. Each conversation was taped by a recording device employed by the prison. Inmates are aware that their calls are subject to monitoring and tape recording.

The Government's evidence showed that Rawlings made four phone calls to Dorsey the day before the September 20th visit. First, Rawlings told Dorsey that Huggins would contact her. Next, Rawlings asked a man to inform Huggins "not to cut it." The third call was a discussion concerning the going rate of "it" and assurances of how to gift wrap "it."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 F.3d 428 (Table) Page 9
(Cite as: 45 F.3d 428, 1994 WL 709630, **1 (4th Cir.(Va.)))

The fourth call was a direct call from Rawlings to Huggins wherein Rawlings asked Huggins to confirm with Dorsey that they were still coming to visit the next day.

On September 22, two days after the visit, Rawlings again called Huggins. During this call, Rawlings told Huggins that he had been locked up based on the previous visit. Rawlings inquired whether anyone had contacted Huggins's house. Rawlings then advised Huggins to be "cool," not get "panicky," and act as if he knew nothing.

Huggins's first assignment of error on appeal is the district court's decision to admit the taped phone conversations into evidence. However, a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is admissible against a defendant as an admission by a party-opponent. Fed.R.Evid. 801(d)(2)(E). Before admitting a co-conspirator's statement under Rule 801(d)(2)(E), the trial court must decide whether the statement falls within the rule. That inquiry may be satisfied if a preponderance of the evidence shows that there was a conspiracy involving the declarant and the non-offering party. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). A trial court may consider evidence relating to events subsequent to a declaration in deciding whether sufficient evidence of a conspiracy exists. *See United States v. Silvano*, 812 F.2d 754, 762 (1st Cir.1987).

**2 Huggins maintains that there was no evidence other than Rawlings's taped conversations to show that a conspiracy existed. How ever, the Government produced evidence that Huggins visited Rawlings on September 20, 1992. Further, Dorsey testified that Rawlings asked her to bring Huggins to the prison because Huggins "was posed [sic] to be bringing [him] some stuff." Thus, a preponderance of the evidence demonstrated that a conspiracy existed, and the taped conversations were properly admitted into evidence under Rule 801(d)(2)(E). [FN3]

Finally, a joint conspirator is considered as a co-conspirator for the purposes of Rule 801(d)(2)(E) even though no conspiracy has been charged. *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir.), *cert. denied*, 393 U.S. 913 (1968). Thus, Huggins's contention that Rule 801 does not apply because he was not charged with conspiracy lacks merit.

Huggins next contends that the evidence was insufficient to sustain a guilty verdict. We will only disturb a verdict if no rational jury could have found that the prosecution proved the crime charged beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80 (1942). In making that assessment, we view the evidence and all reasonable inferences in the light most favorable to the Government. *United States v. Jones*, 735 F.2d 785, 790 (4th Cir.), *cert. denied*, 469 U.S. 918 (1984). We must consider circumstantial and direct evidence and allow the Government to benefit from all reasonable inferences from facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982).

The Government was required to show that Huggins knowingly provided or attempted to provide a prison inmate with an object that was prohibited by statute, rule, or order. 18 U.S.C. § 1791. The Government may prove its case by direct or circumstantial evidence; circumstantial evidence is no less probative than direct evidence. *United States v. DeCorte*, 851 F.2d 948, 954 (7th Cir.1988).

The Government established that Rawlings contacted Huggins by phone one day prior to the visit to confirm that Huggins and Dorsey were still planning to visit the prison. Rawlings also spoke with another man, and told that man to inform Huggins not to cut "it" and that "it" should be gift wrapped. The two men also discussed the number of "shirts" that Huggins would bring with him. The references to "it" and "shirts" undoubtedly were code words for heroin.

Furthermore, the jury heard conflicting evidence as to whether Huggins and Rawlings made physical contact during the visit. Dorsey first testified that Huggins and Rawlings shook hands when they greeted each other and that the two men walked off together to confer privately for fifteen minutes. On cross examination, however, Dorsey stated that she did not see Huggins touch Rawlings. Issues of credibility were for the jury to determine. *Burks v. United States*, 437 U.S. 1, 16 (1978).

**3 Moreover, a prison official testified that on the day of the visit, more than one hundred people were present in the visiting room. Only three officers monitored the inmates. The heroin was one-half

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 F.3d 428 (Table)      Page 10
(Cite as: 45 F.3d 428, 1994 WL 709630, **3 (4th Cir.(Va.)))

inch long and wrapped in plastic. Thus, a rational trier of fact could find that Huggins could easily have passed the small package to Rawlings.

Next, the Government had to prove that the object was prohibited by statute. The object found on Rawlings was 0.195 grams of 87% pure heroin hydrochloride, which is a Schedule I narcotic controlled substance as listed in 21 U.S.C.A. § 812 (West 1981 & Supp.1994). Therefore, the object was contraband.

Finally, the Government demonstrated that one day prior to visiting Rawlings, Huggins talked with Rawlings by phone and discussed the "stuff" he was to bring to the prison and how to cut and package it. This discounts any allegation by Huggins that he did not knowingly provide the prohibited item to Rawlings. Because the Government proved the elements of the crime charged beyond a reasonable doubt, we affirm the judgment of conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

FN1. Rawlings is the father of Dorsey's child.

FN2. During a contact visit, an inmate is allowed to have contact twice, once when the visitor arrives and once when the visitor leaves.

FN3. Furthermore, contrary to Huggins's assertions, the conspiracy did not end once the contraband passed from Huggins to Rawlings. The "in furtherance" language of Rule 801(d)(2)(E) is satisfied when a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance. *United States v. Perez*, 702 F.2d 33, 37 (2d Cir.), *cert. denied*, 462 U.S. 1108 (1983). Thus, when Rawlings contacted Huggins two days after the incident and advised Huggins to be "cool," he was acting in furtherance of the conspiracy.

45 F.3d 428 (Table), 1994 WL 709630 (4th Cir.(Va.)), Unpublished Disposition

Briefs and Other Related Documents (Back to top)

. 1994 WL 16048343 (Appellate Brief) Brief of United States (Jun. 07, 1994)

. 1994 WL 16048344 (Appellate Brief) Brief of Appellant (Jan. 01, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 F.3d 428 (Table)      Page 10
(Cite as: 45 F.3d 428, 1994 WL 709630, **3 (4th Cir.(Va.)))

inch long and wrapped in plastic. Thus, a rational trier of fact could find that Huggins could easily have passed the small package to Rawlings.

Next, the Government had to prove that the object was prohibited by statute. The object found on Rawlings was 0.195 grams of 87% pure heroin hydrochloride, which is a Schedule I narcotic controlled substance as listed in 21 U.S.C.A. § 812 (West 1981 & Supp.1994). Therefore, the object was contraband.

Finally, the Government demonstrated that one day prior to visiting Rawlings, Huggins talked with Rawlings by phone and discussed the "stuff" he was to bring to the prison and how to cut and package it. This discounts any allegation by Huggins that he did not knowingly provide the prohibited item to Rawlings. Because the Government proved the elements of the crime charged beyond a reasonable doubt, we affirm the judgment of conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

FN1. Rawlings is the father of Dorsey's child.

FN2. During a contact visit, an inmate is allowed to have contact twice, once when the visitor arrives and once when the visitor leaves.

FN3. Furthermore, contrary to Huggins's assertions, the conspiracy did not end once the contraband passed from Huggins to Rawlings. The "in furtherance" language of Rule 801(d)(2)(E) is satisfied when a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance. *United States v. Perez*, 702 F.2d 33, 37 (2d Cir.), *cert. denied*, 462 U.S. 1108 (1983). Thus, when Rawlings contacted Huggins two days after the incident and advised Huggins to be "cool," he was acting in furtherance of the conspiracy.

45 F.3d 428 (Table), 1994 WL 709630 (4th Cir.(Va.)), Unpublished Disposition

Briefs and Other Related Documents (Back to top)

. 1994 WL 16048343 (Appellate Brief) Brief of United States (Jun. 07, 1994)

. 1994 WL 16048344 (Appellate Brief) Brief of Appellant (Jan. 01, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.