00001
01  UNITED STATES DISTRICT COURT
02  FOR THE DISTRICT OF COLUMBIA
03
04  United States of America        Docket No. CR 05-0386 ESH
05
06                      Washington, D.C.
07      vs.                Friday, April 21, 2006
08                         2:05 p.m.
09  Antoine Jones        01
10  Demetris Johnson       03
11  Andrian Jackson       04
12  Michael Huggins        05
13  Kevin Holland        06
14  Alberto R. Carillo-
15   Montelango         07
16  Roel Bremea, Jr.       08
17  Ricardo Sanchez-
18   Gonzalez          09
19  Lawrence Maynard      10
20  Kirk Carter         11
21
22          Defendants
23
24  Transcript of Status Hearing
25  Before the Honorable Ellen Segal Huvelle
26  United States District Judge
27
28  APPEARANCES:
29
30  For the Government:      Rachel Lieber, Esq.
31                   John Geise, Esq.
32
33  For the Defendants:     Eduardo Balarezo, Esq.
34                   Jon Norris, Esq.
35                   Joseph Conte, Esq.
36                   Brian McDaniel, Esq.
37                   Fred A. Kowalski, Esq.
38                   Noe Domingo Garza, Jr.
39                   Edward Sussman, Esq.
40                   Charles Daum, Esq.
41  Reporter:       WILLIAM D. MC ALLISTER, CVR-CM
42                   Court Reporter
43                   (301) 520-1000
44  Reported by Voice Writing and transcribed using SpeechCAT
45

46   Pages 1 through 45

00002
01  P R O C E E D I N G S
02      (Defendants present.)
03          THE CLERK:  Criminal action 05-386.  United States of
04  America versus Antoine Jones, et al.
05          We have Rachel Lieber and John Geise for the
06  government.
07          Mr. Eduardo Balarezo, representing Mr. Jones.  Mr.
08  Edward Sussman is standing in for Mr. Blumental representing
09  Demetris Johnson.  Mr. Jon Norris, representing Andrian
10  Jackson.
11          Mr. Joseph Conte, representing Michael Huggins.
12  Brian McDaniel, representing Kevin Holland.  Fred Kowalksi,
13  representing Alberto Carrillo-Monteangelo.
14          Mr. Domingo Garza, representing Roel Bremea, Jr.  Mr.
15  Balarezo standing in for Elita Amato, representing Ricardo
16  Sanchez-Gonzalez.  Edward Sussman, representing Lawrence
17  Maynard.  Mr. Charles Daum, representing Kirk Carter.
18          THE COURT:  Good afternoon.
19          COUNSEL:  Good afternoon, Your Honor.
20          MR. BALAREZO:  Your Honor, before we proceed, I did
21  not actually speak to Mr. Sanchez and let him know that I'm
22  standing in for his counsel.  I am standing in for Ms. Elita
23  Amato on behalf of Mr. Sanchez.
24          THE COURT:  Why isn't she here?
25          MR. BALAREZO:  I believe she had an emergency doctor

00003
01   appointment and she will try to make it when she gets out, Your
02   Honor.
03          THE COURT:  I told everybody they have to be here.
04   This is not a revolving door and some come something.  She
05   better call me and explain exactly what kind of an emergency
06   this is.  It is very hard.
07          The government has filed a pleading regarding where
08   we stand in discovery and production and I take it we've now
09   made it better and easier.  You are looking for lead counsel
10   still or what are you missing here?
11          MR. GEISE:  Well, Your Honor, there are all those
12   videotapes.  If someone wants to be the librarian for the video
13   tapes, that would make our life much easier or we'll be the
14   librarian for the videotapes.  It's just been my experience in
15   the past -- it's videotapes, it's some photos, and there will
16   be some more paper discovery as we go along, although not a
17   huge amount.
18          It's been my experience that it is easier if one of
19   the defense attorneys takes it because they can make their
20   office more available to their colleagues.
21          THE COURT:  Do we have anybody?  Without the federal
22   public defender, is there anybody that has an office that is
23   sort of conveniently located that can make this depository for
24   the tapes and for those pictures?  How many tapes again?
25          MR. GEISE:  Well, Your Honor, maybe 150.  They are

00004
01  24-hour videotapes; 30 or 40 percent of them are at night and
02  you can't even see it.  I'm not sure how much people will want
03  to look at it, but we do have to have it available if they do.
04       THE COURT:  When are you going to designate what
05  portions you're going to use?  That will help them decide what
06  they care about.
07       MR. GEISE:  Probably not earlier than a couple of
08  months before trial.  I would like it to be available for them
09  to look at.
10       THE COURT:  Earlier.  If we going in October, we're
11  talking about making -- we're going to have to start
12  designating your evidence in the summer.
13       MR. GEISE:  I think that's right.
14       THE COURT:  The government has asked that I start
15  calendaring this case in June.
16       I know I have two counsel, Mr. Sussman and Mr. Conte,
17  who have conflicts for the fall.  I know Mr. Katzoff has been
18  sent over as a possible replacement, if necessary.  But I am
19  inclined to let this issue ride until June.  I'm not going to
20  try the case with all of those assembled here.
21       I have urged the government to start making the most
22  generous offers possible.  If people wait too long past the
23  time in June, the offers are going to get less and less and
24  less generous.  The most successful offers are generally
25  11(c)(1)(C).  Even as an alternative that is a possibility.

00005
01  But I want that issue to be exhausted with each and every
02  defendant because I don't have to guess.  I suspect the
03  mandatories here, if convicted, with the kinds of quantities,
04  must be --
05       MR. GEISE:  Significant, Your Honor.
06       THE COURT:  What are we talking, though?  When you
07  say significant, it makes a lot --
08       MR. GEISE:  Let's see, Your Honor.  If there are no
09  prior felony drug convictions, it would be at least a minimum
10  of 10 years.  One prior felony drug conviction, a minimum of 20
11  years.  Two prior felonies drug convictions, a mandatory life
12  without parole.  If they are career offenders, it would --
13       THE COURT:  360 months.
14       MR. GEISE:  Yes, ma'am.
15       THE COURT:  36 years.  All counsel are obviously
16  competent.  They understand this.  They're required to discuss
17  it with your clients soon.
18       What I am saying to the counsel here is now is the
19  time for people to explore a disposition before the government
20  starts to decide whether or not they're going to -- I am not
21  trying this number of people at the same time.  So some people
22  will go first.  I have some ideas about how that will work, but
23  some will go later.
24       So the end of the discussions for purposes from my
25  point of view, the critical time is going to be before we get

00006
01  together in June to figure out whether or not you're going to
02  be sitting in the defendant's chair or not sitting in the
03  defendant's chair.  It doesn't mean that no offers will be
04  available after that.  It means that the offers will not be as
05  good, is that fair?
06          MR. GEISE:   You read my mind, Your Honor.
07          THE COURT:  This is necessary because we have to know
08  who is going to trial and who is going to be filing motions and
09  what they're going to be complaining about in terms of
10  indictments.  We don't even have a firm indictment.
11          So you need somebody to at least be the location, is
12  that right?
13          MR. GEISE: Yes, we do, Your Honor.  It's just less
14  convenient for them.  I can make my office available eight
15  hours a day, five days a week.  That's only fair.
16          THE COURT:  I understand.
17          MR. GEISE: Yes, ma'am.
18          MR. BALAREZO:  I inherited the discovery role from
19  Mr. Zucker and I have the videos.  I have brought them with me.
20  My intention was to turn them over to the government.  My
21  office is about two blocks away.  It's convenient.
22          However, I'm currently in trial with Judge Collyer
23  until the end of next month.  So I'm not going to be around and
24  I don't really have anyone there to sit around while other
25  people either watch them there, but if people want to come and

00007
01  borrow them and bring them back, I can handle that.
02        THE COURT:  Has anybody got a problem with that?  You
03  mean to tell me, when you're in trial, they couldn't get access
04  to your office?
05        MR. BALAREZO:  Possibly, yes, there may be access,
06  but it's not regular access.  So if someone wants to call me
07  ahead of time, a day ahead and we can make arrangements, that's
08  fine.
09        MR. McDANIEL:  Your Honor, I am currently in trial
10  before Judge Lambreth.  I could make my office available and be
11  available to counsel even when I'm not there.  The problem with
12  my office, though, it is on Connecticut Avenue, 1211
13  Connecticut Avenue, and I don't know if counsel would like to
14  deal with the parking and the location.  But I would certainly
15  be willing to do that and make my office available.
16        THE COURT:  Mr. Norris, where is your office?
17        MR. NORRIS:  Your Honor, I'm nearby.  My problem is
18  that my office is very small.
19        THE COURT:  I don't know how much.  Is there box
20  loads of these?
21        MR. GEISE:  Your Honor, it is probably, with whatever
22  additional paper we give, two pretty good size boxes of
23  videotapes, maybe one box of surveillance photos.
24        MR. BALAREZO:  I have three banker's boxes right now
25  of discovery.

00008
01       MR. GEISE:  And there might be one or two more.
02       MR. NORRIS:  Your Honor, my office is fairly close,
03  but the problem is it's small in terms of space, in terms of
04  being available for people to sit and watch videos and take
05  notes and things like that.
06       Also, as the court may be aware, I was retained with
07  a flat fee on the case.  It might make sense for someone who's
08  on a voucher to work in the position of basically archivist or
09  librarian.
10       THE COURT:  I think that you just have to decide
11  between the offices here.  Does anybody have a strong view?
12       MR. McDANIEL:  There will be some parking issues at
13  my office.
14       THE COURT:  You keep what you have then.  You are
15  just going to add to Mr. Balarezo's stuff?
16       MR. GEISE:  Mr. Balarezo kindly brought over for us
17  the searching photos.
18       MR. BALAREZO:  I have those.
19       MR. GEISE:  It's what Mr. Balarezo brought over.  I
20  have about a box and a half in my office.  It is paper and not
21  videos and that kind of stuff.
22       THE COURT:  What have you scanned again, just so I
23  understand.
24       MR. GEISE:  Thousands of pages of things, Your Honor.
25  I've laid them out pretty much in that pleading that I filed.

00009
01  There is an index on each disk.  I can print those and make it
02  a part of the record if anybody wants it, but I think it is
03  almost everything.  There is still one box of stuff I have to
04  go through for the investigation in Baltimore.  I hope to go
05  through that in the next week or 10 days.  If there are 150
06  pages from that, I would be surprised.
07          As the investigation continues, there may be
08  additional stuff.  There will be chemistry reports and things
09  like that, but I'll make those available to whoever has the
10  materials or whoever has them.
11          THE COURT:  And you will put something on ECF to say
12  it's now available?
13          MR. GEISE:  Once a week or so if there is any stuff
14  I'll put it on to tell people.
15          MR. BALAREZO:  Your Honor, the thing that might throw
16  a wrench in it is, depending on what happens with Mr. Jones and
17  his conditions of detention, I was going to make a request of
18  the court regarding discovery material so that he could have
19  access to them more regularly than I would be able to visit
20  him, if he were to go to Orange or Northern Neck, for instance.
21          THE COURT:  I'm all confused now.
22          MR. BALAREZO:  Well, if we're going to be under these
23  conditions after this.  If the court decides that he should go
24  to Northern Neck or Orange, which again is two hours away or
25  so, I'm not going to be able to see him on a daily basis,

00010
01  obviously, so I was going to make a request that he be allowed
02  to have a set of discovery so that he could review it.  He's
03  going to have nothing else to do.
04        THE COURT:  Well, you will have to file something.
05  He's not making a set to send out to Orange.  Don't worry about
06  that.  Let's take one thing at a time.
07        Mr. Daum, what's your problem?
08        MR. DAUM:  Separate and apart from concerning the
09  legal matters, the access to the discovery is a problem for my
10  client, Mr. Carter.  Let me tell you why.
11        The government has been very good and forthcoming
12  about providing counsel with the discovery.  The problem is
13  that it's been put on a CD ROM and the warden's office at the
14  D.C. jail has informed me that they are not going to permit
15  computers to be brought into the jail to allow Mr. Carter
16  access to these materials and they are not going to provide Mr.
17  Carter with access to a computer to listen to the files.
18         Quite honestly, I suppose that at considerable
19  expense, I could start downloading all of this.  But since the
20  CD ROMs contain voluminous telephone calls, none of which I can
21  identify the participants, it is absolutely essential that my
22  client listen to the CD ROMs.
23        I am in this impossible situation where jail says,
24  absolutely not, and the government has made a request and the
25  court has held that he poses such a risk that he can only be

00011
01  held without bond.
02        I put the problem before the court.
03        THE COURT:  Thanks.
04        MR. GEISE:  Your Honor, on the documents they can be
05  printed.  If we gave them in paper form, he would have to Xerox
06  them on paper.  That's the paper.
07        THE COURT:  What do you want him to listen to?  You
08  want him to listen to telephone calls, is that what you're
09  saying?
10        MR. DAUM:  Yes.  There are a number of telephone
11  calls.  Arguably, there are some of these calls that involve
12  Mr. Carter.
13        THE COURT:  I understand.
14        MR. DAUM:  We've litigated that.  But, as we stand
15  here today, there has been no attribution as to anybody
16  identifying Mr. Carter.  We've gone through that issue, but Mr.
17  Carter needs to listen to those calls.
18        THE COURT:  He's not talking about documents.  He's
19  talking about audios.
20        MR. GEISE:  Well, two things, Your Honor.  There are
21  line sheets which are at least tentative identifications that
22  were done during the wire.  They are long line sheets where the
23  monitoring agent indicated that.
24        THE COURT:  But that's not the point.  He wants to
25  hear it.  How does he hear it?  I've never had this problem

00012
01  before.
02       MR. GEISE:  Well, Your Honor, I can tell you candidly
03  this is the first wiretap I dealt with in this district.  I'm
04  not quite sure what the procedure has been in the past.  That's
05  an issue whether they were on tapes or whether they were on
06  CDs.  If it's a question of what availability is made for them
07  to listen, I would have to ask the court's indulgence just to
08  find what the practice has been in the past.
09       THE COURT:  Somebody must have had this.
10       Mr. Sussman, have you had this problem before?  There
11  are always audios.  There are usually thousands of hours of
12  audios.  How do you get your client to hear them if he's locked
13  up?
14       MR. SUSSMAN:  CDs at the jail.  I think laptops are
15  permitted at the jail.  CTF has different rules.
16       THE COURT:  He's not in CTF.
17       MR. SUSSMAN:  He's at the jail?
18       THE COURT:  He is at the jail.
19       MR. SUSSMAN:  I was under the impression that laptops
20  were permitted at the jail, but if Mr. Daum has had something
21  different, you know, I would never say what the jail's rules
22  are on any given day.
23       THE COURT:  People must have clients that listen to
24  audios.  I'm sorry.
25       MR. McDANIEL:  At the CTF, the process requires that

00013
01  you get advance permission.  You send a letter.
02          THE COURT:  CTF?
03          MR. McDANIEL:  Yes, CTF and at D.C. jail.
04          THE COURT:  Both.
05          MR. McDANIEL:  Both.  They require that you send a
06  letter.
07          THE COURT:  Who?  Me or them?
08          MR. McDANIEL:  No.  The counsel send a letter letting
09  them know that you're coming in with a computer and that's how
10  you get the computer in.
11          Obviously it would be much more convenient if, in
12  fact, the defendants had access to a computer within the jail
13  that they could listen to calls on, because there are thousands
14  and thousands and thousands of hours of phone calls that may or
15  may not even be relevant to your particular client.
16          One request that I was going to make of the
17  government through the court was that we have some idea of the
18  actual calls they intend to use.
19          THE COURT:  I think so too.
20          MR. McDANIEL:  So we would have some idea how to
21  focus our review of the discovery.  I know we have the line
22  sheets, but that does not help us with respect to what calls
23  they intend to use.  And obviously there may be calls that they
24  intend to use or they don't intend to use that we might want to
25  use, but still, give us some idea of what they intended to use

00014
01  that we could focus on.
02      MR. GEISE:  As I mentioned, Your Honor, in the
03  government's discovery memo, we are going to try to provide
04  draft transcripts at least a month before trial.
05      THE COURT:  That's not going to solve this problem.
06  You can't have people deciding a month before trial that
07  they're going to start to listen to the tapes that they choose.
08      MR. GEISE:  That's why we gave the disks several
09  months ago to people with the line sheets.
10      THE COURT:  When are you going to designate what you
11  want to introduce at trial?  If you want an October trial date,
12  we're going to have to move a lot quicker than weâ€™re doing it
13  because the problem is that these guys are all locked up.  You
14  wanted them locked up.  They're locked up.  So remember, you've
15  got to be able to hear the tapes and look at the videos.
16      MR. GEISE:  Well, Your Honor --
17      THE COURT:  You can't run a case in a short time.
18      MR. GEISE:  That's a jail issue that we have only so
19  much control over.
20      THE COURT:  No.  That's not the issue.  The issue is
21  to try to designate what it is you're going to use as evidence
22  so that if they want up look around for more stuff, that's
23  their problem.  But at least they know which things you think
24  are important.  You need the calls.  You need the tapes to be
25  designated.

00015
01        Obviously, if there are a few that come to your
02   attention later, so be it.  But you can't -- Rule 16 should be
03   that you tell them what you intend to use as evidence is the
04   question.  That will moot out.  I mean, they can listen to all
05   the calls they want.  If they have to, you'll get permission
06   from the jail but it's a waste of time to listen to all of the
07   calls.
08        MR. GEISE:  Your Honor, the line sheets designate all
09   the calls that are pertinent.  All the calls that are being
10   monitored.
11        THE COURT:  How many hours of calls?
12        MR. GEISE:  They are short calls by and large, Your
13   Honor.  I don't know how many hours of calls, 30 or 40, maybe.
14   I mean, these are relatively short calls.  There are hundreds
15   of calls, but some of them are only 30 seconds or a minute
16   long.
17        THE COURT:  When are you going to designate your
18   evidence?  Can you give me a date?
19        MR. GEISE:  The court's indulgence, Your Honor.
20        MR. McDANIEL:  While they're conferring, Your Honor,
21   I think there are over 6000 calls; and from what I'm hearing
22   from the government that they probably don't intend to use any
23   more than, I would guess, maybe 100 or 200 of these calls.
24        THE COURT:  I don't know.
25        MR. McDANIEL:  I don't know either.  But at the same

00016
01  time what they could do is focus their attention on the calls
02  that they intend to use.  If they are going to prepare
03  transcripts for these calls anyway, we are going to be
04  requesting transcript of the calls.  And so at some point in
05  time, they're going to have to identify the calls that they're
06  going to want to use.
07        THE COURT:  You're not going to have that happen a
08  month before trial.
09        MR. McDANIEL:  That's my point.  At this point, the
10  court could say to the government, well, we want you to
11  identify tentatively the calls that you want to use by whatever
12  date the court thinks is appropriate.
13        MR. GEISE:  I think the government could identify, as
14  the court says, with one or two calls we might decide later, by
15  August 1st, Your Honor.  Transcripts might follow a little
16  later.
17        THE COURT:  Move it up.  You can't run the case this
18  way, I mean, they know that.  August 1st is too late.  That
19  means that they're not going to actually have a serious
20  discussion with these people.
21        You've got to be able to know what calls are
22  critical.  You went through and you indictment these people.
23        MR. GEISE:  I would say by July 1st we give them --
24        THE COURT:  Do you want them to answer the question
25  of whether they're going to take your plea offers?

00017
01        MR. GEISE:  Your Honor, we have given some attorneys
02   and we can do it or they can do it themselves on their
03   computer.  We have sorted so that they have a line sheet for
04   all of the calls on their clients and even a disk that's just
05   the calls on their client on the phone.
06        THE COURT:  Oh, really.
07        MR. GEISE:  We've done that.
08        THE COURT:  He says, no.  What's wrong with him?  He
09   doesn't know that you've done it.  That's the problem.
10        MS. LIEBER:  Your Honor, if I may.  Mr. Daum, you may
11   not remember this.  But, in fact, that's what we gave at his
12   detention hearing for the clients was the filter of the calls
13   for his client and the line sheets for his client.
14        THE COURT:  Well, fine.  Why didn't anybody tell me
15   this earlier?  The government has done a lot for you.  If you
16   have trouble, you write a letter the way that Mr. McDaniel
17   said, you'll get them to listen to those calls and we'll worry
18   about other calls later.
19        MR. DAUM:  But there are additional discovery issues
20   that have presented themselves which would suggest that there
21   are other calls that impact Mr. Carter.  And it is going --
22        THE COURT:  Have you listened to the ones that are
23   directly impacting him?
24        MR. DAUM:  As I said before, the new warden says that
25   his policy is that he's not going to allow counsel to bring in

00018
01  a computer that would allow Mr. Carter to sit and listen to
02  those CDs.  I can only relate to the court what the new warden
03  has told me.
04          I've heard about CTF.  I'm talking about the central
05  detention facility.  These sands shift all the time.  It is a
06  problem for me.  It's a problem for Mr. Carter.  Now it is a
07  problem for the court.  I am looking to the court for some
08  assistance, because I believe --
09          THE COURT:  What do you want me to do?
10          MR. DAUM:  Put him in a halfway house.
11          THE COURT:  Thank you, Mr. Daum.
12          MR. DAUM:  So he can come to my office and listen to
13  the disk on my computer.
14          THE COURT:  Next.  Come up with a solution and I'll
15  help you.  I'm not letting him out.
16          MR. DAUM:  I will file something.
17          THE COURT:  Talk with the government and the
18  government will work with you.
19          MR. GEISE:  We will be glad to give that filter to
20  anyone who wants it.
21          Just so it is clear.  What the computer does is we
22  say, every call to and from this phone number, and it will give
23  them the line sheets with just those calls.  It will give them
24  the disk with just those calls.  It will give them a disk with
25  just those calls.

00019
01          THE COURT:  Really.
02          MR. GEISE:  They do have to take responsibility,
03  however, for the fact that if we are saying, there is a series
04  of calls, where Mr. Jones calls five or six different people
05  and says, do you have the money.  If we do a filter for people,
06  it's just their client's calls.  It's not going to be those
07  other three or four calls in this series, but they have the
08  whole line sheets.  They have all of the calls and we will do
09  the filters, if they want, although I think their computers
10  could do it.
11          THE COURT:  Well, what we really want is you to work
12  with the counsel to make sure that they can make it available
13  for these gentlemen to hear it.  That's all.
14          MR. GEISE:  As the court has pointed out, that's a
15  different problem.  That's not totally in my control.  In fact,
16  that's why I said to defense counsel, is it working at the
17  jail?
18          MR. SUSSMAN:  I don't know if this will solve the
19  problem, but I would suggest, and I'm sure the court will go
20  along with it, the court author a standing order in connection
21  with this case that attorneys, by name, be allowed to bring in
22  equipment by designation --
23          THE COURT:  Absolutely.
24          MR. SUSSMAN:  -- to meet with clients by designation.
25  I'll author it if people will give me the information, and I

00020
01  assume we will get to you and maybe that will work with these
02  folks.
03         THE COURT:  Fine.  I've never had this problem before
04  and I've had these tape cases.  So I'm assuming with a bunch of
05  people working together cooperatively, we will get the tapes.
06  But now you know you can get the tapes in various formats.
07  They will give it to you.  You don't have to sit and listen to
08  thousands of hours.  But I need the government to designate its
09  evidence sooner than July 1st.  That's all there is to it.  I'm
10  not going to try to move this thing along if you can't do the
11  same.
12         MR. GEISE:  We will try to designate the bulk of the
13  calls by June 15th.
14         THE COURT:  Before the next status and that will be
15  somewhere around then.
16         MR. GEISE:  As I said, Your Honor, as long as we all
17  understand that it will be a list of calls from people.  There
18  are other calls we will be using and maybe a couple that will
19  not be in there.
20         THE COURT:  Fine.  I understand.  I want the videos
21  too.  I'm talking about all the exhibits that you intend to
22  introduce other than if you don't have a chemist test, I know
23  that.
24         Is there some other problem now?  Mr. Balarezo has
25  been kind enough to make his office available.

00021
01        Mr. Sussman is going to present an order that will
02   allow counsel to bring computers to the gentlemen who want to
03   listen to tapes.  I think it's a total waste to listen to all
04   the tapes.  But that's your problem, not mine.
05        MR. GEISE:  Your Honor, just to make it clear.  We'll
06   do our best to designate all the calls by mid June.  I'm not
07   sure we can designate every piece of evidence we intend to use.
08        THE COURT:  I want the calls and the videos so they
09   will stop worrying about a universe --
10        MR. GEISE:  All the calls and the videos, I think we
11   can manage.
12        MR. BALAREZO:  Your Honor, this is the point I was
13   trying to make earlier.  My client is the lead defendant who is
14   a target of the investigation.  All the calls deal with him.
15   Most of the videos deal with him.  All I'm saying is, since
16   he's in jail, he's on lock-down 24 hours a day.  If he could
17   have the materials available to him at the jail, he's got all
18   day to look at it.  I don't.  And that would help me
19   tremendously.
20        THE COURT:  He doesn't have the machinery.
21        MR. BALAREZO:  There is a video player at the jail in
22   the lawyers visiting area.  I'm sure there's one somewhere in
23   the jail that could be made available to the prisoners.
24        As far as the audios, I don't know if there's a
25   computer there that can be made available to them to listen.  I

00022
01  mean, otherwise, I'm going to have to go there.  My
02  investigator has to go over there and sit with him for hundreds
03  of hours just to listen to the tapes.
04         THE COURT:  So you're back to his conditions of
05  confinement?
06         MR. BALAREZO:  Which we will deal with later, but I'm
07  just saying that is --
08         THE COURT:  Complicates things, I understand.
09         MR. McDANIEL:  This will hopefully be the last time I
10  stand up, Your Honor.
11         I heard the court to say something about our not
12  being all that sure if we have a firm indictment and I don't
13  know if the government is now planning a superseding
14  indictment.
15         THE COURT:  Yes, they wrote, "The government intends
16  to return a final superseding indictment no later than June
17  30."  If there is to be more than this -- this is a status
18  report that is, I think, on ECF.
19         MR. GEISE:  Yes.
20         THE COURT:  "If there is to be more than one trial in
21  this matter, it may have some impact on the final form with a
22  superseding.  The United States, therefore, asks the court to
23  consider holding another status no later than the 16th," which
24  is going to finalize the schedule.
25         What I intend to do at the next status is if there

00023
01  are, we will know who wants to go to trial and who refuses to
02  accept the disposition.  If the trial is too big, we're going
03  to start cutting it, because we can't handle it.
04          At that point in time, they are also telling us that
05  within two weeks at that point, there will be A superseding.
06  My understanding is that it would basically add forfeiture.
07  That's what we were told the last time.  You weren't here,
08  maybe.  That's what we know.
09          The only other question I wanted to know, one, is we
10  have a speedy trial issue that's still out here.  And as far as
11  I know, I have only one motion.  I don't know.
12          MR. McDANIEL:  I think that's right, Your Honor.
13          THE COURT:  I don't know when your order expired.
14          MS. LIEBER:  Your Honor, I know that the new clock
15  started to run again with the superseding indictment.
16          THE COURT:  Right.
17          MS. LIEBER:  We did not file a second complex case
18  motion and I will do that by the end of next week so that we
19  have another one.
20          THE COURT:  Well, I think we are going to -- the new
21  superseding came down around 3-16.  So the time started to
22  click then, and we are going to move this now, Mr. McDaniel, as
23  long as we can try everybody at once.
24          The other possibility is that I talked to Judge Hogan
25  in doing them back to back with a different judge, coming into

00024
01  do the second trial, if necessary.
02        So we are trying hard to comply with the speedy
03  trial.  It is my hope that the people will see the wisdom of
04  not going to trial and spending their life in jail.
05        MR. McDANIEL:  That's pre-supposes they wouldn't win,
06  Your Honor.
07        THE COURT:  That does presuppose and I'm not
08  presupposing anything.
09        MR. McDANIEL:  The strictures, though, of the
10  marshals service as relates to how many people we can actually
11  try also begs the question as to whether or not the government
12  can provide us with some tentative list of potential groupings,
13  given what it is that we have now.
14        I know we haven't received any -- I haven't received
15  a formal plea offer for by client, but I am assuming that we
16  won't know exactly who is going to actually go to trial until
17  that actually happens.
18        Well, I think we should start talking about the
19  groupings of these individuals too, presupposing that more than
20  six or seven of them go to trial.
21        THE COURT:  That's a lot to presuppose at the moment,
22  it seems to me.
23        MR. McDANIEL:  I guess I'm asking for a date by which
24  we would receive whatever final plea offers we're going to
25  receive from the government.

00025
01          THE COURT:  I'm hoping they're doing it right now
02  really, but what I'm telling is that that's going to shake out
03  before we're back here around mid June, and hopefully we will
04  be doing one trial and not causing the marshal any problems.
05  But if that's wrong, then we're doing two trials and some of
06  this is going to be predetermined in some ways by who is
07  available, not available.
08          Obviously, we are going to have an interpreter, once
09  not twice.  So you can figure that the gentlemen from Texas are
10  going to be going to trial with their clients together.  So
11  there are certain efficiencies that make sense from the courtâ€™s
12  economic standpoint.  You don't split up the people who are
13  non-English speaking.  So you can figure that out.
14          MS. LIEBER:  Your Honor, if I could go to a couple of
15  these issues and make an efficient point.
16          THE COURT:  Quick.
17          MS. LIEBER:  That we have endeavored to available
18  counsel, not those who are in trial frankly because their days
19  are occupied, to make offers to anyone who wants to come in and
20  come up to the annex here in the courthouse with their client.
21  We will sit down and play calls for you.
22          We will show you the pictures, in other words, make a
23  pitch of â€œthis is what we have against youâ€   and sort of the
24  most open discovery as you can give to someone who is
25  incarcerated.

00026
01          And again, I will renew that.  As soon as Mr.
02    McDaniel or Mr. Balarezo are out of trial or on Friday for
03    them.  For any counsel we haven't made this formal offer to,
04    we're happy to do it.  We think it's good for the case, for the
05    efficiencies, Your Honor, is talking about the case, to make
06    that space available, make ourselves and the agents available
07    to show you what we've got.
08          THE COURT:  Mr. McDaniel, you've got to do it on a
09    Friday.
10          MR. MCDANIEL:  My trial is going to be over in the
11    next two or three weeks and so I will available on Fridays to
12    deal with it.  I have spoken with my client and he knows that
13    we are going to be spending a great deal of time after I get
14    done with this trial.  But again, it's about the identification
15    of the information.  Also --
16          THE COURT:  Two things.  I thought you were finished
17    talking.
18          MR. McDANIEL:  No.  I'm through.  But I still wish I
19    knew when I'm going to get this plea offer that is going to
20    control.
21          THE COURT:  She's ready to do it.  After you leave
22    here, I suspect she will tell you when she would like to make
23    the presentation.  The presentation that the government is
24    going to make to counsel plus the client.  Is that right?
25          MS. LIEBER:  Your Honor, these things are sort of in

00027
01  process in any event so, yes, it's part of the process of plea
02  negotiations is showing what we have and talking about what
03  makes sense.
04      THE COURT:  So they will focus you on the particular
05  evidence.  That doesn't mean that counsel, if you're going to
06  trial, are not obligated to consider the universe.
07      But you have an obligation legally and ethically
08  obviously to sit down and hear what they've got to say and
09  communicate it and you'll hear it and that's the main focus for
10  the next really six weeks.
11      Mr. Sussman, I know you're standing up.
12      MR. SUSSMAN:  I know Your Honor said you wanted those
13  of us who have scheduling problems to stay until June.  I think
14  there's no way that I can do October and there's no way that I
15  can do anything after that because I'm in a death penalty case
16  with Judge Collyer.
17      If Your Honor stated until June, that's fine.  But I
18  don't think there's anything that's viable in terms of a trial
19  date that I could accomplish.
20      THE COURT:  Okay.  That's fine.  Well, that's why Mr.
21  Katzoff is here, ready, willing and able.  He seems to be
22  willing to stay put, but you now should be able to get through
23  this process.  You should know something about it to advise
24  your client and to have him now seems to be not useful.  Am I
25  incorrect?

00028
01        MR. SUSSMAN:  I wouldn't say that.
02        THE COURT:  Mr. Conte has the same problem, right?
03        MR. SUSSMAN:  It's not just the scheduling problem.
04   I think I have a fairly good point what the direction is of
05   this trial and it just seems wasteful for me to stay around and
06   have somebody come in later and to play catch up, but I will do
07   whatever the court wants.
08        THE COURT:  Well, maybe you ought to talk with your
09   client.
10        MR. SUSSMAN:  Mr. Maynard.
11        THE COURT:  Mr. Conte, do you have a similar -- do
12   you have any other person that had an --
13        MR. CONTE:  I have a more open schedule than Mr.
14   Sussman.  If this trial was moved eight weeks, I could
15   accommodate it.
16        THE COURT:  I can't do that.  I have a full schedule.
17        MR. CONTE:  I understand.  But if it were split up,
18   then I would be available.  I think the court's idea of staying
19   until June makes more sense for me than it does for Mr.
20   Sussman, right now.
21        THE COURT:  But if you think -- Mr. Sussman, I'll
22   meet with you and Mr. Katzoff at the very end, please.  I'd
23   like to talk to both of you and then I'll figure that part out.
24        Mr. Sussman, you have committed to getting me an
25   order so that the computer stuff can be brought to the jail.

00029
01  They are all in the jail as far as I know.
02          MR. SUSSMAN:  There are some CTF guys.
03          THE COURT:  Give me two letters addressed to both of
04  them.  The marshals service is very helpful.
05          Let's pick a date.  Would you check with Ms. Amato
06  and make sure she knows the dates.
07          We're now down to the point, I think I would like to
08  leave the question of, did anybody have motions that they're
09  aware of as we sit here, for the defendants?
10          Substantive counts are going to remain pretty much
11  the same?
12          MS. LIEBER:  As we said in the March status, the only
13  additional substantive count, there may be a money laundering
14  count but that would be only be with respect to possibly to Mr.
15  Jones.
16          THE COURT:  Would only be Mr. Jones?
17          MS. LIEBER:  Probably only Mr. Jones.
18          THE COURT:  I would like to set a motions schedule
19  for some stuff at least, but I don't want to -- you keep saying
20  that.  That's -- money laundering, I've never heard before.
21  You said forfeiture before.
22          MS. LIEBER:  Your Honor, all along we've certainly
23  been telling counsel that there is a potential money-laundering
24  count coming.  Certainly, it was on my list of things to raise
25  at the last status.  I didn't.

00030
01        THE COURT:  You didn't.
02        MS. LIEBER:  I apologize.
03        THE COURT:  I wrote down, forfeiture.  So the money-
04  laundering goes to just one person.  Okay.
05        MS. LIEBER:  And a potential CCE count as well.  I
06  know Mr. Geise did mention it.
07        THE COURT:  No, he didn't.  No.  I know what a CCE
08  count is.  It's a big difference.
09        MS. LIEBER:  That would solely be with respect to Mr.
10  Jones as well and Mr. Balarezo has known about that.
11        THE COURT:  I don't care whether he knows.
12        You've known that your client may face a continuing
13  criminal enterprise?  I never heard of it before.
14        Fine.  You can do what you want.
15        MR. BALAREZO:  It hasn't been expressed before, but
16  it's not a surprise, Your Honor.
17        THE COURT:  Nothing is a surprise.  That's not the
18  point.
19        So there is no point in Mr. Jones writing motions
20  about the indictment.
21        MR. GEISE:  I would say many of the motions,
22  suppression motions, all of those kinds of things, the
23  superseding indictment isn't going to change those.
24        THE COURT:  What are they moving to suppress?  What
25  is there to suppress?

00031
01        MR. GEISE:  That's up to them.  They're all wiretaps.
02   There are search warrants.  There's a whole universe of
03   material.  It seems to the government that whatever the shape
04   of the superseding indictment, it isn't going to change that.
05        THE COURT:  Don't they need to know what you're going
06   to introduce because otherwise there's no point to suppress it?
07        MR. GEISE:  Well, Your Honor, I think they all know
08   that there are things from the wire that is going to be
09   introduced.  I believe there's no question as to anyone.
10         I would believe as to all the search scenes, there
11   are going to be items introduced.  In virtually all the search
12   scenes, we found drugs and drug paraphernalia which are
13   certainly going to be introduced.  And those search scenes
14   which are linked to someone, which is virtually every search
15   scene, we are going to at least introduce documents and items
16   from the search scene that has the person's name and picture.
17        THE COURT:  Are they all pursuant to warrant?
18        MR. GEISE:  All of them, I believe, are pursuant to
19   search warrants, Your Honor.  Certainly everything that was
20   done here, as I said, I am still wading through some of the
21   stuff in the ICE investigation which I hope to get through in a
22   week or 10 days.  But they've been given copies of all of the
23   search warrants, copies of all the Title III materials.  So I
24   believe those kinds of motions we could schedule.
25        THE COURT:  Now, when would you like to do your

00032
01  motions hearing?  When, in this schedule, do you have planned a
02  motions hearing for all these motions to suppress?  You have
03  all these lawyers here, and you're saying it has to be sometime
04  after June.  You won't find half of them anywhere near the
05  jurisdiction in August.
06          What did you have a mind?  I want the government's
07  evidence to be identified before I see motions to suppress, all
08  the various search warrants.  You might not even want to
09  introduce this stuff.
10          MS. LIEBER:  Your Honor, I want to put on the record
11  that, with respect to the search warrants, we will certainly be
12  introducing items of evidence from every single place that was
13  searched.
14          With respect to the wiretap, obviously we're going to
15  be seeking to admit some of those phone calls but not all of
16  them.  Every counsel that wants a filter on the phone calls may
17  have one in the next week.  Several counsel already do have
18  filters.
19          THE COURT:  But focus on my question.  What if we
20  actually had, and I am not so sure how you get a Frank's
21  hearing for every one of them, but what are we talking about?
22  When do you have that in mind?
23          MS. LIEBER:  I guess I don't understand the question.
24          THE COURT:  Evidentiary hearings.  What if we have to
25  have a pretrial hearing?

00033
01          MS. LIEBER:  Motions to suppress?
02          THE COURT:  Yes.
03          MS. LIEBER:  July, August, September.
04          THE COURT:  I'm in trial for two to three weeks in
05   September.  August, I can't imagine.  Who are you going to get
06   here?  Let's pick a date now.  I'm going to lose these lawyers
07   if I don't tie them up now.
08          MS. LIEBER:  That's fine.  But with respect to the
09   actual amount of time that each of these motions will require,
10   I doubt that they will require an inordinate length of time.
11   The warrants are the same for the search locations.  The Title
12   III, obviously everyone will be litigating the same thing if
13   they're going to litigating Title III at all.
14          THE COURT:  I don't know why you need evidence on
15   Title III.
16          MS. LIEBER:  I'm just saying that in terms of total
17   time for hearings, we don't anticipate a day and a half, Your
18   Honor.
19          THE COURT:  But you have to schedule things.
20          MS. LIEBER:  I know.  I thought that's what we would
21   do here today.
22          THE COURT:  Counsel, Mr. Sussman, we will address you
23   later.
24          It will turn out that the evidentiary hearing will
25   only apply to those who are still going first, but I think for

00034
01  the moment we have to assume everybody is and that's why we
02  have to discuss Mr. Sussman's situation.
03       I have a criminal trial the 31st that's going to go.
04  I think we have to put aside a week.  Is there any week in
05  August?  We have to do it in August because I'm not going to
06  have anything to suppress until the government identifies
07  specifically what items are at issue.
08       MR. BALAREZO:  Your Honor, may I suggest the second
09  half of August?
10       THE COURT:  Well, no.  I want to go away.  I'm going
11  to go away starting the 21st if I have my way.  I will do the
12  14th.
13       MR. CONTE:  I have the trial starting the 15th.
14       THE COURT:  I think you're going to get cut out one
15  way or the other.  You have a trial starting when?
16       MR. CONTE:  The 15th of August.
17       THE COURT:  Well, you know what we could do, I mean,
18  I could take your motions first.  You don't have to sit and
19  listen to other people's motions, if you have motions to
20  suppress, yours could be -- I am not so sure how many are going
21  to get real evidentiary hearings.  Search warrants don't
22  generally have evidentiary hearings in my recollection and I am
23  not even so sure about -- I've done minimizations without
24  evidentiary hearings.
25       MR. GEISE:  I don't think that there would be a great

00035
01  deal of evidence to suppress.
02          THE COURT:  I don't either.
03          Mr. Norris, you were about to tell me you've got a
04  problem?
05          MR. NORRIS:  I do have a problem with August.  Did
06  the court say that the court is going to begin a trial on
07  August 31?
08          THE COURT:  No, July 31st.
09          MR. NORRIS:  Would the court considered the first
10  week in September?
11          THE COURT:  Well, I just set a criminal trial the
12  second week, but I can cut and paste, if I have to, if I can
13  get 90 percent of the people on board.  If you have a motion,
14  we can take it at a different time.
15          MR. McDANIEL:  The 14th is fine for me, Your Honor.
16          MS. LIEBER:  In terms of anything else we need to
17  designate, I'm trying to appreciate the court's concern here
18  about the timing, but basically what we know so far is it's
19  going to be the search team, the wire affidavits.  We can tell
20  the court and counsel within the next two weeks if there's
21  anything else out there.
22          THE COURT:  I take it --
23          MS. LIEBER:  We can't designate calls in the next two
24  weeks.
25          THE COURT:  No, you won't be designating calls.

00036
01  We've already discussed and I am requiring the government to
02  identify their evidence before we get back here in mid June.
03      MS. LIEBER:  What I'm trying to do is make it so
04  that, and counsel are kind of crammed up, and the court is
05  trying to cram this into your August schedule.  If the court is
06  concerned about you can't set motions, you can't require
07  motions until the government has designated their evidence and
08  then give counsel enough time --
09      THE COURT:  The motions will be totally
10  uninformative.  The question is whether I have to have
11  evidentiary hearings; and if I do, I have to set some time
12  aside now.
13      MS. LIEBER:  I appreciate that.  What I'm saying is,
14  Your Honor, that it can be sooner than August, if, in fact, all
15  you are waiting for from the government is for us to designate
16  --
17      THE COURT:  I'm waiting for the superseding
18  indictment and to find out whose motions I've got to hear
19  because I don't know who's in the case until June.
20      MS. LIEBER:  Okay.  I thought you were waiting for
21  the government to designate something else.
22      THE COURT:  You're going to be designating your
23  evidence before we come back here anyways.  That's not a
24  problem.  I'm trying to worry about ten counsel's schedule and
25  mine.

00037
01          I'm sorry.  Mr. Norris is the only person, I think,
02   and Mr. Conte.
03          MR. SUSSMAN:  I am in trial.  I think the court is
04   getting the drift here.
05          THE COURT:  Otherwise, we're okay.
06          Mr. Norris, you start when?  The 15th?
07          MR. NORRIS:  It's not a trial.  I'm out of town for
08   two weeks in August, Your Honor, probably from the 10th to 24th
09   or the 9th to the 23rd.
10          THE COURT:  Okay.  I don't know anything about Ms.
11   Amato.
12          We're going to put aside the week of the 14th.  I
13   don't know if there will be any evidentiary hearings until I
14   see it.  If I don't tie them up, I will never get it done.  So
15   we will set it down for the week of August 7th.
16          MR. NORRIS:  August 14th.
17          THE COURT:  I'm sorry, August 14th.  For whatever
18   evidentiary hearings or arguments on whatever we need.  It will
19   get done.  Otherwise we won't see the trial.
20          I will set a motions schedule when we come back.  The
21   only people who are going to participate in this August 14th
22   parade are going to be those who are going to be in the trial.
23   So I'm not too worried about you, Mr. Conte.  Either you are in
24   a kind of disposition or be cut out or we may have to replace
25   you.  I mean, there are any number of problems and, Mr.

00038
01  Sussman, we'll talk about yours.
02        Mr. Norris, if you have any motions, we have to take
03  them up at a good time.
04        MR. NORRIS:  Very well, Your Honor.
05        THE COURT:  But you're going to end up filing --
06  you're going to be back when, again?
07        MR. NORRIS:  The 23rd or the 24th probably.
08        THE COURT:  Mr. Norris, Mr. Conte, Mr. Sussman.  Let
09  us get one more date.
10        Mr. Balarezo, you're going to have to communicate
11  with Ms. Amato.  It has got to be a real emergency.
12        MR. BALAREZO:  Your Honor, I don't have her calendar.
13  She said it is an emergency doctor's appointment she had.  So I
14  don't know what the dates are.
15        MR. SUSSMAN:  I'm standing in for Mr. Blumenthal.  I
16  am just going to accept what the court puts out.
17        THE COURT:  I hope so.  All right.  The afternoon of
18  the 16th, that's a Friday, that ought to be all right for all
19  of the people who are in trial, the 16th of June.
20        At that point in time, we're going to have a proposal
21  made to us by the government.  We should know, anybody who
22  would like to accept the government's disposition before then
23  they can call my chambers any time.  I will send you to a
24  magistrate judge. I'm in a five-week hearing.  So it will be
25  done.  It will be taken care of.  I will do, obviously, the

00039
01  sentencing.  But if there is anything that can be worked out by
02  way of the disposition, there is somebody available to take it
03  and that ought to be cleared up before the end up May.
04        MR. BALAREZO:  Your Honor, I won't be in the
05  jurisdiction on the 16th, but I expect to leave about the 14th
06  for that weekend.
07        THE COURT:  Am I stuck with the Friday people?
08        MR. BALAREZO:  I think that trial will be done by
09  then.
10        THE COURT:  So when do you leave, the 14th?
11        MR. BALAREZO:  Right.
12        THE COURT:  Can I do it the 12th.  That's a Monday.
13        MR. BALAREZO:  That's fine for me.
14        MR. McDANIEL:  When is the Fourth Circuit Judicial
15  Conference?
16        THE COURT:  Fourth?  I don't know.  I'm in D.C.  Our
17  judicial conference is the week before, the 6th, but I'm not
18  the Fourth Circuit.
19        MR. McDANIEL:  I apologize.
20        THE COURT:  Monday is the 12th.  Are you available
21  the 12th?
22        MR. CONTE:  No.
23        THE COURT:  Morning, afternoon, any time?
24        MR. CONTE:  I could probably be here in the
25  afternoon.

00040
01        THE COURT:  Fine.  We'll do it at 3:00, we will
02   expect you.  3:00 on the 12th.  That's a Monday.
03        MR. CONTE:  I'm sorry.  I might have to ask you to
04   call Judge Williams in Greenbelt.
05        THE COURT:  I don't know what else to offer you.  The
06   only other date I can conceive of, I can do it the 19th, but,
07   Mr. Balarezo, you're not here?
08        MR. BALAREZO:  That's correct, Your Honor.
09        THE COURT:  See, he's gone.  I need him.  He's lead
10   counsel, so to speak.
11        Before that point in time, I've got to know who's
12   going to be in what situation.  We're going to set on the 12th
13   a motions schedule and figure out who's was going to trial
14   exactly when and we'll make any adjustments in the evidentiary
15   hearings.
16        Is there anything?  You'll have to file something on
17   the speedy trial.  Mr. Blumenthal has filed something.  He's
18   not here.  I can take care of that.  And I need to take up with
19   Mr. Balarezo his matter.
20        MR. GEISE:  Who decided they're going to keep the
21   items?
22        THE COURT:  Mr. Balarezo.
23        Your name, please, for the record?
24        MR. GARZA:  Noe Domingo Garza, Jr., representing Roel
25   Bremea.  I have no objections to that date the court set in

00041
01  June, August, but I would respectfully request that the court
02  consider an earlier hearing then three o'clock obviously if it
03  is at three --
04          THE COURT:  I just asked Mr. Conte.
05          MR. GARZA:  I'm sorry.
06          THE COURT:  I did it because of him, what can I do?
07  You can fly, can't you, at night?
08          MR. GARZA:  Were going to be here.  However, I know
09  that requires us to be here an additional day, but especially
10  it is going to take --
11          THE COURT:  Where do you fly to?  You can get down to
12  Houston or Dallas.
13          MR. GARZA:  I'm all the way to Harlington.
14          THE COURT:  To where?
15          MR. GARZA:  Harlington, Texas.  So I fly to Houston
16  and then from Houston to Harlington.
17          THE COURT:  You've got to have a friend in Houston,
18  sorry.  What am I going to do?  He can't be here.  I've got a
19  problem no matter what.  He's going to be in Greenbelt.  I
20  don't care, but what is your problem in Greenbelt?  You are in
21  a trial or something else?
22          MR. CONTE:  Evidentiary motions hearing.
23          THE COURT:  All day?
24          MR. CONTE:  Nobody has filed motions yet.
25          THE COURT:  He can't come the week after.

00042
01       MR. CONTE:  So let's set for noon or 1:00, set it for
02  1:00 and we will just work around it.
03       THE COURT:  What time is your plane?
04       MR. GARZA:  Judge --
05       THE COURT:  I'll do it at 1:30.  We changed the time.
06  Everybody change their calendar.
07       Mr. McDaniel, get it down right, will you?
08       MR. McDANIEL:  I have it, Your Honor.
09       THE COURT:  1:30 on the 12th.  That's the status.
10       The government, I'm issuing an order by the 5th of
11  June, I want them to have a tentative list of the evidence that
12  they intend to introduce at this trial.
13       I understand there maybe a few more calls or there
14  may be a few more of this or that.  It's got to be a tentative
15  list of Rule 16 what you intend to produce in your case in
16  chief.
17       I want anybody who has the slightest interest in
18  discussing disposition, which every counsel is legally
19  obligated to do, to begin that process and get it done within
20  the month of May so that nobody loses the opportunity to get
21  the best possible deal if they want it.
22       MR. GEISE:  Your Honor, I take it that there will be
23  a date for defense counsel to give us a tentative designation
24  of their reciprocal discovery.
25       THE COURT:  I'll worry about that next.  I want to

00043
01  know what the motions are going to be that are not addressed in
02  the indictment next time.
03       If it's just everybody has got their Frank's motion,
04  I have a feeling that it won't take a long time to write them.
05       MR. CONTE:  I don't usually like to come up and
06  suggest things, but it seems to me and I've been in these
07  things before, that the last thing I ever get is the co-
08  defendant statements which always results in people talking
09  about severance.  If there are any co-defendant statements out
10  there, I'd like to know about them as soon as possible.
11       MR. GEISE:  They are scanned on a disk which we gave
12  to counsel.
13       THE COURT:  They're what?
14       MR. GEISE:  There aren't many of them and they are
15  scanned on the disks that we gave to counsel.
16       THE COURT:  Are they statements that were made during
17  the course of the conspiracy, you mean?
18       MR. GEISE:  No, Your Honor.  These are post-arrest
19  statements.
20       THE COURT:  And they're available to all counsel on a
21  disk?
22       MR. GEISE:  Disks.  There weren't many of them.
23       THE COURT:  And all statements of co-conspirators
24  that you would intend would be on the telephones or the videos,
25  I assume.

00044
01      MR. GEISE:  They're all on the telephones.  They're
02  on the videos.  I mean, there may be some cooperator testimony,
03  but obviously, we're not producing that.  That's Jencks.
04      THE COURT:  Obviously, you can't tell me about
05  severance because you don't know who you're going try yet.
06  It's going to be a hard argument to make, just sever me, I
07  don't know what that means.
08      MR. GEISE:  So that it's clear.  On the traditional
09  post-arrest statements, there were very few.  They are scanned
10  on the disk.  I don't think they justify severance motions, but
11  that is up to counsel.
12      THE COURT:  By 6-5, the government will give you a
13  list of what they intend to introduce in their case in chief.
14  It may be that there is a chemist report they don't yet have.
15      Is there any other physical evidence that's coming
16  down the pike that you're aware of other than drug test, lab
17  reports for the drugs?
18      MR. GEISE:  Lab reports.  There may be some
19  fingerprint reports.  I put this all in the government's
20  discovery report and that would be it.  I don't expect any
21  other.  Chemist, fingerprints, that kind of think.
22      THE COURT:  Are you aware of usable print or you
23  don't know?
24      MR. GEISE:  Haven't gotten them back yet, Your Honor.
25      THE COURT:  We have some expert types that won't be

00045
01   available, but otherwise, you'll have it all.
02        Is there any other issue?  We will be back on 6-12
03   that we decided 1:30, please.  We start a trial date in October
04   and we have an evidentiary hearing date starting 8-14.  We'll
05   set the motion's hearing and you'll give me something for the
06   speedy trial.
07      (Proceedings concluded at 3:01 p.m.)
08   CERTIFICATE OF REPORTER
09        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
10   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
11
12
13   WILLIAM D. MCALLISTER
14   COURT REPORTER
15
16