```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
------------------------------X

THE UNITED STATES OF AMERICA       Criminal Case No. 05-386

                v.

ANTOINE JONES,

                Defendant,

------------------------------X   Washington, D.C.
                                  Friday, February 8, 2013
                                  2:34 P.M.


        TRANSCRIPT OF JURY TRIAL - DAY 11 - P.M. SESSION
           BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: Darlene Michele Soltys, AUSA
                    Courtney Urschel, AUSA
                    U.S. ATTORNEY'S OFFICE
                    555 Fourth Street, NW, Room 4110
                    Washington, DC 20530
                    (202) 252-7685


For the Defendant:  Antoine Jones, Pro Se

                    Jeffrey Brian O'Toole
                    Errin Rae Scialpi
                    O'TOOLE, ROTHWELL, NASSAU & STEINBACH
                    1350 Connecticut Avenue, NW, Suite 200
                    Washington, DC 20036
                    (202) 775-1550


Court Reporter:         Lisa Walker Griffith, RPR
                        U.S. District Courthouse
                        Room 6507
                        Washington, D.C.  20001
                        (202) 354-3247
```

1              **AFTERNOON SESSION**

2          THE COURT:  Okay.  We have lot to cover, counsel and

3     Mr. Jones.

4          Can I address a couple of quick things?  You've seen

5     his list.  There are three people in the D.C. Jail who will

6     have to be brought up here.  Is there anything the Government

7     wants to say about those three?  Two, three and four?  I

8     assume they have to do with Mr. Zintura; correct?

9          MR. JONES:  Yes, ma'am.

10         THE COURT:  Okay.  But they can't just say what

11    Mr. Zintura said.  Do they have something different to add?

12    Mr. Zintura said on the stand that he told all these people

13    he didn't know you.  That is the evidence, that until

14    November he never told anyone he knew you.  So, these people

15    have to have something else to say other than to just support

16    what Zintura said because that's now uncontested.  And they

17    don't contest it either.

18         MR. JONES:  So, do we get a stipulation or are you

19    saying that he testified that he told all three of them?

20         THE COURT:  Well, he certainly testified about the

21    cellmate.  I don't know who the other two necessarily -- will

22    the Government stipulate that he never told any person in the

23    jail that he knew Mr. Jones before he talked to the

24    Government in November?  I think he said it at least as to

25    two on of these.  But I don't know who's who.  He certainly

1    said it as to Keyon Randolph.

2           MS. SOLTYS:  We agree with what the Court said, that

3    is, that Mr. Zintura did not deny that he -- he told people

4    he did not know Mr. Jones until the point, until November

5    when he starts cooperating.

6           THE COURT:  So the only thing is, do any of these

7    people have anything to say after November?  You can't --

8           MR. JONES:  Well, Your Honor, like you say, if it's

9    a stipulation, can we get a stipulation, then?

10          THE COURT:  We can stipulate that Mr. Zintura, I can

11   tell the jury, you know, you can read his testimony.

12          Now, let me hear from Mr. Jones on this one.

13          MR. O'TOOLE:  I'm just walking by.

14          THE COURT:  He's got these, I'm sure.

15          MR. JONES:  Your Honor.

16          THE COURT:  I'm telling you how a trial works.

17          MR. JONES:  Right, and this is my first time so

18   you've got to understand.

19          THE COURT:  I know, but I have a right to tell you

20   that a person cannot come and testify to the same thing the

21   Government's witnesses did.  It's in evidence.  You got what

22   you wanted from the guy.  Unless you have anybody to say

23   anything contrary to his testimony, you can't contradict his

24   testimony by introducing testimony that says the same thing.

25          MR. JONES:  What about my investigator, then?

1        THE COURT:  Well, we haven't got to her.  I'm on

2   these three.  I doubt very much -- is there any basis, does

3   your investigator have any basis to think that any of these

4   three people have anything to say that's different than

5   Mr. Zintura?

6        MR. JONES:  Well, at least with my investigator, the

7   way he testified is basically like my --

8        THE COURT:  I'm only on these three.  Can you stick

9   with it?  Edwards, Randolph and Bowman.  I'm looking at three

10  writs here.

11       MR. JONES:  Okay.  If this is what you saying is

12  true, because right now, Your Honor, I haven't had a chance

13  to read everybody's transcripts because I'm, you know, trying

14  to catch up.

15       THE COURT:  Right.

16       MR. JONES:  So, my thing is, if it can be any

17  stipulation that, you know, unless you saying that it --

18       THE COURT:  You don't need a stipulation.  You can

19  read the testimony of what he said to the jury again if you

20  want.

21       MR. JONES:  Okay.

22       THE COURT:  It's in evidence.

23       MR. JONES:  I didn't know that.

24       THE COURT:  Unless you have something to say to

25  contradict the guy, people don't come to testify to say the

```
1    same thing that someone else said on an issue like that.
2            MR. JONES:  Okay.  That's no problem with those
3    three.
4            THE COURT:  If you want to check with your
5    investigator, but I'm not bringing them up here at the
6    moment.
7            MR. JONES:  Pardon me, Your Honor.
8            (Pause.)
9            MR. JONES:  Your Honor, would these three
10   individual, what my defense was to show the jury that, not
11   only once, he went out, especially with the first person,
12   before he even thought about cooperating, I don't know when
13   he thought about cooperating.  Before he even -- this guy
14   that he talked to knew of me, he went to this guy and
15   volunteered that he knew me.  So basically --
16           THE COURT:  Which guy?
17           MR. JONES:  His cellmate, Keyon Sanders.  He
18   volunteered --
19           THE COURT:  Randolph.
20           MR. JONES:  Randolph.  Is it Keyon or Randolph?
21           THE COURT:  Keyon Randolph is the name.
22           MR. JONES:  Oh, Keyon Randolph.  This guy didn't
23   know me.
24           THE COURT:  Keyon.
25           MR. JONES:  Yeah, he didn't know me at all.  When he
```

1    first came into the unit that I was in, this is when he was

2    telling somebody when he realized who I was, that his

3    cellmate was telling him about me.  And this is when I went

4    to him, and I asked him, can you tell that to my lawyer or my

5    investigator.

6          Now, the point that I'm trying to prove, with at

7    least this gentleman right here, is very important that the

8    jury, he volunteered to tell this guy this.  This guy didn't

9    ask him anything about me.  This guy didn't know me at all.

10         THE COURT:  Okay.  I'll sign this one.  That's

11   Keyon.

12         MR. JONES:  Okay.  The other two --

13         MS. URSCHEL:  Which one is that?

14         THE COURT:  Keyon Randolph.

15         MR. JONES:  Right.  The other two is basically, one

16   of them, William Bowman was going to testify that basically

17   the part that they both was in the gospel choir together.

18   And during the time he was in the gospel choir.  And if he

19   ever seen Mr. Zintura mention me to him while he was in the

20   gospel choir.

21         THE COURT:  And did he?

22         MR. JONES:  No, he mentioned later on, if I'm

23   correct, because I didn't want to talk to Mr. Bowman, because

24   I said, look, I don't want to talk to you, I let you deal

25   with my investigator.  I just want you to tell the truth.

1          With Mr. Bowman, he basically, the same way, went to

2    Mr. Bowman and mentioned me to him.  The guy didn't even know

3    that he mentioned me.  But he told him one thing that he

4    didn't know me.  Then I came back with a whole different

5    story on the second one.

6          THE COURT:  Well, but that would be consistent with

7    his testimony, if the second one came about after he started

8    cooperating.

9          MR. JONES:  Okay.  Yeah.

10         THE COURT:  So, I don't see.  You'll have to give me

11   a proffer from the investigator out of the presence of the

12   Government.  I'll sign one, I'm not signing the other two.

13         MR. JONES:  All right.

14         THE COURT:  Okay.  Now, let me read this other one.

15         Let me tell you, I've confirmed, by the way, that

16   the three people that we've just talked about are in the

17   jail.  Kevin Holland's in the jail.  He's represented by

18   Joseph Conte.  Conte, C-O-N-T-E.  He's got a lawyer, Holland.

19   He's in the jail, as is Maynard who has a lawyer.

20         And I've given you -- is there anybody on this list

21   that you're going to take off based on anything?  Good

22   judgment or anything else?

23         MR. JONES:  Your Honor, so you won't waste your

24   time.

25         THE COURT:  That's good.

1          MR. JONES:  We'll take off Bowman and Edwards.

2          THE COURT:  Edwards?

3          MR. JONES:  Yes, and Bowman.

4          THE COURT:  I just took them off.

5          Okay.  Anybody else?

6          MR. JONES:  You didn't take them off.  You said you

7    was going to get back.

8          THE COURT:  All right, you withdraw those two.

9          Anybody else you'd like to take off?

10          MR. JONES:  No, ma'am, everybody else --

11          THE COURT:  Well, can I understand how Lawrence

12   Maynard is going to escape, given what he said under oath?

13   There's a transcript of him agreeing and he signed under oath

14   that he was in a drug conspiracy with you.  Does that really

15   help you?

16          MR. JONES:  He is aware of that.  He talked to

17   Mr. Lyons, and we're prepared to move forward to this trial.

18   So he understands what the Fifth Amendment is and he

19   understands waiving his Fifth Amendment.

20          THE COURT:  Well, all right, we're going to have to

21   take it out of the presence of the jury.

22          MR. O'TOOLE:  If it will help the Court, I had a

23   long meeting this morning in my office with Mr. Lyons.

24          THE COURT:  Fine.

25          MR. O'TOOLE:  Who is prepared to be here and watch

1    his client testify.

2              THE COURT:  Well, that's fine.  But before that, do

3    I have to worry about another Fifth Amendment, that he lied

4    under oath?

5              MR. O'TOOLE:  No, I -- well, I think that, at least

6    his lawyer is prepared to tell him that he has no Fifth

7    Amendment reason not to testify, according to what he told me

8    this morning.

9              THE COURT:  Okay, let's even accept that.  I don't

10   understand that offhand.

11             MR. O'TOOLE:  That's helpful.

12             THE COURT:  What?

13             MR. O'TOOLE:  That's helpful, thank you for

14   accepting that part of it.

15             THE COURT:  Well, I'll accept it.  I mean, I know

16   you're telling me what Mr. Lyons said.  But at the same time,

17   that whole admission is going to get into evidence as a

18   statement of Mr. Maynard in which he says he's involved in

19   drug dealing with Mr. Jones.  So is Mr. Jones going to attack

20   him or what?  I don't understand.  Let's assume he has no

21   Fifth Amendment.

22             MR. O'TOOLE:  I think you want to probably hear from

23   him and not from me on that, but I'm just telling you the

24   part that I have control --

25             THE COURT:  Yeah.  But he's read that statement of

1  facts.

2          MR. O'TOOLE:  Of course.

3          THE COURT:  Of course?

4          MR. O'TOOLE:  Yes, he has.

5          THE COURT:  He has.  Okay.  So you know that will

6  all come out.  There's no way to stop it.

7          MR. JONES:  Not only will it come out, Mr. Jones

8  might bring it out.

9          THE COURT:  Well, I don't care how it comes out.  I

10  don't see how it helps you to have an admission that

11  somebody, your buddy was in a conspiracy with you.

12          Okay.  All right.  Maynard then, when we get to him,

13  I will ask that Lyons come, and I'll -- I don't know.  And

14  maybe everybody could help me on this, whether or not --

15  let's -- I don't know if he's going to walk away from that

16  statement, but at that point he would be admitting perjury.

17  So I need to know whether I have to advise him on the Fifth

18  Amendment.  I need to know the law on that one.

19          Mr. Lyons is a good lawyer, but anyways.  Okay.

20          Is there anybody else, put aside the two people,

21  number 16 and 17, that you have any other issues with?  I

22  have an issue with one, but I'll take it up out of the

23  presence of any people here.

24          MS. URSCHEL:  As I mentioned before the break, the

25  Government, well, witnesses 12, 13, 14, 15 and 20, the

1   Government does have an issue with those because we think

2   they would testify about the affidavit which would be

3   irrelevant.

4           THE COURT:  Okay.  I think we can take up those.

5           MS. URSCHEL:  Additionally, we believe the testimony

6   of Agent Yanta would be irrelevant.

7           THE COURT:  Wait a minute.  The one problem we have,

8   okay, Mr. Jones wants to put on various people to talk about

9   coded narcotics communications.  Are we now back to the text

10  or are we talking about anything that the jury has heard?  Is

11  there anything, are any of these people going to talk about

12  the binder, that's WT-6, is it?

13          MR. JONES:  No, no, ma'am.

14          THE COURT:  Okay.  Then they would by definition be

15  talking about conversations that are not in front of the

16  jury.

17          MR. JONES:  They're going to be talking about

18  conversations that is in this investigation and these agents

19  and detectives had picked as coded conversations,

20  communications.

21          THE COURT:  Well, we know that Yanta did that.  Who

22  else did it?

23          MR. JONES:  I don't know until we ask Yanta, did

24  Norma Horne help her to evaluate this?  We don't know, Your

25  Honor.  We haven't asked Yanta to say did anybody else help

1    you to say what these coded conversations or communications

2    is.

3         THE COURT:  You asked Horne that.  And she said she

4    didn't know about them., I believe.  I do not believe that

5    you're entitled to elicit the fact that an agent, who did not

6    testify here, back, in order to sustain probable cause

7    misinterpreted, allegedly, but let's say she did, text

8    messages from August.

9         If you have anything to say about the wire, you can

10   do it.  But the text messages that predate the wire, and are

11   all done by text as opposed to conversations on the cell, and

12   the fact that it won't make one iota of difference to the

13   jury if they misunderstood communications that predated

14   September.

15        MR. JONES:  I disagree, Your Honor.  I think the

16   jury will see that these agents --

17        THE COURT:  Well, the only one we have --

18        MR. JONES:  -- and officers can make mistakes.  And

19   this is my defense.  I just want a complete defense to show

20   that they can be mistaken about the communication, not only

21   on the wire, on the text messages.  Any communication with

22   Mr. Jones.  And all of these people were targeted in this

23   investigation.

24        THE COURT:  I understand.  Apparently giving the

25   benefit of the doubt in that paragraph, was it 26, counsel?

1   Of the affidavit that was filed when?  I need to see the

2   affidavit again.

3           MR. JONES:  September the 2nd.

4           THE COURT:  We have it.

5           Sarah, do you have handy the September 2nd, Yanta?

6           It's Yanta; right?

7           MR. JONES:  Yes, Yanta.

8           THE COURT:  The last trial, it was in a different

9   context completely.  She testified that affidavit, her

10  credibility was at issue for purposes of that affidavit.

11  We're not here to litigate the probable cause for the

12  issuance of the search warrant.  The fact that there was --

13  she would interpret some code, conversations, if you have

14  anything to go to the wire, I can sort of see it.

15          MR. JONES:  But this is before the wire.  This is

16  basically how they got the wiretap was this communication

17  that they said was not Carter's.

18          THE COURT:  Right.  That may go to the legality,

19  which we've litigated ad nauseam, of the warrant for the

20  Title 3.  But I do not see its relevance to the jury here

21  because Yanta didn't testify.  That affidavit is not in

22  evidence.  That affidavit, her part of that affidavit was --

23  became at issue.  So her credibility was at issue.  The fact

24  that she may have misinterpreted some --

25          MR. JONES:  Communications?

1    THE COURT:  -- text messages.  Well, it's more than

2    communications.  It's specifically text messages.  And she

3    used it in an affidavit is not relevant to the jury.

4    So do these people have any other purpose for that?

5    We're not getting into her affidavit regarding text messages.

6    I think, first of all, there's a lot of difference between

7    June, July, August text messages and your private cell phone.

8    So, for the record, so the Court of Appeals knows,

9    there was discussion by -- it's Stephanie Yanta's affidavit,

10   paragraph 26, which raises the question of what Broussard was

11   saying.  In May there's a conversation between two

12   Broussards, Damien and Q-U-E-N-T-S-A, and Jones about their

13   believing that the messages are consistent with an encrypted

14   narcotics discussion.  And it may well be she's wrong.

15   Paragraph 27 has to do with Ward and Jones.  Ward's not on

16   this list.

17   Again, paragraph 28 talks about it.  Here's

18   T-Y-M-I-R-A Hunter, again, the text message would be from

19   August 5.

20   And then there's suspicious phone calls or messages,

21   sorry, one Clarissa Jones, Anita Worley, I think.  That's

22   paragraph 29.

23   This is an affidavit that was executed on -- by

24   Stephanie Yanta on the 2nd, 2005.  The Court is ruling that

25   to the extent that these paragraphs may ultimately not be

1    correct is not relevant to this jury.

2           Probable cause is a whole different standard.  Her

3    belief about these calls, whether it's right or wrong, is not

4    relevant given the posture we're in now.  So are any of these

5    people, 12, 13, 14, 15, who was the last one?  Nineteen or

6    20?

7           MS. URSCHEL:  Twenty, Your Honor, Shenese Gilmore.

8           THE COURT:  Yeah.  Do they have anything else to say

9    other than talking about text messages?

10          MR. JONES:  Shenese Gilmore testified in both

11   trials, Your Honor, and it wasn't about the text messages.

12          THE COURT:  Okay.  Remind me, I don't remember.

13          MR. JONES:  It was a lot, she was up for a couple of

14   hours.

15          THE COURT:  Who?

16          MR. JONES:  Shenese Gilmore was in both trials, she

17   was the head of the bartenders.  And she testified for about,

18   almost half a day both times.

19          THE COURT:  Did she testify about things other than

20   the text messages?

21          MR. JONES:  She never testified about the text

22   messages.

23          THE COURT:  Okay, all right.

24          MR. JONES:  She testified about the club.

25          THE COURT:  But Hunter, Broussard, Jones and Worley

1    are all relevant to the paragraphs we just went over?

2          MR. JONES:  Yeah, the coded communication, yes.

3          THE COURT:  Do they have any other relevance?  No or

4    yes?  Any other relevance?

5          MR. JONES:  No.

6          THE COURT:  Okay.  Then the Court will uphold the

7    Government's motion in limine as to 12, 13, 14, and 15.

8    Okay.

9          Then what order do you think you're going to have

10   these people?  Who's coming up first?  Because I need to

11   worry about Fifth Amendment things.

12         I assume that Wills and Peacock come again.  That's

13   not a problem.  Derrick Gordon has do with North Carolina.

14   And you would want him to contradict some of the people who

15   testified; is that right?

16         MR. JONES:  Yes.

17         THE COURT:  Okay, so he'll be here.  Wills and

18   Peacock are Hampton and would have to do with Kane, I guess.

19         Randolph's coming and he doesn't have any Fifth

20   Amendment problems.  Is he down there serving a sentence?

21   Does anyone know?  Randolph?

22         MR. JONES:  He might be under violation, Your Honor.

23         THE COURT:  Oh, okay.  You're not aware of any Fifth

24   Amendment problems for him?

25         MS. SOLTYS:  I'm sorry, Your Honor, who are we

1    talking about?

2            THE COURT:  Randolph, number two.

3            MR. JONES:  Cellmate.

4            THE COURT:  I just want to know whether I need to

5    worry about lawyers.  Somebody has got to give me a hint.  I

6    don't know enough about these things.

7            MS. URSCHEL:  Your Honor, if he's in jail, we assume

8    he has a lawyer and he could potentially have a Fifth

9    Amendment.  We don't know too much about this person, so.

10           THE COURT:  Well, you better start -- you're the

11   only one -- he's only calling him for his discussions with

12   Zintura.  So, he doesn't know anything about the facts of

13   this case.  So, I don't know what, if there's some problem

14   anybody knows about, let me know.  I don't see that I have to

15   worry about a lawyer for him.  He doesn't have any lawyer in

16   this case.  Maynard does.

17           MS. SCIALPI:  I looked up his case, D.C. Superior

18   Court docket.

19           THE COURT:  Randolph.

20           MS. SCIALPI:  Keyon Randolph on line.  And I'm

21   assuming it's the same Keyon Randolph.  I didn't have any way

22   to cross-check it, and I believe he's represented by Kevin

23   Irving, and that he's pending sentencing in a case.

24           THE COURT:  Okay, all right.

25           MS. SCIALPI:  That's as much as I know.

1          THE COURT:  All right.  Somebody gave me a subpoena

2     here with a DCDC number, so it's easy enough to figure out

3     what he's up to.

4          MS. SOLTYS:  Can I just ask do you know whether he

5     was convicted at trial or whether he pled guilty?

6          MS. SCIALPI:  Mr. Randolph?  I'm not sure.  I think

7     he pled guilty, but that's just --

8          THE COURT:  Well, wait a minute.  I ran some of this

9     stuff, maybe I know.  Holland, I've got his docket here, just

10    for your use, he's federal court 13, criminal 33.  He's

11    before Judge Contreras.  He was here today.  And Joseph Conte

12    appears for him.  So could you give this to the, Gwen, give

13    it to the defendant.

14         Adrian Jackson, we are unable to locate.

15         All I know on this Randolph, Keyon Randolph, I have

16    a date of birth and an age.  And I don't know what system,

17    Appriss?  A-P-P-R-I-S-S, Inc.  So, the Government can look at

18    this and defense stand-by.  He pled guilty, says Gwen.

19         THE DEPUTY CLERK:  He pled guilty according to D.C.

20    Superior Court.

21         THE COURT:  That's everything I know about the

22    locked up people.

23         Are you going to tell us when to put in the come-up

24    for Maynard so that we can make sure we have a few moments to

25    get Mr. Lyons here?

1          MR. JONES:  Your Honor, I think the defense start

2     Tuesday.  So I guess he could come up Monday or come up

3     Tuesday, early.

4          THE COURT:  Tuesday, okay.

5          MR. JONES:  Yeah.

6          THE COURT:  Do you have a come-up for --

7          (Court and Clerk conferred off the

8       record.)

9          THE COURT:  And when do you want the Government

10    people here?

11         MR. JONES:  I would probably go with them first.

12         THE COURT:  Okay.  O'Brien.

13         Now, I will remind you, you cannot just put somebody

14    on to say that Yanta, did you say this in an affidavit, and

15    then decide to bring in all these people.  That's not

16    permissible.

17         MR. JONES:  Your Honor --

18         THE COURT:  You may have something else to bring up

19    with her, but I'm telling you, you can't do that.

20         MR. JONES:  In the first trial you allowed all four

21    agents to impeach John Adams through his 302 with Agent

22    Yanta.

23         THE COURT:  But that's because -- you can't call her

24    for that purpose only.  If you have something else, that's

25    something else.  But you can't call Yanta.  The Government,

```
1    of course, we allowed -- it wasn't the Government impeaching
2    Adams.
3              MR. JONES:  Yes, it was the defense lawyers who, all
4    four of them impeached Adams through his -- because you told
5    them that they couldn't impeach John Adams with his 302.  So
6    they called Yanta back.
7              THE COURT:  Right.
8              MR. JONES:  To impeach Adams.  So what I'm going to
9    do is the same thing, impeach the Government witnesses
10   through their 302s.
11             THE COURT:  Yes.
12             MR. JONES:  Because it is inconsistent.
13             THE COURT:  But Yanta was not a Government witness
14   here, that's the problem.
15             MR. JONES:  Because, Your Honor --
16             THE COURT:  They played -- they were fast and
17   furious here.  They didn't call her, so you don't get that
18   opportunity.  You can impeach --
19             MR. JONES:  Kellie O'Brien, because she was here.
20             THE COURT:  O'Brien.
21             MR. JONES:  And Norma Horne and Kirschner.
22             THE COURT:  And Kirschner, I agree with that.  But
23   I'm just telling you, I don't know what you need Yanta here
24   for.
25             MR. JONES:  Your Honor, the reason why Yanta wasn't
```

1    here because you told them to not bring Yanta.  In the first

2    trial you told them to get Yanta off the stand, and she

3    haven't been back since then.

4          THE COURT:  Oh, I did?  She wasn't on the second

5    trial either?  I would have told them to get a lot of people

6    off the stand.  I've always thought they could try this in a

7    week and a half, but they never listen to me.

8          My ruling on Yanta is complete.  But you've got to

9    have Kirschner, if he has contradictory evidence for

10   Kirschner, Horne or O'Brien, he's entitled to do it.

11         MS. URSCHEL:  We agree, Your Honor.  However, we

12   believe it would make sense to have Mr. Jones make a proffer.

13   And the reason why is because we're concerned that he is

14   going to try to call some of these law enforcement agents to

15   impeach some of the Government's cooperators.  There's a

16   system to do that.  If he has an exact statement said by one

17   of those cooperators on the stand where they denied saying

18   it, then, of course, he can call one of these witnesses as to

19   that statement.

20         THE COURT:  Sure.

21         MS. URSCHEL:  But comments made by Mr. Jones, and,

22   of course, he's not a lawyer and doesn't know all the

23   details, makes the Government concerned that he plans to call

24   these witnesses to just generally get out what it was that

25   these cooperators said in prior debriefs, which, of course,

1    would not be appropriate unless there was a direct statement

2    that was being impeached.

3         THE COURT:  I agree.  Well, I don't know -- do you

4    understand what she's saying, sir?

5         MR. JONES:  Your Honor, basically I studied, while I

6    was locked down, that law on impeachment and those 302s.  So,

7    I understand, not only what she's saying, I'm going to pick

8    out the contradictions.

9         THE COURT:  Right.  In other words, though, you're

10   supposed to take the cooperators, well, we'll give you a

11   little leeway.  But to have a contradiction, you have to be

12   ready to show us what the cooperator said that you have

13   something that's inconsistent.

14        MR. JONES:  Right.  That's exactly what I'm going to

15   do.

16        THE COURT:  And did you ask the cooperators about

17   the inconsistency and they denied saying it or whatever?

18        MR. JONES:  All three of them is inconsistent.

19   Zintura, Barron and Bermea.  So their whole testimony, all

20   three of them, it's not even --

21        THE COURT:  Inconsistent with their 302s?

22        MR. JONES:  With each other.

23        THE COURT:  Well, you can argue that to the jury.

24   But that doesn't -- you don't get Kirschner and Horne and

25   O'Brien don't help on that.  Your argument to the jury is

1    listen to what they had to say and it's not consistent

2    because of this, this and this.  You got that already.

3            MR. JONES:  Right.

4            THE COURT:  But she's saying that if you want to

5    impeach one of the cooperators with something they supposedly

6    said in the 302, you're supposed to ask the witness, one of

7    the cooperators, did you say this to the agents on

8    such-and-such a day.  You did that with one of the witnesses,

9    Zintura, quite effectively.  You can introduce the testimony

10   of the person who wrote the 302 to contradict Zintura.

11           MR. JONES:  Okay.

12           THE COURT:  So you have to be able to look at the

13   transcript and tie it back to what the cooperator said.

14           MR. JONES:  Okay.  I will do that.

15           THE COURT:  So it's going to be Barron.

16           MR. JONES:  Zintura.

17           THE COURT:  Zintura, Johnson.

18           MR. JONES:  And Bermea.  Yeah, Johnson, too.

19           THE COURT:  And Bermea.  If they have 302s, you can

20   call an agent who wrote the 302, wrote it, and say didn't

21   Mr. Zintura tell you this back then.  As long as it's

22   inconsistent with what Zintura told us during the trial.

23           MR. JONES:  Right.  Only one problem.  One of the

24   302s is a 2010 Barron, and it was agents from Texas.

25           THE COURT:  Well, maybe you can get the Government

1  to ask him.  I don't know.  To complete the impeachment in

2  theory, you've got to get somebody who was at the debriefing.

3           MR. JONES:  Okay.  I will have that Monday.

4           THE COURT:  Have what Monday?

5           MR. JONES:  The information you said.  They want a

6  proffer of what, where I'm going to impeach at?  Or you

7  just -- as long as I know what I'm doing.

8           THE COURT:  Well, maybe you can ask them for a

9  stipulation on that one.  I mean --

10          MR. JONES:  Okay.

11          THE COURT:  So, at the moment, I don't hear any

12  basis to allow Yanta to testify.  We're not getting into

13  those text messages.  So I don't know what she adds.

14          MR. JONES:  Court's indulgence.

15          (Pause.)

16          MR. JONES:  Your Honor, number 23 is Tom Cook.  We

17  would be calling him.  He's a Sprint supervisor.

18          THE COURT:  We're going to talk about him out of the

19  presence of the Government.

20          MR. JONES:  Oh, okay.

21          THE COURT:  I wanted a proffer and I still want a

22  proffer.  So we can talk about it, but we don't have to do it

23  in front of --

24          MR. O'TOOLE:  The reason is it's related to Yanta.

25  So I think if you're going to -- I wouldn't finally resolve

1    Yanta until after --

2            THE COURT:  I have finally resolved Yanta.

3            MR. O'TOOLE:  Well, I would ask the Court not to for

4    another reason related to that witness.

5            THE COURT:  O'Brien testified about how they got the

6    longitude and latitude.

7            MR. O'TOOLE:  No, she didn't, with all due respect.

8            THE COURT:  She didn't?  Oh.

9            MR. JONES:  So when we talk about Tom Cook, we would

10   be talking about Yanta at the same time?

11           THE COURT:  Okay, but we finished Yanta on the text

12   messages.

13           MR. JONES:  Right.

14           THE COURT:  All right.  Obviously, Deniece Jones,

15   you can have testify.  Obviously, so Gilmore is coming.  I

16   don't know who Leaks is.

17           MR. JONES:  Leaks is the guy who was in Summit

18   Circle, who was living in Summit Circle.

19           THE COURT:  Okay.  He'll be here.

20           MR. JONES:  He has a criminal record so if the

21   Government want to check.

22           THE COURT:  All right.  Gregory Leaks sounds like

23   he'll be here.  He's trying to say that the other guy didn't

24   live there, Zintura.  Okay.

25           You don't know where Adrian Jackson is any more than

1    anyone else.  So you don't know whether he'll be here; is

2    that correct?  He's a question mark.  I can't find him.

3    Right, Adrian Jackson is a question mark.

4            MR. JONES:  We're still trying to reach him, Your

5    Honor.

6            THE COURT:  Okay.  Twelve, 13, 14, 15 are upheld for

7    the Government.

8            What about Layvance Howard?

9            MR. JONES:  He's the guy that received the coat

10   that's in the ICE photo.  Lawrence Maynard, it was Lawrence

11   Maynard coat, and he gave it to Layvance Howard.

12           THE COURT:  I'm sorry.

13           MR. JONES:  Layvance Howard is one of Club Levels

14   employees.  And the jacket that's in the ICE photos,

15   Mr. Maynard gave that jacket to --

16           THE COURT:  Oh, okay, so this goes back to Hampton

17   Court?

18           MR. JONES:  Yes.

19           THE COURT:  Okay.  I assume we'll see him here.

20           Okay.  That leaves Robin Bradshaw.  I mean, she has

21   to say something inconsistent with Zintura to be relevant,

22   unless there's something else she's got here.  He said he

23   signed that thing.

24           MR. JONES:  Your Honor, you have to listen to -- you

25   got to go back to his testimony.

1          THE COURT:  Okay.

2          MR. JONES:  He made her look like she was just

3     breaking the law.  And that's -- you have to read his

4     testimony over, it's basically like she's somebody shady.

5     And she wasn't really an investigator, and she was basically

6     breaking the law to come down there and made him do that.

7          THE COURT:  I don't know.  Frankly, I have my doubts

8     about whether or not you can ask for a legal visit with

9     somebody else's client or somebody else's -- I don't know

10    that.

11         MR. JONES:  This is what I need to get out to say,

12    to really show, because she have e-mails from Mr. Balarezo

13    who gave her permission to go out there.  And in the e-mail

14    told her what to do.  And we could stipulate this is an

15    officer of the court.

16         THE COURT:  Who's the officer, she's not an officer

17    of the court.

18         MR. JONES:  Mr. Balarezo.

19         THE COURT:  Oh.  What do you have to say about all

20    this?  You know, and I thought about whether I was

21    required -- I gave thought to this, even though I have the

22    greatest respect for Mr. Balarezo, whether I was required to

23    report him to the grievance committee and/or the bar.  And I

24    don't think I do, given the chronology.  And so that maybe we

25    could work this out in some fashion.

1            The chronology indicates to me that he didn't know

2     he was involved in the Jones case for a while.  And she's

3     floating around there, prior to that time.  And I've run this

4     by the public defender who represented him -- not -- yeah,

5     him, Zintura.  It's very troublesome to me.  But I think -- I

6     don't think -- I think it's cloudy enough that I will not

7     take action, although I feel bad about it.  I think there

8     could be an argument either which way.

9            MS. SOLTYS:  I don't think it's as cloudy as the

10    Court thinks.

11           THE COURT:  Well, I'm not referring him.  You can

12    refer him, but.

13           MS. SOLTYS:  I went back to the testimony of, I

14    believe Katerina Kane in the second trial to see that she

15    mentioned Daniel Zintura, so it was clear that Daniel Zintura

16    was somebody who was involved in this conspiracy so that

17    Mr. Balarezo knew that this person was --

18           THE COURT:  I'm not going to argue with you.  I'm

19    just telling you.  I'm not arguing with you.  But what I'm

20    troubled by is I don't want her to -- you know, maybe she

21    could testify that I went down there at the request of his

22    lawyer and leave it at that.  And, but I'm not getting into

23    the legal part with the jury.  It's too complicated.

24           MS. SOLTYS:  I'd like to cross-examine her with Rule

25    4.1 and --

1          THE COURT:  She's not governed by Rule 4.1.

2          MS. SOLTYS:  She's governed by 5.3, which talks

3     about the attorney that supervised people have to follow the

4     same ethics, the same standards as everyone else.  And 4.1

5     says you can't have contact with unrepresented parties

6     without the consent of their attorney.  So I'd certainly like

7     to put her on the witness stand and ask her and have her say

8     she did this at the direction of Mr. Jones's previous

9     attorney and without the consent of Carlos Vanegas and

10    whether or not she knows that she's not allowed to have

11    contact --

12         THE COURT:  Wait, what does 5.1 say about an

13    investigator?

14         MS. SOLTYS:  Well, I think 5.3 talks about the

15    people that are supervised by attorneys.  It says that

16    attorneys have obligations to -- that the ethics in which

17    they are bound by extend down to the people they supervise.

18         THE COURT:  But let's assume that the e-mails show

19    that she was told to go and do this and it was okay.  I'm

20    assuming that that's what the e-mails show.  Have you seen

21    them?

22         MS. SOLTYS:  No.

23         THE COURT:  I mean, I'm not prepared to put

24    Mr. Balarezo on trial here.  It's a side issue.  I don't

25    think you can argue that, I mean, I'd like to see -- I don't

1    think you can blame her for going down there.  I don't.

2    That's the whole problem with having a rogue investigator at

3    this point.  It's another problem with the idea that somebody

4    should have a right to represent themselves and a right to

5    have an investigator and nobody to control her.  But the fact

6    that she relied on counsel, I think we should see these

7    e-mails, please.  You don't have them?  Who's got them?

8             MR. JONES:  I think they're downstairs.  The e-mails

9    basically with Mr. Balarezo told her, because this guy, he

10   wasn't cooperating at the time, is not to talk to -- talk

11   about his case.

12            THE COURT:  I understand.  I understand.

13            MR. JONES:  And I think the e-mails, I did bring

14   them, I believe they might be downstairs, but --

15            THE COURT:  Well, you bring them back on Monday.

16   We'll consider it.

17            MR. JONES:  Okay.

18            THE COURT:  I'm not prepared to get into the Code of

19   Professional Ethics in front of the jury.  I think it's a

20   frolic and a lark that will have nothing to add.  So if I'm

21   not going to allow you to cross-examine her on the Code of

22   Professional Ethics, then all you're doing is making an issue

23   of Balarezo's advice.  And I don't think this is the place to

24   do it.  So if, in fact, the -- we will look at Zintura's

25   testimony over the weekend to see.

1           MS. SOLTYS:  Could I just add?  I mean, if she takes

2      the stand and says, oh, no, I didn't tell him to write this

3      word and that word and that word.  I didn't tell him to

4      dictate everything.  And so now it looks like Mr. Zintura is

5      lying, well, the best way to cross-examine her is going to be

6      able to show the bias that she has and the fact that she did

7      something that was shady in this case.

8           THE COURT:  I'm not willing to take that

9      proposition.  You can file a memo for me.  All I know is that

10     she wasn't -- he wasn't represented in this case.  But I'm

11     not -- I think it is, overall under 403 it's more prejudicial

12     than it is probative.  So, you can cross-examine her, but you

13     can't cross-examine her on the advice that -- whether she

14     knew the advice was wrong.

15          MR. JONES:  Your Honor --

16          THE COURT:  Wait a minute.  I mean, it's the

17     Government's prerogative to figure out what to do.  But I've

18     concluded in my mind that it isn't -- it's not going to rise

19     to the level of making a complaint to the bar.

20          MR. JONES:  Your Honor, the Government have to worry

21     about her doing that.  She will be short and basically to

22     show that she was a professional and she did basically what a

23     lawyer told her to do.

24          THE COURT:  The best she can do is say the lawyer

25     told me to do that.  But I'm going to have to think about

1    that one.  I have to look at what -- I'm not sure there is

2    the implication she did anything wrong out there so far.

3            MS. SOLTYS:  Maybe we'll just say that she went at

4    the direction of his previous counsel and leave it at that.

5            THE COURT:  That is about all she's going to get to

6    say.

7            MS. SOLTYS:  So, if that's the case, then --

8            THE COURT:  Well, you don't have any reason to

9    cross-examine her.

10           MS. SOLTYS:  Right.  We could just stipulate to her

11   testimony.

12           THE COURT:  Fine.  Well, you can talk to Mr. Jones.

13   If that's the only reason because the -- but then the

14   question is whether, are you going to ask her -- she had to

15   have dictated that stuff to him.  He doesn't know about --

16           MR. JONES:  And she's going to tell the truth.  She

17   did help him.

18           THE COURT:  That's what he said.  So you can't bring

19   her on to say what he already said.

20           MR. JONES:  I think the stipulation's got to be more

21   than, because if you read the testimony, it made it like she

22   was obstructing justice.  That's not, you know, we can't

23   leave it like that, that this investigator that I have

24   obstruct justice.  She went down there with the guidance of a

25   lawyer.

1          THE COURT:  I understand that.  Show the Government

2     the e-mails and see what they can stipulate to.

3          MR. JONES:  Okay.

4          THE COURT:  She's a question mark.  But I'm not

5     going to let the Government cross-examine her unless they

6     open the door on some ethical -- she's not a trained lawyer,

7     that's the problem with having some investigator running

8     around.

9          Okay.  Have we finished everybody but 16 and 17?

10    Holland, you're going to have to check with Conte.  Maynard

11    is coming on Tuesday and so is Randolph.  Who's the third?

12         We're about to talk about Holland.

13         MS. URSCHEL:  Did Your Honor make a ruling regarding

14    Shenese Gilmore?

15         THE COURT:  Yeah, he says she has more to testify

16    about.  She is not going to be permitted to be on the coded

17    conversations.  I don't recall her testimony from before.

18    She's the bartender.

19         MS. URSCHEL:  Just so we're clear, and I read it a

20    long time ago, I just want to make sure she's not going to

21    talk about text messages that were sent while she was a

22    bartender because --

23         THE COURT:  Right.  I've ruled.

24         MS. URSCHEL:  -- I'm vaguely remembering that that's

25    what she did last time.

1          MR. JONES:  No, I think she was saying when the club

2     is crowded, they might text and say, I need something like

3     that.  She didn't -- never talked about, because she wasn't

4     as a target.  She basically for the last two trials was the

5     person who talked about the club and, you know, the

6     bartenders, that's all she --

7          THE COURT:  You can look at her testimony.  She's

8     not going to be able to impeach something that's not in

9     evidence.

10         MR. JONES:  If you look at it.

11         THE COURT:  Yeah, look at it.  I don't need to look

12    at it, you can.

13         Kevin Holland, can anybody give me a clue of how

14    he's going to be helpful?

15         MR. JONES:  Well, he's going to, first off, talk

16    about that bag.

17         THE COURT:  The bag?

18         MR. JONES:  Yes, that's one of the main reasons he's

19    coming back, to talk about that bag that they're saying that

20    he put in.

21         THE COURT:  His bag was filled with cocaine or

22    money?  Oh, the bag that was thrown into the back of --

23         MR. JONES:  Yeah.

24         THE COURT:  Oh, all right.  That will be

25    interesting.  Okay.

1          MR. JONES:  And he's going to talk about him being a

2    promoter.

3          THE COURT:  Oh, okay.  I'm going to have to ask

4    counsel to get Mr. Conte in here, Joseph Conte.  Do you know

5    him?

6          MR. O'TOOLE:  I know him.

7          THE COURT:  He's a CJA lawyer.

8          MR. O'TOOLE:  I'll reach out to him.

9          THE COURT:  Okay.  All right.  Have we finished

10   everybody?

11         We have a question mark on Bradshaw.  You're going

12   to see if you can work out a stipulation after the Government

13   counsel looks at the e-mails.  This trial is not going to

14   become a question of Mr. Balarezo's ethics.

15         Do you want Holland on Tuesday?

16         MR. JONES:  Yes, you can bring all of them up and

17   see if they're going to plead the Fifth or waive the Fifth.

18         THE COURT:  Well, I don't know that Holland has any

19   waiver, but he wouldn't have it as to this.  So unless the

20   Government tells me something else.

21         MS. SOLTYS:  Mr. Holland was just indicted.  He's

22   pending -- he's pending a conspiracy to distribute narcotics

23   case for which he was arrested within the last two weeks.

24   And the Government would like to ask him questions about the

25   current conspiracy he is in to demonstrate that he was

1   involved in a conspiracy with Mr. Jones back in 2005.

2          THE COURT:  Wouldn't he have prior convictions as

3   opposed to arrests?

4          MS. SOLTYS:  He also has prior convictions.

5          THE COURT:  Right.  Okay.

6          MS. SOLTYS:  But his current behavior right now will

7   be that he is now going to be fighting for his life in a

8   conspiracy case.  And so he has every reason to claim that he

9   was not involved in a conspiracy now just like he was not

10  involved in a conspiracy back in 2005.  And I think his

11  current situation is fair game.  I think I get to ask him

12  questions about his arrest.

13         THE COURT:  He obviously will take a Fifth Amendment

14  on that basis.  And I'm not sure I'm going to uphold the

15  Government on that one.  I think you had better get Conte in

16  here before we even think about it.

17         MR. O'TOOLE:  Sure.

18         THE COURT:  I don't know what basis, you know, you

19  can obviously bring out prior convictions.  But arrests, I

20  don't know why that actually is probative as opposed to being

21  highly prejudicial.

22         MR. O'TOOLE:  I think I give Ms. Soltys a lot of

23  credit.  She says things like she really knows what she's

24  talking about.  But I think she's really overreaching on this

25  one.

1          THE COURT:  My tentative ruling is he's not going to

2     be questioned about it, but he may want to consult with --

3     he's not going to be questioned about the current

4     circumstances.  I don't see that the fact he's facing a

5     potential trial or conviction how he would -- first of all,

6     he's not currying favor with the Government by testifying on

7     Mr. Jones's behalf.  To say he's fighting for his life,

8     therefore, he wants to make sure that people think that he

9     didn't -- wasn't involved in Jones's activities, I don't

10    think it's coming in.  But let's get the lawyer here because

11    he may want to take the Fifth for some other reason.  It's

12    not similar acts.

13         MS. SOLTYS:  Well, it is, I think he was also caught

14    up on a wiretap.  And so there is going to be -- I assume

15    that Mr. Jones will say when we were talking about this

16    conversation, this conversation had nothing to do with drug

17    trafficking.  And then the fact that he's caught up in

18    another wiretap case in which he -- in which charges result.

19    There might be some familiarity between his, you know,

20    pattern of behavior then and his pattern of behavior now for

21    which his credibility is going to be before the jury.  And

22    his ability to sort of, you know, conceal.

23         THE COURT:  I have every confidence that you'll be

24    able to attack his credibility without going into the

25    circumstances of his current arrest for conspiracy.

1          Can I see that thing again, the docket?

2          All right.  Can you get Mr. Conte and see if he can

3     be available either Monday -- oh, no, Monday, we can't do it.

4     Wait.  Sometime Tuesday?

5          MR. O'TOOLE:  Sure, I'll try to reach him as soon as

6     we leave the courtroom.

7          THE COURT:  All right.  He's been around doing this

8     work for a long time.

9          Does he have any codefendants here?  No.  It looks

10    to me like so far he doesn't have any codefendants.

11         He's coming back in front of the -- when is he

12    coming back before Contreras?  When is 2-13?

13         THE DEPUTY CLERK:  That's Wednesday.

14         THE COURT:  I suggest, he's going to be here on

15    Wednesday.  Can you fill up Tuesday without him?  Well, you

16    decide.  Just let Gwen know.

17         MR. O'TOOLE:  I'll call.

18         THE COURT:  You work on Conte, but Conte will be

19    here on Wednesday in front of Judge Contreras.

20         MR. O'TOOLE:  All right.

21         THE COURT:  All right.  So we need, for Holland we

22    need Conte.  And you're going to have Lyons show up when

23    Maynard comes.

24         MR. O'TOOLE:  He's anxious to come down and see you

25    again.

1          THE COURT:  Okay.  All right.  Then we need to talk

2      about two witnesses out of the presence of the Government, I

3      think.  Well, four witnesses.  I'm going to take up out of

4      the presence of the Government ex parte number 16, 17, 23 and

5      Yanta for purposes of something else.  But not for purposes

6      of the texting.

7          Anybody else that the Government wants to -- I've

8      basically ruled on your motion in limine.  I also need to

9      worry about one other thing.  But one second.

10          The motion in limine, I'm going to address the two

11      people out of the presence of the Government.  I want to hear

12      more about them.  He's written an under seal ex parte

13      opposition and it covers two of these people.  He knows that

14      he's not going to put those two people in there to talk about

15      whether they should be on a search or not.  That's not the

16      problem.

17          Your motion, what else did you have in there?

18          MS. URSCHEL:  That was it, Your Honor.  The two

19      individuals you just mentioned.

20          THE COURT:  I'll rule on those after I listen to the

21      ex parte.  Go ahead.

22          MS. URSCHEL:  Okay.

23          THE COURT:  And then we've ruled on the people, 13,

24      14, 15 and 12, they're out.  There will be no discussion

25      about the text messaging that was the subject of Yanta's

1  affidavit.  Okay.  And was there anyone else?

2       MS. URSCHEL:  No, except sort of more globally the

3  law enforcement officers which, of course, is focused more on

4  Yanta, and I believe that Your Honor has ruled that --

5       THE COURT:  He can't come in.

6       MS. URSCHEL:  -- something that he told you now,

7  that she will not be called.

8       THE COURT:  Right.

9       MS. URSCHEL:  And we just wanted to follow up on

10  Agent O'Brien, Detective Kirschner or retired Detective

11  Kirschner, and Detective Horne, and again to my points

12  earlier about, for the cooperators, if these people are going

13  to be called in order to impeach, the Government does believe

14  that Mr. Jones should give some sort of proffer about this to

15  make sure that he's not -- that if he is impeaching them,

16  that it is an exacting impeachment.

17       THE COURT:  I agree.  But I don't know that -- I

18  think we've got to take them one by one.  Let's let him spend

19  the weekend looking at Zintura's testimony.

20       Is there more 302s than Zintura that we're worried

21  about?

22       MR. JONES:  The 302s was Zintura, Barron, and Bermea

23  is the one that I have, and the one on Demetrius Johnson.

24       THE COURT:  Okay.  And did you ask these people

25  during their testimony, did you say during your interview

1    with Government so-and-so, X, Y, Z?

2            MR. JONES:  Yes, that's what I've been asking.  And

3    once I review my testimony, then I'll know which ones that

4    contradicts.

5            THE COURT:  Okay.  Well, before you get these people

6    on the stand, if that's the purpose for their testimony, if

7    you'd just kindly would direct us to the parts that you're

8    going to impeach them.  They have a right before you impeach

9    anybody for you to say, look at page X, Y, Z, line

10   such-and-such, so that we know that it's really

11   contradictory.  Because otherwise, it's not impeachment.

12           So before -- if that's the purpose for the three

13   people, we'll take each one up out of the presence of the

14   jury with the transcripts present.  I don't have them now.

15   He can look at these three this weekend and see.  These guys

16   can be on call, I would think, the three agents.

17           MS. URSCHEL:  Yes, Your Honor.  That's fine.  We

18   have them on call.  And the Government has not gotten

19   transcripts for these proceedings.  So we would just ask

20   Mr. Jones to obviously bring his.  And if the Court has them,

21   to look at the exact language.  We won't be able to do that

22   ourselves.

23           THE COURT:  Okay.  I have the transcripts, and we'll

24   bring them for Zintura, Barron and Bermea, and then we'll

25   have Johnson by that time.

1          So Tuesday, we can assume that we're going to have

2    Randolph, Maynard, and we're going to take up Holland at the

3    convenience of Holland and his lawyer either Tuesday or

4    Wednesday.

5          Deniece Jones will be prepared to testify.  Wills,

6    Peacock, Leaks and Gilmore.  I think that's everybody.  And

7    I've got two more people to worry about.  And you're going to

8    work on Robin Bradshaw consistent with the Court's ruling.

9          All right.  I'm going to listen to them talk about a

10   couple of witnesses out of the presence of the jury so I can

11   figure out -- the 404(b), I don't have -- do you have the

12   August 14th, 2006 transcript by chance?

13          MS. SOLTYS:  What we talked about before the Court

14   took the bench was it seems that we might have just reached a

15   stipulation.  So that the Court -- and I have -- I wrote it

16   out, but I haven't shown it to Mr. Jones yet.  And I think I

17   had been told that he would stipulate to the fact that he had

18   these two prior convictions and they would come in without

19   the facts.  So I wrote out -- so this might just resolve this

20   issue if I could just have the Court's indulgence.

21          MR. O'TOOLE:  While they're doing that, I'd like to

22   be excused to go downstairs to pick up that CD.

23          THE COURT:  Will you bring it back up here?

24          MR. O'TOOLE:  Yes.

25          THE COURT:  Yeah, but why should you go get it?

1    We'll take a break and maybe someone else will get it.

2              (Discussion was held off the record.)

3              MS. SOLTYS:  Okay, he said perfect, thank you.

4              MR. O'TOOLE:  I've got to step outside and call

5    Conte anyway.

6              THE COURT:  All right, go ahead, then, please.

7    Maybe we'll take a break.

8              I'm sorry.  You have reached a stipulation so I no

9    longer have to worry about the question of whether the prior

10   stipulation goes in, You're substituting a new one.

11             MS. SOLTYS:  That's correct.

12             THE COURT:  Right.  I think it is the law of the

13   case that the prior convictions are admissible.  How you do

14   it is up to you.

15             MS. SOLTYS:  So it would say something like this:

16   The parties agree and stipulate that on June 1st, 1994, in

17   the United States District Court for the District of

18   Columbia, the defendant, Antoine Jones, was convicted in

19   Criminal Number 94-112 of conspiracy to distribute and

20   possess with the intent to distribute 50 grams or more of

21   cocaine base from on or about January 1st, 1993 through March

22   23rd, 1994.

23             The parties agree and stipulate that on May 19,

24   1994, in the United States District Court for the District of

25   Columbia, defendant, Antoine Jones, was convicted in Criminal

1    Number 94-193 of conspiracy to distribute and possess with

2    the intent to distribute more than five kilograms of cocaine.

3            THE COURT:  Okay.  You don't contest those

4    convictions?

5            MR. JONES:  No, ma'am.

6            THE COURT:  You didn't last time either.

7            Okay, we need to take a break.  When we come back, I

8    will provide you all draft jury instructions.  You don't

9    need -- I want to do this far in advance so counsel have a

10   pretty long time and Mr. Jones will have a long time.  We

11   have to put back in the instruction regarding the

12   stipulation.

13           What number will the stipulation be?  It's going to

14   substitute.  You have a number for a stipulation.

15           MR. JONES:  Your Honor.

16           THE COURT:  Yes.  We're going to resume in a few

17   minutes.

18           MR. JONES:  Okay.

19           THE COURT:  I need the Government to wait, though.

20   We'll be back.

21           (A brief recess was taken.)

22           THE COURT:  A couple of things just for the record,

23   and I don't -- I want the Government to stay for a few more

24   minutes.

25           I have given you a draft of jury instructions.

1   They're an edit of what I gave last time.  The Government has

2   to tell me what to do about the drug quantities because that

3   has to be reflected in the indictment, I would think.  I read

4   the indictment to the jury.  And the instructions and the

5   verdict form.  So I'm not giving you a verdict form at the

6   moment because the question is whether you have to change the

7   quantities to reflect 21 USC 841.  The law has changed since

8   he was -- and what you do about the indictment.

9           MS. SOLTYS:  I'm sorry, are you talking --

10          THE COURT:  The quantities, the jury has to find

11  quantities.

12          MS. SOLTYS:  You're talking about the cocaine base?

13          THE COURT:  Yes.

14          MS. SOLTYS:  I understand.  We'll tell you.

15          THE COURT:  Right.  So the instructions may have to

16  be changed when I instruct about quantities because now it's,

17  when you get to cocaine base, it's 280 grams or something

18  like that.  Let's see, what does it say, 280 grams.

19          Anyways, so you'll have to redo the verdict form,

20  the indictment maybe, and the instructions.  I didn't do

21  that.

22          And Mr. Jones, you've obviously been told before you

23  have the right to testify, and that decision is yours.  If

24  you want, you can testify.  You'll be subject to

25  cross-examination.  Do you have a decision on that?

1          MR. JONES:  No, I won't be testifying.

2          THE COURT:  All right.  So that you waive your Fifth

3    Amendment -- I mean, you'll waive your right to testify?

4          MR. JONES:  Yes.

5          THE COURT:  Okay.  Then we'll keep that instruction

6    in here.  And we've got a stipulation that takes cares of

7    404(b).  There was one other thing that we had to take up.

8          You're going to have to figure out some way to show

9    the Government any more exhibits you intend to get in.  I

10   don't know how you're going to do that.  But if you're going

11   to introduce exhibits, maybe you can figure out a way that

12   you can make copies for the Government or something so that

13   they can --

14         MR. JONES:  If it would, most exhibits would be that

15   I got out of the discovery.  Out of the discovery, those are

16   the only exhibits that I will probably be using.

17         THE COURT:  Right.  But we need to be able to see if

18   they have any objection to them.

19         MR. JONES:  Okay.

20         THE COURT:  So we'll look over Zintura, Barron,

21   Bermea.  Johnson will be here on Monday.  So we know whether

22   we can impeach by virtue of O'Brien, Kirschner or Horne or

23   Yanta for that matter.  I guess that's it.

24         Is there anything else besides the witnesses?

25         MR. JONES:  Yes, Your Honor.

1          THE COURT:  We have a discussion about a couple of

2     witnesses.

3          Can I have a copy of his pro se ex parte motion, or

4     opposition?

5          Is there anything else we have to take up before the

6     Government leaves?

7          MR. JONES:  Yes, Your Honor.  I had asked for

8     instruction when the North Carolina, the state trooper had

9     mentioned about the money and the threshold and whatever he

10    was telling the jury, to instruct the jury on -- on that law.

11         THE COURT:  You mean on whether or not crossing

12    state lines with $10,000 cash was legal or not legal?  Is

13    that your request?

14         MR. JONES:  Yes.

15         THE COURT:  Okay.  Well, maybe the Government has a

16    response.  He made some reference to a -- some law, I can't

17    remember what it was.

18         MR. JONES:  Your Honor, the first trial, if you

19    remember his testimony, you had corrected him.  When he went

20    through that testimony, you kind of -- he might have overdid

21    it in the first trial, but you had corrected him.

22         THE COURT:  Well, I was asked -- the only thing I

23    know is in the second trial is they wanted to know, the jury

24    wanted to know about the amount of cash a person can possess

25    going across state lines.  And I said it's not your job to

1    determine the legal issues, only the facts.  And I wouldn't

2    answer the question.  So I don't know exactly, I don't know

3    the answer myself.  Nor do I think that I -- without -- the

4    jury doesn't get told this.

5            MR. JONES:  It's not the state line.  It's if you

6    take $10,000 out of the country, you have to report it to

7    Customs.  And if you take 10,000 to the bank, they will

8    report it to the IRS.  I haven't heard of no other law on

9    that $10,000.

10           THE COURT:  I don't know what the law is.  All I

11   know is what happened in the second trial.  I can't actually

12   instruct if I don't -- do you know what law he was invoking?

13           MS. SOLTYS:  I don't know.  I don't know if there is

14   a law in North Carolina, a state law in North Carolina.  We

15   could try to sort of research it.

16           THE COURT:  I'm not going to instruct on a legal

17   principle that I don't know the answer to.  I mean, what

18   happened last time is they sent a note.  We received a note.

19   "Is there any law that regulates the amount of cash a person

20   can possess or transport across state lines?"

21           MR. O'TOOLE:  Your Honor, if it turns out that we

22   find out, and we'll look this weekend, perhaps the Government

23   would enter into a stipulation that the Court could instruct

24   the jury that whatever.

25           THE COURT:  Well, let's see what you find.  Okay.

1    You'll have to remind me about that again.  But I did not

2    instruct before what the law is.  I do have the transcript

3    from the second trial.

4          Anything else other than the witnesses I need to

5    take up?  Anything for the Government?

6          MR. JONES:  Yeah, one more thing, Your Honor.

7    Ms. Soltys had mentioned this, there was a lot of testimony

8    about me being in jail.  And I think they might have seen my

9    little blue band.  Is it some way that we can give some type

10   of instruction about me being in jail?

11         THE COURT:  What do you want me to say?

12         MR. JONES:  I'll think about it by Monday.

13         THE COURT:  You can think about it.

14         MR. JONES:  Okay.

15         THE COURT:  They know you're in jail because you

16   keep talking about what goes on in jail.  Otherwise they

17   wouldn't have known, but anyways, I don't know what I could

18   say to them.  You don't usually wear a blue bracelet?  I

19   don't know.

20         MR. JONES:  I don't want to be at the same time

21   prejudiced, you know.  I mean, we'll figure something out,

22   Your Honor.  Because we had started, but we never got back to

23   it.  The Government had mentioned it, and I was saying the

24   best time to do it was before Zintura, but we never did it.

25         THE COURT:  Okay.  The best thing to do is probably

1    say you can't assume he's guilty just because he's wearing a

2    blue bracelet and is in jail.

3         All right.  Is there anything that we haven't

4    covered?  We've covered all your -- your motion in limine is

5    granted in part.  And I'll deal with the last two people from

6    these places.  And we have to, on Monday or whenever,

7    consider Bradshaw and what we're going to do about her.  And

8    the Government is going to tell me what to do about the drug

9    quantities of crack.

10         Okay.  Anything else for the -- before I excuse

11   them, anything else, Mr. Jones, for them?

12             MR. JONES:  No, ma'am.

13             THE COURT:  Okay.  Thank you.

14             MS. URSCHEL:  Are we excused then for the day?

15             THE COURT:  Yes, until 9:30 on Monday.

16             MS. URSCHEL:  Thank you, Your Honor.

17             THE COURT:  I don't have a hard copy, by the way.

18   This is still on the record.  We don't -- we're not getting

19   hard copies of the transcripts ourselves.  We have them on

20   line.  So, I don't know exactly.  Mr. Jones has the only hard

21   copy.  So I suggest to you that you need to bring with you on

22   Monday or Tuesday the hard copy of Zintura, Barron, Bermea

23   and Johnson, when you get Johnson.  And you were going to

24   bring the e-mails having to do with Mr. Balarezo.  Okay?

25             MR. JONES:  Yes, ma'am.

1          THE COURT:  But we're going to have to have access

2     to the testimony of these four cooperators.

3          Okay.  Thank you.

4          Starting on Tuesday, at least for the moment, you're

5     going to have your three agents on call because we don't know

6     until we see the transcripts.

7          (Government excused.  Ex parte discussion with

8     defendant held and redacted.  Court recessed at 4:35 p.m.)

9                              - o -

10

11

12

13

14                    CERTIFICATE OF REPORTER

15

16          I, Lisa Walker Griffith, certify that the foregoing

17     is a correct transcript from the record of proceedings in the

18     above-entitled matter.

19

20

21

22

23     _____        _____

       Lisa Walker Griffith                          Date
24

25

**$**

**$10,000 [3]** 47/12 48/6 48/9

**-**

------------------------X **[2]** 1/2 1/7

**0**

**05-386 [1]** 1/3

**1**

**10,000 [1]** 48/7
**11 [1]** 1/9
**112 [1]** 43/19
**12 [4]** 10/25 15/5 16/7 39/24
**13 [7]** 10/25 15/5 16/7 18/10
 26/6 38/12 39/23
**1350 [1]** 1/18
**14 [5]** 10/25 15/5 16/7 26/6
 39/24
**14TH [1]** 42/12
**15 [5]** 10/25 15/5 16/7 26/6
 39/24
**1550 [1]** 1/19
**16 [3]** 10/21 33/9 39/4
**17 [3]** 10/21 33/9 39/4
**19 [1]** 43/23
**193 [1]** 44/1
**1993 [1]** 43/21
**1994 [3]** 43/18 43/22 43/24
**1ST [2]** 43/16 43/21

**2**

**2-13 [1]** 38/12
**20 [2]** 10/25 15/6
**200 [1]** 1/18
**20001 [1]** 1/22
**20036 [1]** 1/19
**2005 [3]** 14/24 36/1 36/10
**2006 [1]** 42/12
**2010 [1]** 23/24
**2013 [1]** 1/7
**202 [3]** 1/14 1/19 1/23
**20530 [1]** 1/14
**21 [1]** 45/7
**23 [2]** 24/16 39/4
**23RD [1]** 43/22
**252-7685 [1]** 1/14
**26 [2]** 12/25 14/10
**27 [1]** 14/15
**28 [1]** 14/17
**280 [2]** 45/17 45/18
**29 [1]** 14/22
**2:34 [1]** 1/8
**2ND [2]** 13/3 13/5 14/24

**3**

**302 [5]** 19/21 20/5 23/6
 23/10 23/20
**302s [7]** 20/10 22/6 22/21
 23/19 23/24 40/20 40/22
**3247 [1]** 1/23
**33 [1]** 18/10
**354-3247 [1]** 1/23
**386 [1]** 1/3

**4**

**4.1 [3]** 28/25 29/1 29/4
**403 [1]** 31/11
**404 [2]** 3/2 11/21 46/7
**4110 [1]** 1/13
**4:35 [1]** 51/8

**5**

**5.1 [1]** 29/12
**5.3 [2]** 29/2 29/14
**50 [1]** 43/20
**555 [1]** 1/13

**6**

**6507 [1]** 1/22

**7**

**7685 [1]** 1/14
**775-1550 [1]** 1/19

**8**

**841 [1]** 45/7

**9**

**94-112 [1]** 43/19
**94-193 [1]** 44/1
**9:30 [1]** 50/15

**A**

**A-P-P-R-I-S-S [1]** 18/17
**ABILITY [1]** 37/22
**ABLE [6]** 23/12 31/6 34/8
 37/24 41/21 46/17
**ABOUT [100]**
**ABOVE [1]** 51/18
**ABOVE-ENTITLED [1]** 51/18
**ACCEPT [2]** 9/9 9/15
**ACCEPTING [1]** 9/14
**ACCESS [1]** 51/1
**ACCORDING [2]** 9/7 18/19
**ACROSS [2]** 47/25 48/20
**ACTION [1]** 28/7
**ACTIVITIES [1]** 37/9
**ACTS [1]** 37/12
**ACTUALLY [2]** 36/20 48/11
**AD [1]** 13/19
**Adams [5]** 19/21 20/2 20/4
 20/5 20/8
**ADD [3]** 2/11 30/20 31/1
**Additionally [1]** 11/5
**ADDRESS [2]** 2/4 39/10
**ADDS [1]** 24/13
**ADMISSIBLE [1]** 43/13
**ADMISSION [2]** 9/17 10/10
**ADMITTING [1]** 10/16
**Adrian [3]** 18/14 25/25 26/3
**ADVANCE [1]** 44/9
**ADVICE [3]** 30/23 31/13 31/14
**ADVISE [1]** 10/17
**AFFIDAVIT [14]** 11/2 13/1 13/2
 13/9 13/10 13/21 13/22
 13/22 14/3 14/5 14/9 14/23
 19/14 40/1
**AFTER [5]** 3/7 7/7 25/1 35/12
 39/20
**AFTERNOON [1]** 2/1
**AGAIN [9]** 4/19 13/2 14/17
 14/18 16/12 38/1 38/25
 40/11 49/1
**AGE [1]** 18/16
**AGENT [5]** 11/6 12/5 19/21
 23/20 40/10
**AGENTS [8]** 11/18 12/16 19/21
 21/14 23/7 23/24 41/16 51/5
**AGO [1]** 33/20
**AGREE [7]** 3/2 20/22 21/11
 22/3 40/17 43/16 43/23
**AGREEING [1]** 8/13
**AHEAD [2]** 39/21 43/6
**ALL [47]** 2/12 2/19 5/25 6/9

**7/13 8/8 8/20 10/6 10/12
 12/7 12/23 12/24 15/9
 15/23 16/1 17/24 18/1 18/15
 19/15 19/20 20/3 21/22
 22/18 22/19 25/7 25/14
 25/22 27/19 30/22 31/9
 32/5 34/6 34/24 35/9 35/16
 37/5 38/2 38/7 38/20 38/21
 39/1 42/9 43/6 44/8 46/2
 48/10 50/3 50/4
**ALLEGEDLY [1]** 12/7
**ALLOW [2]** 24/12 30/21
**ALLOWED [3]** 19/20 20/1 29/10
**ALMOST [1]** 15/18
**ALREADY [2]** 23/2 32/19
**ALSO [3]** 36/4 37/13 39/8
**ALTHOUGH [1]** 28/7
**ALWAYS [1]** 21/6
**Amendment [12]** 8/18 8/19 9/3
 9/7 9/21 10/18 16/11 16/20
 16/24 17/9 36/13 46/3
**AMERICA [1]** 1/3
**AMOUNT [2]** 47/24 48/19
**AND/OR [1]** 27/23
**Anita [1]** 14/21
**ANOTHER [4]** 9/3 25/4 30/3
 37/18
**ANSWER [3]** 48/2 48/3 48/17
**ANTOINE [4]** 1/5 1/16 43/18
 43/25
**ANXIOUS [1]** 38/24
**ANY [27]** 2/22 3/6 4/2 4/3 4/3
 4/16 10/21 10/23 11/11
 12/21 14/4 15/4 16/3 16/4
 16/19 16/23 17/15 17/21
 24/11 25/25 32/8 35/18 38/9
 38/10 46/9 46/18 48/19
**ANYBODY [10]** 3/22 7/20 8/5
 8/9 10/20 11/25 17/14 34/13
 39/7 41/9
**ANYONE [4]** 2/14 16/21 26/1
 40/1
**ANYTHING [21]** 2/6 3/7 3/23
 4/4 6/9 7/21 7/22 11/10
 11/11 12/9 13/14 15/8 17/12
 32/2 46/24 47/5 49/4 49/5
 50/3 50/10 50/11
**ANYWAY [1]** 43/5
**ANYWAYS [3]** 10/19 45/19
 49/17
**Apparently [1]** 12/24
**Appeals [1]** 14/8
**APPEARANCES [1]** 1/11
**APPEARS [1]** 18/12
**Appriss [1]** 18/17
**APPROPRIATE [1]** 22/1
**ARE [24]** 2/5 2/18 7/16 11/9
 11/10 11/11 11/15 12/10
 14/13 15/4 16/1 16/18 16/25
 18/14 18/23 26/6 29/15
 29/17 32/14 40/12 43/13
 45/9 46/15 50/14
**ARGUE [3]** 22/23 28/18 29/25
**ARGUING [1]** 28/19
**ARGUMENT [2]** 22/25 28/8
**AROUND [3]** 28/3 33/8 38/7
**ARREST [2]** 36/12 37/25
**ARRESTED [1]** 35/23
**ARRESTS [2]** 36/3 36/19
**AS [24]** 2/24 3/1 7/19 9/17
 10/24 11/19 12/11 16/7
 17/25 17/25 21/18 23/21
 23/21 24/7 24/7 28/9 28/9

## A

AS... [7] 29/4 34/4 35/19 36/2 36/20 38/5 38/5
ASIDE [1] 10/20
ASK [17] 6/9 10/13 11/23 18/4 22/16 23/6 24/1 24/8 25/3 27/8 29/7 32/14 33/5 35/24 36/11 40/24 41/19
ASKED [5] 6/4 11/25 12/3 47/7 47/22
ASKING [1] 41/2
ASSUME [9] 2/8 9/20 16/12 17/7 26/19 29/18 37/14 42/1 50/1
ASSUMING [2] 17/21 29/20
ATTACK [2] 9/19 37/24
ATTORNEY [3] 29/3 29/6 29/9
ATTORNEY'S [1] 1/13
ATTORNEYS [2] 29/15 29/16
August [4] 12/8 14/7 14/19 42/12
AUSA [2] 1/12 1/12
AVAILABLE [1] 38/3
Avenue [1] 1/18
AWARE [2] 8/16 16/23
AWAY [1] 10/15

## B

BACK [23] 7/4 8/7 11/9 12/6 20/6 21/3 23/13 23/21 26/16 26/25 28/13 30/15 34/19 34/22 36/1 36/10 38/11 38/12 42/23 44/7 44/11 44/20 49/22
BAD [1] 28/7
BAG [5] 34/16 34/17 34/19 34/21 34/22
Balarezo [7] 27/12 27/18 27/22 28/17 29/24 30/9 50/24
Balarezo's [2] 30/23 35/14
BAND [1] 49/9
BANK [1] 48/7
BAR [2] 27/23 31/19
Barron [7] 22/19 23/15 23/24 40/22 41/24 46/20 50/22
BARTENDER [2] 33/18 33/22
BARTENDERS [2] 15/17 34/6
BASE [3] 43/21 45/12 45/17
BASED [1] 7/21
BASICALLY [14] 4/7 5/15 6/15 6/16 7/1 13/16 22/5 27/4 27/5 30/9 31/21 31/22 34/4 39/8
BASIS [5] 4/2 4/3 24/12 36/14 36/18
BE [65]
BECAME [1] 13/23
BECAUSE [31] 2/16 4/12 4/13 6/23 6/23 11/1 13/21 16/10 19/23 20/4 20/12 20/15 20/19 21/1 21/13 23/2 27/12 30/9 32/13 32/21 33/22 34/3 37/10 41/11 45/2 45/6 45/16 49/15 49/22 50/1 51/5
BECOME [1] 35/14
BEEN [5] 21/3 38/7 41/2 42/17 45/22
BEFORE [21] 1/9 2/23 5/12 5/13 9/2 10/24 13/15 18/11 33/17 36/16 37/21 38/12 41/5 41/8 41/12 42/13 45/22

## B (continued)

47/5 49/2 49/24 50/10
BEHALF [1] 7/22
BEHAVIOR [3] 36/6 37/20 37/20
BEING [5] 22/2 35/1 36/20 49/8 49/10
BELIEF [1] 15/3
BELIEVE [9] 11/5 12/4 12/4 17/22 21/1 22/28 14/30/14 40/4 40/13
BELIEVING [1] 14/13
BENCH [1] 42/14
BENEFIT [1] 12/25
Bermea [7] 22/19 23/18 23/19 40/22 41/24 46/21 50/22
BESIDES [1] 46/24
BEST [4] 31/5 31/24 49/24 49/25
BETTER [2] 17/10 36/15
BETWEEN [3] 14/6 14/11 37/19
BIAS [1] 31/6
BINDER [1] 11/12
BIRTH [1] 18/16
BLAME [1] 30/1
BLUE [3] 49/9 49/18 50/2
BOTH [4] 6/17 15/10 15/16 15/18
BOUND [1] 29/17
BOWMAN [7] 4/9 6/16 6/23 7/1 7/2 8/1 8/3
BRACELET [2] 49/18 50/2
BRADSHAW [4] 26/20 35/11 42/8 50/7
BREAK [4] 10/24 43/1 43/7 44/7
BREAKING [2] 27/3 27/6
BRIAN [1] 1/17
BRIEF [1] 44/21
BRING [14] 10/8 19/15 19/18 21/1 30/13 30/15 32/18 35/16 36/19 41/20 41/24 42/23 50/21 50/24
BRINGING [1] 5/5
BROUGHT [1] 2/6
BROUSSARD [2] 14/10 15/25
BROUSSARDS [1] 14/12
BUDDY [1] 10/11

## C

C-O-N-T-E [1] 7/18
CALL [12] 19/23 19/25 20/17 21/14 21/18 21/23 23/20 38/17 41/16 41/18 43/4 51/5
CALLED [3] 20/6 40/7 40/13
CALLING [2] 17/11 24/17
CALLS [2] 14/20 15/3
CAME [3] 6/1 7/4 7/7
CAN [60]
CAN'T [16] 2/10 3/7 3/23 19/19 19/23 19/25 26/2 29/5 31/13 32/18 32/22 38/3 40/5 47/16 48/11 50/1
CANNOT [2] 3/20 19/13
CARE [1] 10/9
CARES [1] 46/6
CARLOS [1] 29/9
CAROLINA [4] 16/13 47/8 48/14 48/14
CARTER'S [1] 13/17
CASE [14] 1/3 17/13 17/16 17/17 17/23 28/2 30/11 31/7 31/10 32/7 35/23 36/8 37/18 43/13
CASH [3] 47/12 47/24 48/19

## C (continued)

CATCH [1] 4/14
CAUGHT [2] 37/17 37/17
CAUSE [3] 12/6 13/11 15/2
CD [1] 42/22
CELL [2] 12/11 14/7
CELLMATE [4] 2/21 5/17 6/3 17/3
CERTAINLY [3] 2/20 2/25 29/6
CERTIFICATE [1] 51/14
CERTIFY [1] 51/16
CHANCE [2] 4/12 42/12
CHANGE [1] 45/6
CHANGED [2] 45/7 45/16
CHARGES [1] 37/18
CHECK [4] 5/4 17/22 25/21 33/10
CHOIR [3] 6/17 6/18 6/20
CHRONOLOGY [2] 27/24 28/1
CIRCLE [2] 25/18 25/18
CIRCUMSTANCES [2] 37/4 37/25
CJA [1] 35/7
CLAIM [1] 36/8
Clarissa [1] 14/21
CLEAR [2] 28/15 33/19
CLERK [1] 19/7
CLIENT [2] 9/1 27/9
CLOUDY [2] 28/6 28/9
CLUB [4] 15/24 26/13 34/1 34/5
CLUE [1] 34/13
COAT [2] 26/9 26/11
COCAINE [5] 34/21 43/21 44/2 45/12 45/17
CODE [3] 13/13 30/18 30/21
CODED [5] 11/9 11/19 12/1 16/2 33/16
CODEFENDANTS [2] 38/9 38/10
COLUMBIA [3] 1/1 43/18 43/25
COME [15] 3/20 4/25 10/6 10/7 10/13 16/12 18/23 19/2 19/2 19/6 27/6 38/24 40/5 42/18 44/7
COME-UP [2] 18/23 19/6
COMES [2] 10/9 38/23
COMING [8] 16/10 16/19 25/15 33/11 34/19 37/10 38/11 38/12
COMMENTS [1] 21/21
COMMITTEE [1] 27/23
COMMUNICATION [4] 12/20 12/21 13/16 16/2
COMMUNICATIONS [6] 11/9 11/20 12/1 12/13 13/25 14/2
COMPLAINT [1] 31/19
COMPLETE [3] 12/19 21/8 24/1
COMPLETELY [1] 13/9
COMPLICATED [1] 28/23
CONCEAL [1] 37/22
CONCERNED [2] 21/13 21/23
CONCLUDED [1] 31/18
CONFERRED [1] 19/7
CONFIDENCE [1] 37/23
CONFIRMED [1] 7/1
Connecticut [1] 1/18
CONSENT [2] 29/6 29/9
CONSIDER [2] 30/16 50/7
CONSISTENT [4] 7/6 14/13 23/1 42/8
CONSPIRACY [12] 8/14 10/11 28/16 35/22 35/25 36/1 36/8 36/9 36/10 37/25 43/19 44/1
CONSULT [1] 37/2

## C

CONTACT [2] 29/5 29/11
Conte [12] 7/18 7/18 18/11
33/10 35/4 35/4 36/15 38/2
38/18 38/18 38/22 43/5
CONTEST [2] 2/17 44/3
CONTEXT [1] 13/9
CONTRADICT [4] 3/23 4/25
16/14 23/10
CONTRADICTION [1] 22/11
CONTRADICTIONS [1] 22/8
CONTRADICTORY [2] 21/9 41/11
CONTRADICTS [1] 41/4
CONTRARY [1] 3/23
Contreras [3] 18/11 38/12
38/19
CONTROL [2] 9/24 30/5
CONVENIENCE [1] 42/3
CONVERSATION [3] 14/11 37/16
37/16
CONVERSATIONS [7] 11/15
11/18 11/19 12/1 12/11
13/13 33/17
CONVICTED [3] 18/5 43/18
43/25
CONVICTION [1] 37/5
CONVICTIONS [6] 36/2 36/4
36/19 42/18 43/13 44/4
Cook [2] 24/7 10 25/9
COOPERATING [5] 3/5 5/12 5/13
7/8 30/10
COOPERATOR [2] 22/12 23/13
COOPERATORS [9] 21/15 21/17
21/25 22/10 22/16 23/5 23/7
40/12 51/2
COPIES [2] 46/12 50/19
COPY [4] 47/3 50/17 50/21
50/22
CORRECT [6] 2/8 6/23 15/1
26/2 43/11 51/17
CORRECTED [2] 47/19 47/21
COULD [15] 10/14 17/8 18/12
19/2 21/6 27/14 27/25 28/8
28/21 31/1 32/10 42/20
48/15 48/23 49/17
COULDN'T [1] 20/5
COUNSEL [7] 2/2 12/25 30/6
32/4 35/4 35/13 44/9
COUNTRY [1] 48/6
COUPLE [5] 2/4 15/13 42/10
44/22 47/1
COURSE [7] 10/2 10/3 20/1
21/18 21/22 21/25 40/3
COURT [23] 1/1 1/21 3/2 8/22
14/8 14/24 16/6 17/18 18/10
18/20 19/7 25/3 26/17 27/15
27/17 28/10 41/20 42/13
42/15 43/17 43/24 48/23
51/8
Court's [3] 24/14 42/8 42/20
COURTHOUSE [1] 1/21
Courtney [1] 1/12
COURTROOM [1] 38/6
COVER [1] 2/2
COVERED [2] 50/4 50/4
COVERS [1] 39/13
CRACK [1] 50/9
CREDIBILITY [4] 13/10 13/23
37/21 37/24
CREDIT [1] 36/23
CRIMINAL [5] 1/3 18/10 25/20
43/19 43/25

CROSS [9] 17/22 28/24 30/21
31/5 31/14 31/21 32/1 38/25
45/25
CROSS-CHECK [1] 17/22
CROSS-EXAMINATION [1] 45/25
CROSS-EXAMINE [7] 28/24 30/21
31/5 31/12 31/13 32/9 33/5
CROSSING [1] 47/11
CROWDED [1] 34/2
CURRENT [5] 35/25 36/6 36/11
37/3 37/25
CURRYING [1] 37/6
Customs [1] 48/7

## D

D.C [5] 1/7 1/22 2/5 17/17
18/19
Damien [1] 14/12
Daniel [2] 28/15 28/15
Darlene [1] 1/12
DATE [2] 18/16 51/23
DAY [4] 1/9 15/18 23/8 50/14
DC [2] 1/14 1/19
DCDC [1] 18/2
DEAL [2] 6/24 50/5
DEALING [1] 9/19
DEBRIEFING [1] 24/2
DEBRIEFS [1] 21/25
DECIDE [2] 19/15 38/16
DECISION [2] 45/23 45/25
DEFENDANT [6] 1/6 1/16 18/13
43/18 43/25 51/8
DEFENDER [1] 28/4
DEFENSE [6] 5/10 12/19 12/19
18/18 19/1 20/3
DEFINITION [1] 11/14
Demetrius [1] 40/23
DEMONSTRATE [1] 35/25
Deniece [2] 25/14 42/5
DENIED [2] 21/17 22/17
DENY [1] 3/3
Derrick [1] 16/13
DETAILS [1] 21/23
Detective [3] 40/10 40/10
40/11
DETECTIVES [1] 11/19
DETERMINE [2] 48/1
DICTATE [1] 31/4
DICTATED [1] 32/15
DID [29] 3/3 3/4 3/21 6/21
11/21 11/22 11/23 11/25
12/5 12/7 15/19 19/14 21/4
22/16 23/7 23/8 29/8 30/13
31/6 31/22 32/2 32/17 33/13
33/25 39/17 40/24 40/25
49/1 49/24
DIDN'T [25] 2/13 4/23 5/22
5/25 6/8 6/9 6/23 7/2 7/4
8/6 12/4 13/21 17/21 20/17
23/20 25/7 25/8 25/23 28/1
31/2 31/3 34/3 37/9 44/6
45/20
DIFFERENCE [2] 12/12 14/6
DIFFERENT [5] 2/11 4/4 7/4
13/8 15/2
DIRECT [2] 22/1 41/7
DIRECTION [2] 29/8 32/4
DISAGREE [1] 12/15
DISCOVERY [2] 46/15 46/15
DISCUSSION [6] 14/9 14/14
39/24 43/2 47/1 51/7
DISCUSSIONS [1] 17/11
DISTRIBUTE [5] 35/22 43/19

43/20 44/1 44/2
DISTRICT [3] 1/1 1/1 1/10
1/21 43/17 43/17 43/24
43/24
DO [59]
DOCKET [3] 17/18 18/9 38/1
DOES [9] 4/2 8/14 11/1 16/21
17/16 29/12 38/9 40/13
45/18
DOESN'T [8] 16/19 17/12 17/15
21/22 22/24 32/15 38/10
48/4
DOING [5] 24/7 30/22 31/21
38/7 42/21
DON'T [75]
DONE [1] 12/11
DOOR [1] 33/6
DOUBT [2] 4/2 12/25
DOUBTS [1] 27/7
DOWN [8] 16/20 22/6 27/6
28/21 29/17 30/1 32/24
38/24
DOWNSTAIRS [3] 30/8 30/14
42/22
DRAFT [2] 44/8 44/25
DRUG [5] 8/14 9/19 37/16
45/2 50/8
DUE [1] 25/7
DURING [4] 6/18 23/22 40/25
40/25

## E

E-MAIL [1] 27/13
E-MAILS [9] 27/12 29/18 29/20
30/7 30/8 30/13 33/2 35/13
50/24
EACH [2] 22/22 41/13
EARLIER [1] 40/12
EARLY [1] 19/3
EASY [1] 18/2
EDIT [1] 45/1
Edwards [3] 4/9 8/1 8/2
EFFECTIVELY [1] 23/9
EITHER [6] 2/17 21/5 28/8
38/3 42/3 44/6
ELICIT [1] 12/5
ELLEN [1] 1/9
ELSE [27] 2/15 5/1 7/22 8/5
8/9 8/10 10/20 11/22 11/25
15/8 19/18 19/24 19/25 26/1
26/22 29/4 35/20 39/5 39/7
39/17 40/1 43/1 46/24 47/5
49/4 50/10 50/11
ELSE's [2] 27/9 27/9
EMPLOYEES [1] 26/14
ENCRYPTED [1] 14/13
ENFORCEMENT [2] 21/14 40/3
ENOUGH [3] 17/6 18/2 28/6
ENTER [1] 48/23
ENTITLED [2] 12/5 21/10 51/18
ERRIN [1] 1/17
ESCAPE [1] 8/12
ESPECIALLY [1] 5/11
ETHICAL [1] 33/6
ETHICS [5] 29/4 29/16 30/19
30/22 35/14
EVALUATE [1] 11/24
EVEN [7] 5/12 5/13 7/2 9/9
22/20 27/21 36/16
EVER [1] 6/19
EVERY [2] 36/8 37/23
EVERYBODY [5] 8/10 10/14
33/9 35/10 42/6

# E

**EVERYBODY's** [1] 4/13
**EVERYONE** [1] 29/4
**EVERYTHING** [2] 18/21 31/4
**EVIDENCE** [7] 2/13 3/21 4/22
9/17 13/22 21/9 34/9
**EX** [5] 39/4 39/12 39/21 47/3
51/7
**EXACT** [2] 21/16 41/21
**EXACTING** [1] 40/16
**EXACTLY** [3] 22/14 48/2 50/20
**EXAMINATION** [1] 45/25
**EXAMINE** [7] 28/24 30/21 31/5
31/12 31/13 32/9 33/5
**EXCEPT** [1] 40/2
**EXCUSE** [1] 50/10
**EXCUSED** [3] 42/22 50/14 51/7
**EXECUTED** [1] 14/23
**EXHIBITS** [4] 46/9 46/11 46/14
46/16
**EXTEND** [1] 29/17
**EXTENT** [1] 14/25

# F

**FACING** [1] 37/4
**FACT** [10] 12/5 12/12 13/12
13/23 30/5 30/24 31/6 37/4
37/17 42/17
**FACTS** [4] 10/1 17/12 42/19
48/1
**FAIR** [1] 36/11
**FAMILIARITY** [1] 37/19
**FAR** [3] 32/2 38/10 44/9
**FASHION** [1] 27/25
**FAST** [1] 20/16
**FAVOR** [1] 37/6
**FEBRUARY** [1] 1/7
**FEDERAL** [1] 18/10
**FEEL** [1] 28/7
**FEW** [3] 18/24 44/16 44/23
**FIFTH** [15] 8/18 8/19 9/3 9/6
9/21 10/17 16/11 16/19
16/23 17/8 35/17 35/17
36/13 37/11 46/2
**FIGHTING** [2] 36/7 37/7
**FIGURE** [6] 18/2 31/17 42/11
46/8 46/11 49/21
**FILE** [1] 31/9
**FILED** [1] 13/1
**FILL** [1] 38/15
**FILLED** [1] 34/21
**FINALLY** [2] 24/25 25/2
**FIND** [4] 26/2 45/10 48/22
48/25
**FINE** [4] 8/24 9/2 32/12 41/17
**FINISHED** [3] 25/11 33/9 35/9
**FIRST** [12] 3/17 5/11 6/1 14/6
16/10 19/11 19/20 21/1
34/15 37/5 47/18 47/21
**FIVE** [1] 44/2
**FLOATING** [1] 28/3
**FOCUSED** [1] 40/3
**FOLLOW** [2] 29/3 40/9
**FOREGOING** [1] 51/16
**FORM** [3] 45/5 45/5 45/19
**FORWARD** [1] 8/17
**FOUR** [5] 2/7 19/20 20/4 39/3
51/2
**FOURTH** [1] 1/13
**FRANKLY** [1] 27/7
**FRIDAY** [1] 1/7
**FROLIC** [1] 30/20

**FRONT** [5] 11/15 24/23 30/19
38/11 38/19
**FULL** [1] 6/22
**FURIOUS** [1] 20/17

# G

**GAME** [1] 36/11
**GAVE** [6] 18/1 26/11 26/15
27/13 27/21 45/1
**GENERALLY** [1] 21/24
**GENTLEMAN** [1] 6/7
**GET** [28] 2/18 3/9 8/7 9/17
10/12 18/25 20/17 21/2 21/5
21/24 22/24 23/25 24/2
27/11 30/18 32/5 35/4 36/11
36/15 37/10 38/2 41/5 42/25
43/1 45/17 46/9 48/4 50/23
**GETTING** [4] 14/5 24/12 28/22
50/18
**GILMORE** [6] 15/7 15/10 15/16
25/15 33/14 42/6
**GIVE** [9] 7/10 17/5 18/12
18/12 22/10 34/13 36/22
40/14 49/9
**GIVEN** [5] 7/20 8/12 15/4
27/24 44/25
**GIVING** [2] 12/24 45/5
**GLOBALLY** [1] 40/2
**GO** [10] 13/14 13/18 19/11
26/25 27/13 29/19 39/21
42/22 42/25 43/6
**GOES** [3] 26/16 43/10 49/16
**GOING** [71]
**GOOD** [3] 7/21 7/25 10/19
**GORDON** [1] 16/13
**GOSPEL** [3] 6/17 6/18 6/20
**GOT** [22] 3/14 3/18 3/21 4/1
7/18 13/16 17/5 18/9 21/8
23/2 24/2 25/5 26/22 26/25
30/7 32/20 40/18 42/7 43/4
46/6 46/15 49/22
**GOTTEN** [1] 41/18
**GOVERNED** [2] 29/1 29/2
**GOVERNMENT** [45] 1/12 2/6
2/22 2/24 7/11 10/25 11/1
18/17 19/9 19/25 20/1 20/9
20/13 21/23 23/25 24/19
25/21 26/7 31/20 33/1 33/5
35/12 35/20 35/24 36/15
37/6 39/2 39/4 39/7 39/11
40/13 41/1 41/14 18 44/19
44/23 45/1 46/9 46/12 47/6
47/15 48/22 49/5 49/23 50/8
51/7
**GOVERNMENT's** [4] 3/21 16/7
21/15 31/17
**GRAMS** [3] 43/20 45/17 45/18
**GRANTED** [1] 50/5
**GREATEST** [1] 27/22
**GREGORY** [1] 25/22
**GRIEVANCE** [1] 27/23
**GRIFFITH** [3] 1/21 51/16 51/23
**GUESS** [3] 16/18 19/2 46/23
**GUIDANCE** [1] 32/24
**GUILTY** [5] 18/5 18/7 18/18
18/19 50/1
**GUY** [14] 3/22 4/25 5/13 5/14
5/16 5/22 6/8 6/8 6/9 7/2
25/17 25/23 26/9 30/9
**GUYS** [1] 41/15
**GWEN** [3] 18/12 18/18 38/16

# H

**HAD** [17] 4/12 8/22 11/19

23/1 32/14 36/15 37/16
42/11 42/23 46/7 47/7 47/8
47/19 47/21 49/7 49/22
49/23
**HALF** [2] 15/18 21/7
**HAMPTON** [2] 16/18 26/16
**HANDY** [1] 13/5
**HAPPENED** [2] 48/11 48/18
**HARD** [4] 50/17 50/19 50/20
50/22
**HAS** [28] 7/19 9/6 9/20 10/4
10/5 11/10 14/15 16/13 17/5
17/8 21/9 21/16 25/20 26/20
31/6 33/15 35/18 36/4 36/8
40/4 41/18 41/20 45/1 45/3
45/7 45/10 47/15 50/20
**HAVE** [131]
**HAVEN'T** [7] 4/1 4/12 11/25
21/3 42/16 48/8 50/3
**HAVING** [3] 30/2 33/7 50/24
**HE** [125]
**HE'LL** [4] 16/17 25/19 25/23
26/1
**HE's** [42] 3/14 7/17 7/18 7/19
9/18 9/25 10/15 17/7 17/11
17/22 17/23 18/3 18/10
18/10 21/10 21/22 24/17
25/23 26/2 26/9 34/14 34/15
34/18 35/1 35/7 35/21 35/22
37/1 37/3 37/4 37/6 37/7
37/17 38/7 38/11 38/24
38/24 39/12 39/14 40/15
50/1 50/1
**HEAD** [1] 15/17
**HEAR** [4] 3/12 9/22 24/11
39/11
**HEARD** [2] 11/10 48/8
**HELD** [2] 43/2 51/8
**HELP** [7] 8/15 8/22 10/14
11/24 11/25 22/25 32/17
**HELPFUL** [3] 9/11 9/13 34/14
**HELPS** [1] 10/10
**HER** [35] 4/1 11/24 13/9
13/22 13/22 13/23 14/5 15/2 19/19
19/23 20/17 27/2 27/13
27/14 28/20 28/24 29/7 29/7
29/7 30/1 30/5 30/9 30/21
31/5 31/12 31/13 31/21
31/23 32/9 32/10 32/14
32/19 33/5 33/17 34/7 50/7
**HERE** [35] 2/6 4/10 5/6 6/7
8/25 10/23 12/6 13/11 13/20
16/17 18/2 18/9 18/11 18/25
19/10 20/14 20/17 20/19
20/23 21/1 25/19 25/23 26/1
26/19 26/22 29/24 35/4
36/16 37/10 38/9 38/14
38/19 42/23 46/6 46/21
**HERE's** [1] 14/17
**HIGHLY** [1] 36/21
**HIM** [45] 6/3 6/4 6/4 6/9 6/19
7/2 7/3 8/1 13/9 6/9 20/9 20/23
10/12 10/17 16/14 16/24
17/11 17/15 18/1 22 24/1
24/17 24/18 26/2 26/4 26/19
27/6 27/23 28/4 28/5 28/11
28/12 31/2 31/3 32/15 32/17
35/1 35/5 35/6 35/8 35/24
36/11 38/5 38/15 40/18
47/19 47/21
**HINT** [1] 17/5
**HIS** [37] 2/5 3/11 3/23 3/23
5/17 6/2 7/7 8/1 9/9 9/1 9/6

# H

**HIS...** [27] 17/11 17/17 18/9
19/21 20/4 20/5 26/25 27/3
28/21 30/11 32/4 34/21 36/6
36/7 36/10 36/12 37/7 37/19
37/20 37/21 37/22 37/24
37/25 41/20 42/3 47/3 47/19
**Holland** [11] 7/18 18/9 33/10
33/12 34/13 35/15 35/18
35/21 38/21 42/2 42/3
**Holland's** [1] 7/17
**Honor** [36] 3/8 3/15 4/12 5/7
5/9 7/23 11/25 12/15 15/7
15/11 16/22 16/25 17/7 19/1
19/17 20/15 20/25 21/11
22/5 24/16 26/5 26/24 31/15
31/20 33/13 39/18 40/4
41/17 44/15 46/25 47/7
47/18 48/21 49/6 49/22
50/16
**HONORABLE** [1] 1/9
**Horne** [7] 11/24 12/3 20/21
21/10 22/24 40/11 46/22
**HOURS** [1] 15/14
**HOW** [10] 3/16 8/11 10/9
10/10 13/16 25/5 34/13 37/5
43/13 46/10
**Howard** [3] 26/8 26/11 26/13
**HOWEVER** [1] 21/11
**Hunter** [2] 14/18 15/25
**HUVELLE** [1] 1/9

# I

**I'D** [4] 28/24 29/6 29/25
42/21
**I'LL** [12] 6/10 7/12 9/15 10/13
10/22 35/8 38/5 38/17 39/20
41/3 49/12 50/5
**I'M** [49] 3/13 3/14 3/16 4/1
4/8 4/9 4/13 5/5 6/6 6/22
7/12 9/23 16/25 17/20 18/6
19/19 20/8 20/23 22/7 22/14
24/6 24/7 26/12 28/11 28/18
28/18 28/19 28/19 28/22
29/19 29/23 30/18 30/20
31/8 31/10 31/25 32/1 33/4
33/24 35/3 36/14 36/14 39/3
39/10 42/9 43/8 45/5 45/9
48/16
**I'VE** [11] 7/15 7/20 18/9 21/6
28/3 31/17 33/23 39/7 41/2
42/7 43/4
**ICE** [2] 26/10 26/14
**IDEA** [1] 30/3
**IMPEACH** [13] 19/21 20/5 20/8
20/9 20/18 21/15 23/5 24/6
34/8 40/13 41/8 41/8 46/22
**IMPEACHED** [2] 20/4 22/2
**IMPEACHING** [2] 20/1 40/15
**IMPEACHMENT** [4] 22/6 24/1
40/16 41/11
**IMPLICATION** [1] 32/2
**IMPORTANT** [1] 6/7
**INC** [1] 18/17
**INCONSISTENCY** [1] 22/17
**INCONSISTENT** [6] 20/12 22/13
22/18 22/21 23/22 26/21
**INDICATES** [1] 28/1
**INDICTED** [1] 35/21
**INDICTMENT** [4] 45/3 45/4 45/8
45/20
**INDIVIDUAL** [1] 5/10

**INDIVIDUALS** [1] 39/19
**INDULGENCE** [2] 24/14 42/20
**INFORMATION** [1] 24/5
**INSTRUCT** [6] 45/16 47/10
48/12 48/16 48/23 49/2
**INSTRUCTION** [4] 44/11 46/5
47/8 49/10
**INSTRUCTIONS** [5] 44/8 44/25
45/4 45/15 45/20
**INTEND** [1] 46/9
**INTENT** [2] 43/20 44/2
**INTERESTING** [1] 34/25
**INTERPRET** [1] 13/13
**INTERVIEW** [1] 40/25
**INTRODUCE** [2] 23/9 46/11
**INTRODUCING** [1] 3/24
**INVESTIGATION** [2] 11/18 12/23
**INVESTIGATOR** [13] 3/25 4/3 4/6
5/5 6/5 6/25 7/11 27/5
29/13 30/2 30/5 32/23 33/7
**INVOKING** [1] 48/12
**INVOLVED** [7] 9/1 28/2 28/16
36/1 36/9 36/10 37/9
**IOTA** [1] 12/12
**IRRELEVANT** [2] 11/3 11/6
**IRS** [1] 48/8
**IRVING** [1] 17/23
**IS** [119]
**ISN'T** [1] 31/18
**ISSUANCE** [1] 13/12
**ISSUE** [9] 5/1 10/22 11/1
13/10 13/23 13/23 29/24
30/22 42/20
**ISSUES** [2] 10/21 48/1
**IT** [100]
**IT's** [36] 3/8 3/21 4/22 13/6
14/1 14/2 14/9 15/3 17/21
18/2 22/20 23/1 23/15 23/21
24/24 27/4 28/5 28/6 28/9
28/23 29/24 30/3 30/19
31/11 31/16 31/18 37/10
37/11 41/10 41/11 44/13
45/16 45/17 47/25 48/5 48/5
**ITS** [1] 13/20

# J

**JACKET** [2] 26/14 26/15
**JACKSON** [3] 18/14 25/25 26/3
**JAIL** [11] 2/5 2/23 7/17 7/17
7/19 17/7 49/8 49/10 49/15
49/16 50/2
**JANUARY** [1] 43/21
**JEFFREY** [1] 1/17
**JOB** [1] 47/25
**JOHN** [2] 19/21 20/5
**JOHNSON** [7] 23/17 23/18
40/23 41/25 46/21 50/23
50/23
**JONES** [32] 1/5 1/16 2/3 2/23
3/4 3/12 9/19 9/19 10/7
11/8 12/22 14/12 14/15
14/21 15/25 21/12 21/21
25/14 28/2 32/12 36/1 37/15
40/14 41/20 42/5 42/16
43/18 43/25 44/10 45/22
50/11 50/20
**Jones's** [3] 29/8 37/7 37/9
**JOSEPH** [3] 7/18 18/11 35/4
**JUDGE** [3] 1/10 18/11 38/19
**JUDGMENT** [1] 7/22
**JULY** [1] 14/7
**JUNE** [2] 14/7 43/16
**JURY** [29] 1/9 3/11 4/19 5/10

6/8 8/21 11/10 11/16 12/13
12/18 13/3 14/2 15/1 22/23
22/25 28/23 30/19 37/21
41/14 42/10 44/8 44/25 45/4
45/10 47/10 47/10 47/23
48/4 48/24
**JUST** [36] 2/10 2/15 3/13 6/25
7/16 8/4 9/23 12/19 16/1
17/4 18/4 18/7 18/9 19/13
20/23 21/24 24/7 27/2 28/19
31/1 32/3 32/10 33/19 33/20
35/21 36/9 38/16 39/19 40/9
41/7 41/19 42/14 42/19
42/20 44/22 50/1
**JUSTICE** [2] 32/22 32/24

# K

**KANE** [2] 16/18 28/14
**KATERINA** [1] 28/14
**KEEP** [2] 46/5 49/16
**KELLIE** [1] 20/19
**KEVIN** [3] 7/17 17/22 34/13
**KEYON** [11] 3/1 5/17 5/20
5/21 5/22 5/24 6/11 6/14
17/20 17/21 18/15
**KILOGRAMS** [1] 44/2
**KIND** [1] 47/20
**KINDLY** [1] 41/7
**KIRSCHNER** [8] 20/21 20/22
21/9 21/10 22/24 40/10
40/11 46/22
**KNEW** [6] 2/14 2/23 5/14 5/15
28/17 31/14
**KNOW** [87]
**KNOWN** [1] 49/17
**KNOWS** [5] 14/8 17/14 29/10
36/23 39/13

# L

**LANGUAGE** [1] 41/21
**LARK** [1] 30/20
**LAST** [9] 13/8 15/5 33/25 34/4
35/23 44/6 45/1 48/18 50/5
**LATER** [1] 6/22
**LATITUDE** [1] 25/6
**LAW** [17] 10/18 21/14 22/6
27/3 27/6 40/3 43/12 45/7
47/10 47/16 48/8 48/10
48/12 48/14 48/14 48/19
49/2
**LAWRENCE** [3] 8/11 26/10
26/10
**LAWYER** [17] 6/4 7/18 7/19
9/6 10/19 17/8 17/15 17/15
21/22 28/22 31/23 31/24
32/25 33/6 35/7 37/10 42/3
**LAWYERS** [2] 17/5 20/3
**LAYVANCE** [3] 26/8 26/11
26/13
**LEAKS** [4] 25/16 25/17 25/22
42/6
**LEAST** [5] 2/24 4/6 6/7 9/5
51/4
**LEAVE** [4] 28/22 32/4 32/23
38/6
**LEAVES** [2] 26/20 47/6
**LEEWAY** [1] 22/11
**LEGAL** [6] 27/8 28/23 47/12
47/12 48/1 48/16
**LEGALITY** [1] 13/18
**LET** [8] 3/12 6/24 7/14 7/15
17/14 33/5 38/16 40/18
**LET's** [9] 9/9 9/20 10/15 12/7

## L

LET'S... [5] 29/18 37/10 40/18
45/18 48/25
LEVEL [1] 31/19
LEVELS [1] 26/13
LIED [1] 9/3
LIFE [2] 36/7 37/7
LIKE [21] 3/8 4/7 5/1 8/9
25/22 27/2 27/4 28/24 29/6
29/25 31/4 32/21 32/23 34/2
35/24 36/9 36/23 38/10
42/21 43/15 45/18
LIMINE [4] 16/7 39/8 39/10
50/4
LINE [4] 17/20 41/9 48/5
50/20
LINES [3] 47/12 47/25 48/20
Lisa [3] 1/21 51/16 51/23
LIST [3] 2/5 7/20 14/16
LISTEN [5] 21/7 23/1 26/24
39/20 42/9
LITIGATE [1] 13/11
LITIGATED [1] 13/19
LITTLE [2] 22/11 49/9
LIVE [1] 25/24
LIVING [1] 25/18
LOCATE [1] 18/14
LOCKED [2] 18/22 22/6
LONG [7] 8/23 23/21 24/7
33/20 38/8 44/10 44/10
LONGER [1] 43/9
LONGITUDE [1] 25/6
LOOK [15] 6/24 18/17 23/12
27/2 30/24 32/1 34/7 34/10
34/11 34/11 41/9 41/15
41/21 46/20 48/22
LOOKED [1] 17/17
LOOKING [2] 4/9 40/19
LOOKS [3] 31/4 35/13 38/9
LOT [6] 2/2 14/6 15/13 21/5
36/22 49/7
LYING [1] 31/5
Lyons [7] 8/17 8/23 9/16
10/13 10/19 18/25 38/22

## M

MA'AM [6] 2/9 8/10 11/13 44/5
50/12 50/25
MADE [5] 21/21 27/2 27/6
32/21 47/16
MAIL [1] 27/13
MAILS [9] 27/12 29/18 29/20
30/7 30/8 30/13 33/2 35/13
50/24
MAIN [1] 34/18
MAKE [10] 12/12 12/18 18/24
21/12 21/12 33/13 33/20
37/8 40/15 46/12
MAKES [1] 21/23
MAKING [2] 30/22 31/19
MARCH [1] 43/21
MARK [4] 26/2 26/3 33/4
35/11
MATTER [2] 46/23 51/18
MAY [10] 13/18 13/24 14/11
14/14 14/25 19/18 37/2
37/11 43/23 45/15
MAYBE [12] 10/14 18/9 23/25
24/8 27/24 28/20 32/3 43/1
43/7 45/20 46/11 47/15
Maynard [12] 7/19 8/12 9/18
10/12 17/16 18/24 26/10

26/11 26/13 33/10 38/23
42/2
ME [38] 3/12 5/7 5/14 5/15
5/23 5/25 6/3 6/9 6/9 6/19
7/2 7/3 7/4 7/10 7/14 7/15
9/7 9/16 9/23 10/14 15/12
17/5 17/14 18/1 21/7 28/1
28/5 31/9 31/25 34/13 35/20
38/10 45/2 49/1 49/8 49/10
49/11 50/8
MEAN [11] 9/15 24/9 26/20
29/23 29/25 31/1 31/16 46/3
47/11 48/17 49/21
MEETING [1] 8/23
MEMO [1] 31/9
MENTION [1] 6/19
MENTIONED [9] 6/22 7/2 7/3
10/24 28/15 39/19 47/9 49/7
49/23
MESSAGE [1] 14/18
MESSAGES [16] 12/8 12/10
12/21 14/1 14/2 14/5 14/7
14/13 14/20 15/9 15/11
15/20 15/22 24/13 25/12
33/21
MESSAGING [1] 39/25
Michele [1] 1/12
MIGHT [9] 10/8 16/22 30/14
34/2 37/19 42/14 42/19
47/20 49/8
MIND [1] 31/18
MINUTE [3] 11/7 18/8 31/16
MINUTES [2] 44/17 44/24
MISINTERPRETED [2] 12/7 13/24
MISTAKEN [1] 12/20
MISTAKES [1] 12/18
MISUNDERSTOOD [1] 12/13
MOMENT [4] 5/6 24/11 45/6
51/4
MOMENTS [1] 18/24
Monday [11] 19/2 24/3 24/4
30/15 38/3 38/3 46/21 49/12
50/6 50/15 50/22
MONEY [2] 34/22 47/9
MORE [15] 14/1 25/25 31/11
32/20 33/15 39/12 40/2 40/3
40/20 42/7 43/20 44/2 44/23
46/9 49/6
MORNING [2] 8/23 9/8
MOST [1] 46/14
MOTION [6] 16/7 39/8 39/10
39/17 47/3 50/4
MOVE [1] 8/17
MR [2] 3/10 45/22
MR. [52]
Mr. Balarezo [7] 27/12 27/18
27/22 28/17 29/24 30/9
50/24
Mr. Balarezo's [1] 35/14
Mr. Bowman [3] 6/23 7/1 7/2
Mr. Conte [2] 35/4 38/2
Mr. Holland [1] 35/22
Mr. Jones [20] 2/3 2/23 3/4
3/12 9/19 9/19 10/7 11/8
12/22 21/12 21/21 32/12
36/1 37/15 40/14 41/20
42/16 44/10 50/11 50/20
Mr. Jones's [2] 29/8 37/7
Mr. Lyons [5] 8/17 8/23 9/16
10/19 18/25
Mr. Maynard [2] 9/18 26/15
Mr. Randolph [1] 18/6
Mr. Zintura [8] 2/8 2/11 2/12

3/3 4/5 6/19 23/21 31/4
35/13 36/22 49/7
Ms. Soltys [2] 36/22 49/7
MUCH [3] 4/2 17/9 17/25
MY [18] 3/17 3/25 4/6 4/7
4/16 5/10 6/4 6/6 6/25 8/23
12/19 21/8 27/7 31/18 37/1
40/11 41/3 49/8
MYSELF [1] 48/3

## N

NAME [1] 5/21
NARCOTICS [3] 11/9 14/14
35/22
NASSAU [1] 1/18
NAUSEAM [1] 13/19
NECESSARILY [1] 2/21
NEED [20] 4/18 10/17 10/18
13/1 16/11 17/4 20/23 27/11
34/2 34/11 38/21 38/22 39/1
39/8 44/7 44/9 44/19 46/17
49/4 50/21
NEVER [7] 2/14 2/22 15/21
21/7 34/3 49/22 49/24
NEW [1] 43/10
NINETEEN [1] 15/5
NO [25] 1/3 5/2 6/22 8/10 9/5
9/6 9/20 10/6 11/13 11/13
16/3 16/5 25/7 29/22 31/2
34/1 38/3 38/9 39/24 40/2
43/8 44/5 46/1 48/8 50/12
NOBODY [1] 30/5
Norma [2] 11/24 20/21
North [4] 16/13 47/8 48/14
48/14
NOT [86]
NOTE [2] 48/18 48/18
NOTHING [2] 30/20 37/16
November [4] 2/14 2/24 3/4
3/7
NOW [16] 2/16 3/12 4/12 6/6
7/14 11/9 15/4 19/13 31/4
36/6 36/7 36/9 37/20 40/6
41/14 45/16
NUMBER [9] 10/21 17/2 18/2
16/6 39/4 43/19 44/1 44/13
44/14
NW [2] 1/13 1/18

## O

O'BRIEN [8] 19/12 20/19 20/20
21/10 22/25 25/5 40/10
46/22
O'TOOLE [2] 1/17 1/18
OATH [3] 8/12 8/13 9/4
OBJECTION [1] 46/18
OBLIGATIONS [1] 29/16
OBSTRUCT [1] 32/24
OBSTRUCTING [1] 32/22
OBVIOUSLY [6] 25/14 25/15
36/13 36/19 41/20 45/22
OFF [10] 7/21 8/1 8/4 8/6 8/9
19/7 21/2 21/6 34/15 43/2
OFFHAND [1] 9/10
OFFICE [2] 1/13 8/23
OFFICER [3] 27/15 27/16 27/16
OFFICERS [2] 12/18 40/3
OH [3] 5/22 16/23 21/4
24/20 25/8 26/16 27/19 31/2
34/22 34/24 35/3 38/3
OKAY [67]
ONCE [2] 5/11 41/3
ONE [40] 3/12 6/10 6/13 6/15

**O**

ONE... [36] 7/3 7/5 7/7 7/12
7/14 10/18 10/22 11/7 12/12
12/17 14/21 15/5 17/11
21/16 21/18 23/5 23/6 23/8
23/23 23/23 24/9 26/13 32/1
34/18 36/15 36/25 39/9 39/9
40/18 40/18 40/23 40/23
41/13 43/10 46/7 49/6
ONES [1] 41/3
ONLY [16] 3/6 4/8 5/11 10/7
12/17 12/20 17/11 17/11
19/24 22/7 23/23 32/13
46/16 47/22 48/1 50/20
OPEN [1] 33/6
OPPORTUNITY [1] 20/18
OPPOSED [3] 12/11 36/3 36/20
OPPOSITION [2] 39/13 47/4
ORDER [3] 12/6 16/9 40/1
OTHER [20] 2/15 2/21 6/12
6/15 7/12 7/14 10/21 14/4
15/9 15/19 16/3 16/4 22/9
22/22 25/23 37/11 39/9 46/7
48/8 49/4
OTHERWISE [2] 41/11 49/16
OURSELVES [2] 41/22 50/19
OUT [37] 5/11 7/11 8/21 10/6
10/7 10/8 10/9 10/22 18/2
21/24 22/8 24/18 27/11
27/13 27/25 31/17 32/2 35/8
35/12 36/19 39/2 39/3 39/11
39/24 41/13 42/10 42/11
42/16 42/19 46/8 46/11
46/15 46/15 48/6 48/21
48/22 49/21
OUTSIDE [1] 43/4
OVER [4] 16/1 27/4 30/25
46/20
OVERALL [1] 31/11
OVERDID [1] 47/20
OVERREACHING [1] 36/24

**P**

P.M [3] 1/8 1/9 51/8
PAGE [1] 41/9
PARAGRAPH [5] 12/25 14/10
14/15 14/17 14/22
PARAGRAPHS [2] 14/25 16/1
Pardon [1] 5/7
PART [6] 6/17 9/14 9/24 13/22
28/23 50/5
PARTE [5] 39/4 39/12 39/21
47/3 51/7
PARTIES [3] 29/5 43/16 43/23
PARTS [1] 41/7
PATTERN [2] 37/20 37/20
Pause [2] 5/8 24/15
Peacock [3] 16/12 16/18 42/6
PENDING [3] 17/23 35/22
35/22
PEOPLE [35] 2/5 2/12 2/14 3/3
3/7 4/4 4/25 7/16 10/20
10/23 11/8 11/11 12/22 14/4
15/5 16/10 16/14 18/22
19/10 19/15 21/5 29/3 29/15
29/17 37/8 39/11 39/13
39/14 39/23 40/12 40/24
41/5 41/13 42/7 50/5
PERFECT [1] 43/3
PERHAPS [1] 48/22
PERJURY [1] 10/16
PERMISSIBLE [1] 19/16

PERMISSION [1] 27/13
PERMIT [1] 13/16
PERSON [9] 2/22 3/20 5/11
17/9 23/10 28/17 34/5 47/24
48/19
PERSON WAS [1] 28/17
PHONE [2] 14/7 14/20
PHOTO [1] 26/10
PHOTOS [1] 26/14
PICK [2] 22/7 42/22
PICKED [1] 11/19
PLACE [1] 30/23
PLACES [1] 50/6
PLANS [1] 21/23
PLAYED [1] 20/16
PLEAD [1] 35/17
PLEASE [2] 30/7 43/6
PLED [4] 18/5 18/7 18/18
18/19
POINT [4] 3/4 6/6 10/16 30/3
POINTS [1] 40/11
POSSESS [4] 43/20 44/1 47/24
48/20
POSTURE [1] 15/4
POTENTIAL [1] 37/5
POTENTIALLY [1] 17/8
PREDATE [1] 12/10
PREDATED [1] 12/13
PREJUDICED [1] 49/21
PREJUDICIAL [2] 31/11 36/21
PREPARED [6] 8/17 8/25 9/6
29/23 30/18 42/5
PREROGATIVE [1] 31/17
PRESENCE [9] 7/11 8/21 10/23
24/19 39/2 39/4 39/11 41/13
42/10
PRESENT [1] 41/14
PRETTY [1] 44/10
PREVIOUS [2] 29/8 32/4
PRINCIPLE [1] 48/17
PRIOR [8] 21/25 28/3 36/2
36/4 36/19 42/18 43/9 43/13
PRIVATE [1] 14/7
PRO [2] 1/16 47/3
PROBABLE [3] 12/6 13/11 15/2
PROBABLY [4] 9/22 19/11
46/16 49/25
PROBATIVE [2] 31/12 36/20
PROBLEM [10] 5/2 11/7 16/13
17/13 20/14 23/23 30/2 30/3
33/7 39/16
PROBLEMS [2] 16/20 16/24
PROCEEDINGS [2] 41/19 51/17
PROFESSIONAL [3] 30/19 30/22
31/22
PROFFER [6] 7/11 21/12 24/6
24/21 24/22 40/14
PROMOTER [1] 35/2
PROPOSITION [1] 31/9
PROVE [1] 6/6
PROVIDE [1] 44/8
PUBLIC [1] 28/4
PURPOSE [4] 14/4 19/24 41/6
41/12
PURPOSES [3] 13/10 39/5 39/5
PUT [9] 20/10 11/8 18/23
19/13 29/7 29/23 34/20
39/14 44/11

**Q**

Q-U-E-N-T-S-A [1] 14/12
QUANTITIES [6] 45/2 45/7
45/10 45/11 45/16 50/9

QUESTION [10] 14/10 26/2 26/3
32/12 33/4 35/11 35/14 43/9
45/6 48/2
QUESTIONED [2] 37/2 37/3
QUESTIONS [2] 35/24 36/12
QUICK [1] 2/4
QUITE [1] 23/9

**R**

RAE [1] 1/17
RAISES [1] 14/10
RAN [1] 18/8
RANDOLPH [18] 3/1 4/9 5/19
5/20 5/20 5/21 5/22 6/14
16/21 17/2 17/19 17/20
17/21 18/6 18/15 18/15
33/11 42/2
RANDOLPH'S [1] 16/19
REACH [3] 26/4 35/8 38/5
REACHED [2] 42/14 43/8
READ [9] 3/11 4/13 4/19 7/14
9/25 27/3 32/21 33/19 45/3
READY [1] 22/12
REALIZED [1] 6/2
REALLY [6] 8/14 27/5 27/12
36/23 36/24 41/10
REASON [9] 9/7 20/25 21/13
24/24 25/4 32/8 32/13 36/8
37/11
REASONS [1] 34/18
RECALL [1] 33/17
RECEIVED [2] 26/9 48/18
RECESS [1] 44/21
RECESSED [1] 51/8
RECORD [7] 14/8 19/8 25/20
43/2 44/22 50/18 51/17
REDACTED [1] 51/8
REDO [1] 45/19
REFER [1] 28/12
REFERENCE [1] 47/16
REFERRING [1] 28/11
REFLECT [1] 45/7
REFLECTED [1] 45/3
REGARDING [3] 14/5 33/13
44/11
REGULATES [1] 48/19
RELATED [2] 24/24 25/4
RELEVANCE [3] 13/20 16/3
16/4
RELEVANT [5] 14/3 15/1 15/4
16/1 26/21
RELIED [1] 30/6
REMEMBER [3] 15/12 47/17
47/19
REMEMBERING [1] 33/24
REMIND [3] 15/12 19/13 49/1
REPORT [3] 27/23 48/6 48/8
Reporter [2] 1/21 51/14
REPRESENT [1] 30/4
REPRESENTED [4] 7/17 17/22
28/4 31/10
REQUEST [2] 28/21 47/13
REQUIRED [2] 27/21 27/22
RESEARCH [1] 48/15
RESOLVE [2] 24/25 42/19
RESOLVED [1] 25/2
RESPECT [2] 25/7 27/22
RESPONSE [1] 47/16
RESULT [1] 37/18
RESUME [1] 44/16
RETIRED [1] 40/10
REVIEW [1] 41/3
RIGHT [50] 3/17 3/19 4/12

## R

RIGHT... [47] 4/15 6/7 6/15
7/13 8/8 8/20 10/12 13/6
13/18 15/3 15/23 16/15
17/24 18/1 20/7 22/9 22/14
23/3 23/23 25/13 25/14
25/22 26/3 30/4 30/4 32/10
33/23 34/24 35/9 36/5 36/6
38/2 38/7 38/20 38/21 39/1
40/8 41/8 42/9 43/6 43/12
45/15 45/23 46/2 46/3 46/17
50/3
RISE [1] 31/18
ROBIN [2] 26/20 42/8
ROGUE [1] 30/2
ROOM [2] 1/13 1/22
ROTHWELL [1] 1/18
RPR [1] 1/21
RULE [3] 28/24 29/1 39/20
RULED [4] 33/23 39/8 39/23
40/4
RULING [5] 14/24 21/8 33/13
37/1 42/8
RUN [1] 28/3
RUNNING [1] 33/7

## S

SAID [25] 2/11 2/12 2/16 2/24
3/1 3/2 4/19 5/1 6/24 8/6
8/12 9/16 12/3 13/17 21/16
21/25 22/12 23/6 23/13 24/5
26/22 32/18 32/19 43/3
47/25
SAME [11] 3/20 3/24 5/1 7/1
9/16 17/21 20/9 25/10 29/4
29/4 49/20
SANDERS [1] 5/17
SARAH [1] 13/5
SAY [39] 2/7 2/10 2/15 3/7
3/8 3/22 4/4 4/24 4/25
11/25 12/1 12/7 12/9 15/8
19/14 19/14 23/1 23/7 23/20
25/23 26/21 27/11 27/19
29/7 29/12 31/24 32/3 32/6
32/19 34/2 37/7 37/15 40/25
41/9 43/15 45/18 49/11
49/18 50/1
SAYING [12] 2/19 4/11 4/17
14/11 21/17 22/4 22/7 22/17
23/4 34/1 34/19 49/23
SAYS [8] 3/24 9/18 18/18 29/5
29/15 31/2 33/15 36/23
SCIALPI [1] 1/17
SE [2] 1/16 47/3
SEAL [1] 39/12
SEARCH [2] 13/12 39/15
SECOND [8] 7/5 7/7 21/4 28/14
39/9 47/23 48/11 49/3
SEE [24] 7/10 10/10 12/16
13/1 13/14 13/20 17/14
26/19 28/14 29/25 30/6
30/25 33/2 35/12 35/17 37/4
38/1 38/2 38/24 41/15 45/18
46/17 48/25 51/6
SEEMS [1] 42/14
SEEN [4] 2/4 6/19 29/20 49/8
SEGAL [1] 1/9
SENSE [1] 21/12
SENT [2] 33/21 48/18
SENTENCE [1] 16/20
SENTENCING [1] 17/23
SEPTEMBER [3] 12/14 13/3

13/5
SERVING [1] 16/20
SESSION [2] 1/9 2/1
SHADY [2] 27/4 31/7
SHADY IN [1] 31/7
SHE [57]
SHE'S [20] 14/14 22/4 22/7
23/4 26/22 27/4 27/16 28/2
29/1 29/2 29/10 32/5 32/16
33/4 33/6 33/18 33/20 34/7
36/23 36/24
SHENESE [4] 15/7 15/10 15/16
33/14
SHORT [1] 31/21
SHOULD [5] 30/4 30/6 39/15
40/14 42/25
SHOW [11] 5/10 12/19 22/12
27/12 29/18 29/20 31/6
31/22 33/1 38/22 46/8
SHOWN [1] 42/16
SIDE [1] 29/24
SIGN [2] 6/10 7/12
SIGNED [2] 8/13 26/23
SIGNING [1] 7/12
SIMILAR [1] 37/12
SINCE [2] 21/3 45/7
SIR [1] 22/4
SITUATION [1] 36/11
SO [83]
SO-AND-SO [1] 41/1
SOLTYS [3] 1/12 36/22 49/7
SOME [18] 13/13 13/24 16/14
17/13 18/8 21/14 21/15
27/25 33/6 33/7 37/11 37/19
40/14 46/8 47/16 47/16 49/9
49/9
SOMEBODY [11] 6/2 10/11 17/5
18/1 19/13 24/2 27/4 27/9
27/9 28/16 30/3
SOMEONE [2] 5/1 43/1
SOMETHING [20] 2/11 2/15 4/24
19/18 19/24 19/25 22/13
23/5 26/21 26/22 31/7 34/2
34/8 35/20 39/5 40/6 43/15
45/17 46/12 49/21
SOMETIME [1] 38/4
SOON [1] 38/5
SORRY [5] 14/21 16/25 26/12
43/8 45/9
SORT [5] 13/14 37/22 40/2
40/14 48/15
SOUNDS [1] 25/22
SPECIFICALLY [1] 14/2
SPEND [1] 40/18
SPRINT [1] 24/17
STAND [8] 2/12 18/18 21/2
21/6 21/17 29/7 31/2 41/6
STAND-BY [1] 18/18
STANDARD [1] 15/2
STANDARDS [1] 29/4
START [2] 17/10 19/1
STARTED [2] 7/7 49/22
STARTING [1] 51/4
STARTS [1] 3/5
STATE [6] 47/8 47/12 47/25
48/5 48/14 48/20
STATEMENT [6] 9/18 9/25
10/16 21/16 21/19 22/1
STATES [5] 1/1 1/3 1/10
43/17 43/24
STAY [1] 44/23
STEINBACH [1] 1/18
STEP [1] 43/4

STEPHANIE [2] 14/9 14/24
STICK [1] 48/8
STILL [3] 24/21 26/4 50/18
STIPULATE [8] 2/22 3/10 27/14
32/10 33/2 42/17 43/16
43/23
STIPULATION [15] 2/18 3/9 3/9
4/17 4/18 24/9 35/12 42/15
43/8 43/10 44/12 44/13
44/14 46/6 48/23
STIPULATION'S [1] 32/20
STOP [1] 10/6
STORY [1] 7/5
STREET [1] 1/13
STUDIED [1] 22/5
STUFF [2] 18/9 32/15
SUBJECT [2] 39/25 45/24
SUBPOENA [1] 18/1
SUBSTITUTE [1] 44/14
SUBSTITUTING [1] 43/10
SUCH [4] 23/8 23/8 41/10
41/10
SUCH-AND-SUCH [2] 23/8 41/10
SUGGEST [2] 38/14 50/21
SUITE [1] 1/18
SUMMIT [2] 25/17 25/18
SUPERIOR [2] 17/17 18/20
SUPERVISE [1] 29/17
SUPERVISED [2] 29/3 29/15
SUPERVISOR [1] 24/17
SUPPORT [1] 2/15
SUPPOSED [2] 22/10 23/6
SUPPOSEDLY [1] 23/5
SURE [11] 3/14 18/6 18/24
21/20 32/1 33/20 36/14
36/17 37/8 38/5 40/15
SUSPICIOUS [1] 14/20
SUSTAIN [1] 12/6
SYSTEM [2] 18/16 21/16

## T

T-Y-M-I-R-A [1] 14/18
TAKE [24] 7/21 8/1 8/6 8/9
8/21 10/22 11/4 22/10 28/7
31/8 36/13 37/11 39/3 40/18
41/13 42/2 43/1 43/7 44/7
46/7 47/5 48/6 48/7 49/5
TAKEN [1] 44/21
TAKES [2] 31/1 46/6
TALK [18] 6/23 6/24 11/8
11/11 24/18 24/22 25/9
30/10 30/10 32/12 33/12
33/21 34/15 34/19 35/1 39/1
39/14 42/9
TALKED [7] 2/23 5/14 7/16
8/16 34/3 34/5 42/13
TALKING [11] 11/10 11/15
11/17 15/9 17/1 25/10 36/24
37/15 45/9 45/12 49/16
TALKS [3] 14/17 29/2 29/14
TARGET [1] 34/4
TARGETED [1] 12/22
TELL [15] 3/11 3/19 6/4 6/8
6/25 7/15 9/6 18/23 23/21
31/2 31/3 32/16 45/2 45/14
50/8
TELLING [9] 3/16 6/2 6/3 9/16
9/23 19/19 20/23 28/19
47/10
TELLS [1] 35/20
TENTATIVE [1] 37/1
TESTIFIED [10] 2/19 2/20 4/7
13/9 15/10 15/17 15/21

## T

**TESTIFIED...** [3] 15/24 16/15 25/5
**TESTIFY** [17] 3/20 4/25 6/16 9/1 9/7 11/2 12/6 13/21 15/19 24/12 25/15 28/21 33/15 42/5 45/23 45/24 46/3
**TESTIFYING** [2] 37/6 46/1
**TESTIMONY** [25] 3/11 3/23 3/24 3/24 4/19 7/7 11/5 22/19 23/9 26/25 27/4 28/13 30/25 32/11 32/21 33/17 34/7 40/19 40/25 41/3 41/6 47/19 47/20 49/7 51/2
**Texas** [1] 23/24
**TEXT** [19] 11/9 12/7 12/10 12/11 12/21 14/1 14/2 14/5 14/7 14/18 15/9 15/11 15/20 15/21 24/13 25/11 33/21 34/2 39/25
**TEXTING** [1] 39/6
**THAN** [11] 2/15 4/4 14/1 15/9 15/19 25/25 31/12 32/21 40/20 44/2 49/4
**THANK** [5] 9/13 43/3 50/13 50/16 51/3
**THAT** [250]
**THAT's** [43] 2/16 4/4 5/2 6/10 7/25 9/2 9/11 9/13 11/12 14/21 16/12 17/25 18/7 18/21 19/15 19/23 19/24 20/14 22/13 22/14 26/10 26/14 27/3 29/20 30/2 32/7 32/13 32/18 32/22 33/7 33/24 34/6 34/18 34/18 38/13 39/15 41/2 41/6 41/12 41/17 42/6 43/11 46/23
**THEIR** [7] 14/12 20/10 22/19 22/21 29/6 40/25 41/6
**THEM** [35] 2/19 5/5 6/16 8/4 8/6 12/4 19/11 20/4 20/5 21/1 21/2 21/5 22/18 22/20 24/8 29/21 30/7 30/7 30/14 30/15 35/16 39/12 40/15 40/18 41/8 41/14 41/18 41/20 41/24 42/9 46/18 49/18 50/11 50/11 50/19
**THEMSELVES** [1] 30/4
**THEN** [24] 3/9 3/25 7/4 10/12 11/14 14/20 16/6 16/9 19/15 21/3 21/18 23/21 30/22 32/7 32/13 37/17 37/20 39/1 39/23 41/3 41/24 43/6 46/5 50/14
**THEORY** [1] 24/2
**THERE** [34] 2/5 2/6 4/2 7/20 10/20 11/11 13/12 14/9 16/20 22/1 25/24 27/6 27/13 28/3 28/7 28/21 30/1 32/1 32/2 32/24 37/14 37/19 39/14 39/17 39/24 40/1 40/20 46/7 46/24 47/5 48/13 48/19 49/7 50/3
**THERE's** [8] 8/13 10/6 14/6 14/11 14/20 17/13 21/15 26/22
**THEREFORE** [1] 37/8
**THESE** [36] 2/12 2/14 2/25 3/6 3/14 4/2 4/3 4/8 5/9 11/11 11/18 12/1 12/16 12/22 14/4 14/25 15/3 15/4 16/10 17/6 19/15 21/14 21/18 21/24

21/25 30/6 39/13 40/12 40/24 41/8 41/21 41/24 41/25 41/19 42/18 50/6 51/2
**THEY** [44] 2/8 2/10 2/11 2/16 6/17 11/2 11/14 12/13 12/20 13/16 13/17 15/8 16/3 20/5 20/6 20/16 20/16 20/17 21/6 21/7 21/17 22/12 23/1 23/5 23/19 24/5 25/5 29/17 29/17 30/14 33/2 33/5 34/2 39/15 41/8 42/18 46/13 46/18 47/23 48/7 48/18 49/8 49/15 49/16
**THEY'RE** [7] 11/17 30/8 34/19 35/17 39/24 42/21 45/1
**THING** [14] 3/6 3/20 3/24 4/16 5/1 7/3 20/9 26/23 38/1 39/9 46/7 47/22 49/6 49/25
**THINGS** [6] 2/4 15/19 16/11 17/6 36/23 44/22
**THINK** [51] 2/24 4/3 9/5 9/22 11/1 11/4 12/15 14/6 14/21 16/9 18/6 19/1 24/25 27/24 28/5 28/6 28/6 28/7 28/9 29/14 29/25 30/1 30/6 30/8 30/13 30/19 30/23 31/11 31/25 32/20 34/1 36/10 36/11 36/15 36/16 36/22 36/24 37/8 37/10 37/13 39/3 40/18 41/16 42/6 42/16 43/12 45/3 48/3 49/8 49/12 49/13
**THINKS** [1] 28/10
**THIRD** [1] 33/11
**THIS** [78]
**THOSE** [12] 2/7 5/2 8/8 11/1 11/4 21/17 22/6 24/13 39/14 39/20 44/3 46/15
**THOUGH** [3] 22/9 27/21 44/19
**THOUGHT** [5] 5/12 5/13 21/6 27/20 27/21
**THREE** [17] 2/5 2/7 2/7 2/19 4/2 4/4 4/8 4/9 5/3 5/9 7/16 22/18 22/20 41/12 41/15 41/16 51/5
**THRESHOLD** [1] 47/9
**THROUGH** [5] 19/21 20/4 20/10 43/21 47/20
**THROWN** [1] 34/22
**TIE** [1] 23/13
**TIME** [18] 3/17 6/18 7/24 9/16 25/10 28/3 30/10 33/20 33/25 38/8 41/25 44/6 44/10 44/10 45/1 48/18 49/20 49/24
**TIMES** [1] 15/18
**Title** [1] 13/20
**TODAY** [1] 18/11
**TOGETHER** [1] 6/17
**TOLD** [21] 2/12 2/14 2/19 2/22 3/3 7/3 9/7 20/4 21/1 21/2 21/5 23/22 27/14 29/19 30/9 31/23 31/25 40/6 42/17 45/22 48/4
**Tom** [2] 24/16 25/9
**TOO** [3] 17/9 23/18 28/23
**TOOK** [2] 8/4 42/14
**TRAFFICKING** [1] 37/17
**TRAINED** [1] 33/6
**TRANSCRIPT** [6] 1/9 8/13 23/13 42/12 49/2 51/17
**TRANSCRIPTS** [6] 4/13 41/14 41/19 41/23 50/19 51/6

**TRANSPORT** [1] 48/20
**TRIAL** [16] 3/7 8/13 16/8 17/13 18/5 19/20 21/2 21/5 23/22 28/14 29/24 35/13 37/5 47/18 47/21 47/23 48/11 49/3
**TRIALS** [3] 15/11 15/16 34/4
**TROOPER** [1] 47/8
**TROUBLED** [1] 28/20
**TROUBLESOME** [1] 28/5
**TRUE** [1] 4/12
**TRUTH** [2] 6/25 32/16
**TRY** [4] 21/6 21/14 38/5 48/15
**TRYING** [4] 4/13 6/6 25/23 26/4
**Tuesday** [11] 19/2 19/3 19/4 33/11 35/15 38/4 38/15 42/1 42/3 50/22 51/4
**TURNS** [1] 48/21
**Twelve** [1] 26/6
**Twenty** [1] 33/21
**TWO** [20] 2/7 2/21 2/25 6/12 6/15 7/12 8/8 10/20 14/11 17/2 34/4 35/23 39/2 39/10 39/13 39/14 39/18 42/7 42/18 50/5
**TYPE** [1] 49/9

## U

**U.S** [2] 1/13 1/21
**ULTIMATELY** [1] 14/25
**UNABLE** [1] 18/14
**UNCONTESTED** [1] 2/16
**UNDER** [6] 8/12 8/13 9/4 16/22 31/11 39/12
**UNDERSTAND** [11] 3/18 8/11 9/10 9/20 12/24 22/4 22/7 30/12 30/12 33/1 45/14
**UNDERSTANDS** [2] 8/18 8/19
**UNIT** [1] 6/1
**UNITED** [5] 1/1 1/3 1/10 43/17 43/24
**UNLESS** [7] 3/22 4/17 4/24 22/1 26/22 33/5 35/19
**UNREPRESENTED** [1] 29/5
**UNTIL** [7] 2/13 3/4 3/4 11/23 25/1 50/15 51/6
**UP** [30] 2/6 4/14 5/15 10/22 11/4 15/13 16/10 17/17 18/3 18/22 18/23 19/2 19/2 19/6 19/18 35/16 37/14 37/17 38/15 38/22 39/3 40/9 41/13 42/2 42/22 42/23 43/14 46/7 47/5 49/5
**UPHELD** [1] 26/6
**UPHOLD** [2] 16/6 36/14
**Urschel** [1] 1/12
**US** [4] 18/23 22/12 23/22 41/7
**USC** [1] 45/7
**USE** [1] 18/10
**USED** [1] 14/3
**USING** [1] 46/16
**USUALLY** [1] 49/18

## V

**VAGUELY** [1] 33/24
**VANEGAS** [1] 29/9
**VARIOUS** [1] 11/8
**VERDICT** [3] 45/5 45/5 45/19
**VERY** [3] 4/2 6/7 28/5
**VIOLATION** [1] 16/22
**VIRTUE** [1] 46/22

Case 1:05-cr-00386-ESH

**V**

VISIT [1] 27/8
VOLUNTEERED [3] 5/15 5/18 6/8

**W**

WAIT [6] 11/7 18/8 29/12
31/16 38/4 44/19
WAIVE [3] 35/17 46/2 46/3
WAIVER [1] 35/19
WAIVING [1] 8/19
WALK [1] 10/15
WALKER [3] 1/21 51/16 51/23
WALKING [1] 3/13
WANT [25] 4/20 5/4 6/23 6/24
6/25 9/22 12/19 16/14 17/4
19/9 23/4 24/5 24/21 25/21
28/20 33/20 35/15 37/2
37/11 39/11 44/9 44/23
45/24 49/11 49/20
WANTED [5] 3/22 24/21 40/9
47/23 47/24
WANTS [4] 2/7 11/8 37/8 39/7
WARD [1] 14/15
WARD's [1] 14/15
WARRANT [2] 13/12 13/19
WAS [88]
WASHINGTON [4] 1/7 1/14 1/19
1/22
WASN'T [10] 15/11 20/1 20/25
21/4 27/5 30/10 31/10 31/10
34/3 37/9
WASTE [1] 7/23
WATCH [1] 8/25
WAY [11] 4/7 7/1 7/15 10/6
17/21 28/8 31/5 46/8 46/11
49/9 50/17
WE [82]
WE'LL [16] 8/1 22/10 26/19
30/16 32/3 41/13 41/23
41/24 43/1 43/7 44/20 45/14
46/5 46/20 48/22 49/21
WE'RE [18] 8/17 8/20 13/11
14/5 15/4 21/13 24/12 24/18
26/4 33/12 33/19 40/20 42/1
42/2 44/16 50/7 50/18 51/1
WE'VE [6] 7/16 13/19 39/23
40/18 46/6 50/4
WEAR [1] 49/18
WEARING [1] 50/1
WEDNESDAY [4] 38/13 38/15
38/19 42/4
WEEK [1] 21/7
WEEKEND [4] 30/25 40/19
41/15 48/22
WEEKS [1] 35/23
WELL [39] 2/20 3/8 4/1 4/6
7/6 8/11 8/20 9/2 9/5 9/15
10/9 10/25 11/21 12/17 14/1
14/14 17/10 18/8 22/3 22/10
22/23 23/25 24/8 25/3 28/11
29/14 30/15 31/5 32/8 32/12
34/15 35/18 37/13 38/15
39/3 41/5 47/15 47/22 48/25
WENT [10] 5/11 5/14 6/3 7/1
16/1 28/13 28/21 32/3 32/24
47/19
WERE [5] 12/22 20/16 33/21
37/15 50/23
WHAT [70]
WHATEVER [3] 22/17 47/9
48/24
WHEN [22] 3/5 5/12 5/25 6/1

6/2 6/3 10/12 13/1 18/23
19/2 25/9 34/22 37/15 38/8
39/2 37/11 38/1
38/12 38/22 44/7 45/16
45/17 47/8 47/19 50/23
WHENEVER [1] 50/6
WHERE [3] 21/17 24/6 25/25
WHETHER [18] 10/14 10/17
15/3 17/4 18/4 18/5 26/1
27/8 27/20 27/22 29/10
31/13 32/14 39/15 43/9 45/6
46/21 47/11
WHICH [16] 5/16 6/13 9/18
11/2 13/19 14/10 21/25 28/8
29/2 29/16 35/23 37/18
37/18 37/21 40/3 41/3
WHILE [5] 6/19 22/5 28/2
33/21 42/1
WHO [23] 2/5 2/21 2/25 6/2
7/19 8/25 11/21 12/5 15/5
15/15 16/14 16/25 20/3
23/10 23/20 24/2 25/16
25/17 25/18 27/13 28/4
28/16 34/5
WHO's [5] 2/25 16/10 27/16
30/7 33/11
WHOLE [5] 7/4 9/17 15/2
22/19 30/2
WHY [4] 20/25 21/13 36/20
42/25
WILL [31] 2/5 2/21 8/22 10/5
10/7 10/13 12/16 16/6 19/13
23/14 24/3 28/6 30/20 30/24
31/21 34/24 36/6 36/13
37/15 38/18 39/24 40/7 42/5
42/23 43/1 44/8 44/10 44/13
46/16 46/21 48/7
WILLIAM [1] 6/16
WILLING [1] 31/8
WILLS [3] 16/12 16/17 42/5
WIRE [5] 12/9 12/10 12/21
13/14 13/15
WIRETAP [3] 13/16 37/14
37/18
WITHDRAW [1] 8/8
WITHIN [1] 35/23
WITHOUT [6] 29/6 29/9 37/24
38/15 42/18 48/3
WITNESS [4] 20/13 23/6 25/4
29/7
WITNESSES [12] 3/21 10/25
20/9 21/18 21/24 23/8 39/2
39/3 42/10 46/24 47/2 49/4
WON'T [4] 7/23 12/12 41/21
46/1
WORD [3] 31/3 31/3 31/3
WORDS [1] 22/9
WORK [5] 27/25 35/12 38/8
38/18 42/8
WORKS [1] 3/16
WORLEY [2] 14/21 15/25
WORRIED [1] 40/20
WORRY [8] 9/3 16/11 17/5
17/15 31/20 39/9 42/7 43/9
WOULD [30] 5/9 7/6 10/16
11/2 11/2 11/6 11/14 13/13
14/18 16/14 16/18 19/11
21/5 21/12 22/1 24/17 25/3
25/9 35/24 37/5 41/7 41/16
41/19 42/17 42/18 43/15
45/3 46/14 46/14 48/23
WOULDN'T [5] 24/25 35/19
36/2 48/1 49/17
WRITE [1] 31/2

WRITS [1] 4/10
WRITTEN [1] 8/13
WRONG [4] 14/14 15/3 31/14
32/2
WROTE [5] 23/10 23/20 23/20
42/15 42/19
WT [1] 11/12
WT-6 [1] 11/12

**Y**

YANTA [28] 11/6 11/21 11/23
11/25 13/5 13/6 13/7 13/21
14/24 19/14 19/22 19/25
20/6 20/13 20/23 20/25 21/1
21/2 21/8 24/12 24/24 25/1
25/2 25/10 25/11 39/5 40/4
46/23
YANTA's [2] 14/9 39/25
YEAH [13] 5/25 7/9 9/25 15/8
16/2 19/5 23/18 28/4 33/15
34/11 34/23 42/25 49/6
YES [23] 2/9 8/3 10/4 13/7
16/2 16/4 16/16 20/3 20/11
26/18 34/18 35/16 41/2
41/17 42/24 44/16 45/13
46/4 46/25 47/7 47/14 50/15
50/25
YET [1] 42/16
YOU [200]
YOU'D [2] 8/9 41/7
YOU'LL [6] 7/10 37/23 45/19
45/24 46/3 49/1
YOU'RE [22] 7/21 9/16 12/5
16/9 16/23 17/10 22/9 23/6
24/25 30/22 33/10 35/11
38/22 41/7 42/7 43/10 45/12
46/8 46/10 46/10 49/15 51/4
YOU'VE [5] 2/4 3/18 21/8 24/2
45/22
YOUR [53]
YOURS [1] 45/23

**Z**

ZINTURA [28] 2/8 2/11 2/12
2/16 3/3 3/10 4/5 6/19
17/12 22/19 23/9 23/10
23/16 23/17 23/21 23/22
25/24 26/21 28/5 28/15
28/15 31/4 40/20 40/22
41/24 46/20 49/24 50/22
ZINTURA's [2] 30/24 40/19